**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| MUDDY WATERS CAPITAL LLC, <br><br> *Plaintiff*, <br><br> *v.* <br><br> CARLOS ANTÓNIO VASCONCELOS MOTA DOS SANTOS and MOTA-ENGIL, SGPS, S.A. <br><br> *Defendants*. | Civil Case No. _____ <br><br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Muddy Waters Capital LLC, by and through its counsel, for its Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Muddy Waters Capital LLC ("Muddy Waters") is an Austin, Texas-based investment firm that focuses on short-selling companies it believes are misleading their investors through manipulating their financial reports or outright fraud.

2.      Muddy Waters is an activist investment firm: it conducts deep-dive research and forensic accounting to assess a company's true worth, uncover business fraud, accounting fraud, and fundamental problems with opaque businesses that the market does not yet perceive.

3.      In 2024, after months of research and analysis, Muddy Waters concluded that Portuguese construction firm Defendant Mota-Engil, SGPS, S.A. ("Mota-Engil") was materially misleading its investors through, among other issues, underreporting its debt, and that Mota-Engil's controlling family was improperly extracting value from the company at the expense of the public shareholders.

1

4.    Specifically, Muddy Waters' research led it to conclude that Mota-Engil's cash generation is chronically weak; a disproportionate share of its value is captured by local partners and insiders, with roughly half of reported profit accruing to non-controlling interests; and most of the company's financial risk—debt raised by Mota-Engil or its wholly owned entities, or guaranteed by them—sits with shareholders. Muddy Waters also uncovered evidence that led it to conclude that Mota-Engil has debts in excess of those that can be reconciled with its public reports, suggesting the company is concealing the scope of its liabilities from investors. And as for Mota-Engil's governance, Muddy Waters found that the Mota family, which first started the company in 1946, has monetized control of the Mota-Engil boardroom through insider-tilted deals, and by extracting tens of millions of Euros from the company even as it breached its debt covenants three years in a row.

5.    In short, Muddy Waters concluded that Mota-Engil was ripe for a short position.

6.    Accordingly, starting in July 2024, Muddy Waters, through two of its managed funds, took short positions in Mota-Engil.

7.    As required by European and Portuguese securities regulations, Muddy Waters timely disclosed its short positions to the Portuguese Securities Market Commission (Comissão do Mercado de Valores Mobiliários or "CMVM") which, when required by applicable law, disclosed the positions to the public.

8.    Muddy Waters did not in any way coordinate with other firms to short Mota-Engil or engage in market manipulation.

9.    By September 2024, Mota-Engil's share price dropped to €2.50, down from €5.80 on March 1, 2024, which, at the time, was the highest price since 2014.

10.     On October 14, 2024, Mota-Engil's CEO, Defendant Carlos António Vasconcelos Mota dos Santos, took to the press, where he blamed the drop in Mota-Engil's share price on Muddy Waters' short positions and lamented that the company's stock is "surely worth more than twice its current value."

11.     Then, in December 2024, with Mota-Engil's share price still below €3.00, Mr. Mota dos Santos gave a lengthy interview to *Expresso*, Portugal's best-selling newspaper.

12.     Mr. Mota dos Santos appeared in the *Expresso* interview in his capacity as Mota-Engil's CEO.

13.     In the *Expresso* interview, which was published on December 26, 2024, Mr. Mota dos Santos repeatedly defamed Muddy Waters.

14.     Specifically, Mr. Mota dos Santos stated that Muddy Waters **"coordinated with other funds"** and engaged in **"market manipulation"** in a **"concerted action to destroy the value of [Mota-Engil's] stock."**

15.     Mr. Mota dos Santos' statements were false: Muddy Waters did not coordinate with other funds or engage in market manipulation. It did not take any actions "to destroy the value" of Mota-Engil's stock. It acted alone, conducted its own careful and comprehensive research, concluded that Mota-Engil was seriously overvalued as a result of the manipulation of its financial reports and the scope of extractive insider transactions, and disclosed its short positions to CMVM, as applicable regulations required.

16.     Mr. Mota dos Santos' statements were defamatory *per se* because they tend to injure Muddy Waters in its business as an investment firm and accuse Muddy Waters of engaging in "market manipulation," which is unlawful in Portugal and the European Union.

17.    Mr. Mota dos Santos' statements were also defamatory by implication because they falsely suggested that Muddy Waters did not have a good-faith basis to take short positions in Mota-Engil and instead shorted the company to manipulate the market and drive Mota-Engil's shares down.

18.    Muddy Waters now brings this suit to set the record straight, clear its name, and reverse the reputational harm caused by Mr. Mota dos Santos' defamatory statements.

## PARTIES

19.    Plaintiff Muddy Waters Capital LLC is a Delaware limited liability company and maintains its principal place of business in Austin, Texas. Muddy Waters manages the funds Muddy Waters Capital Domino Master Fund LP (the "Domino Fund") and Muddy Waters Capital Global Opportunities Master Fund LP (the "Global Opportunities Fund"), which took short positions in Mota-Engil in 2024.

20.    Defendant Mota-Engil, SGPS, S.A. is a holding company with controlling interests in subsidiaries in the civil construction and public works sectors. Mota-Engil is incorporated in Portugal and its principal place of business is in Porto, Portugal. Mota-Engil is publicly traded in Portugal on the Euronext Lisbon stock exchange.

21.    Defendant Carlos Mota dos Santos is the CEO of Mota-Engil. On information and belief, Mr. Mota dos Santos is a citizen and resident of Portugal.

## JURISDICTION AND VENUE

22.    This action arises under Texas law.

23.    This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2), as this matter in controversy exceeds the sum value of $75,000.00, Plaintiff is a citizen of Texas, and Defendants are citizens or subjects of a foreign state, Portugal.

24.    This Court has personal jurisdiction over Defendants because, as more fully set forth below, Defendants purposefully availed themselves of the benefits and protections of the State of Texas by establishing minimum contacts with Texas, Defendants' defamatory statements and conduct were expressly aimed at Texas residents, and the tortious effects of Defendants' acts were suffered by Muddy Waters in Texas.

25.    Venue lies in the Western District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, and Defendants are otherwise subject to the Court's personal jurisdiction in this district with respect to this action.

## JURY DEMAND

26.    Plaintiff demands trial by jury in this action.

## FACTS

### *Muddy Waters*

27.    Muddy Waters is an investment adviser based in Austin, Texas and registered with the United States Securities and Exchange Commission.

28.    Muddy Waters primarily focuses on short-selling companies that it believes are misleading their investors through manipulating their financial reports or outright fraud.

29.    Through its affiliate, Muddy Waters Research, Muddy Waters conducts due-diligence investigations into publicly traded securities.

30.    When Muddy Waters makes any investment in a publicly traded security, including when it takes a short position in a company, it diligently complies with all applicable securities laws and regulations, including any disclosure requirements.

*European Union Securities Regulations and Portuguese Law Prohibit Market Manipulation*

31.     EU regulations prohibit market manipulation.

32.     The EU's market manipulation regulation is contained in the Market Abuse Regulation, EU Regulation No. 596/2014 ("MAR").

33.     Article 12 of the MAR defines market manipulation as, among other things, "entering into a transaction, placing an order to trade or any other behavior which: (i) gives, or is likely to give, false or misleading signals as to the supply of, demand for, or price of, a financial instrument . . . ; or (ii) secures, or is likely to secure, the price of one or several financial instruments . . . at an abnormal or artificial level."

34.     Recital 39 of the MAR specifically states that the MAR's market manipulation prohibition also "cover[s] those persons who act in collaboration to commit market abuse."

35.     Separately, market manipulation is also a criminal offense under Portuguese law.

36.     Under Article 397 of the Portuguese Securities Code (the "Código dos Valores Mobiliários"), market manipulation ("manipulação do mercado") is an enumerated criminal offense.

37.     Under Article 397, "[a]nyone who disseminates false, incomplete, exaggerated, biased, or misleading information, carries out fictitious operations, or performs other fraudulent practices capable of artificially altering the regular functioning of the securities market or other financial instruments, is punishable by imprisonment for up to 5 years or a fine."

38.     In addition, if the defendant's conduct "causes or contributes to the artificial alteration of the regular functioning of the market, the [defendant] is punishable by imprisonment for up to 8 years."

***Muddy Waters Takes Short Positions in Mota-Engil and Discloses its Position in Compliance
with European Union Securities Regulations and Portuguese Law***

39.     Mota-Engil is a Portuguese conglomerate headquartered in Porto, Portugal.

40.     Mota-Engil was founded in 1946 by Manuel António da Mota.

41.     In 2023, founder Manuel António da Mota's grandson, Defendant Carlos Mota
dos Santos, became Mota-Engil's CEO.

42.     Mota-Engil's subsidiaries primarily operate in engineering, construction, energy,
waste management, water treatment, and industrial engineering services sectors.

43.     In 2023, Mota-Engil was the highest-performing company traded on the
Portuguese stock exchange, with its share price rising 238.4%.

44.     Starting in July 2024, Muddy Waters took short positions in Mota-Engil.

45.     Muddy Waters took its short positions in Mota-Engil through two of its managed
funds: the Domino Fund and the Global Opportunities Fund.

46.     Muddy Waters did not coordinate with any other firms in its short of Mota-Engil.
It acted alone.

47.     Muddy Waters disclosed the Domino Fund's and Global Opportunities Fund's
short positions in Mota-Engil to CMVM as mandated by European and Portuguese securities
regulations.

48.     Two of Muddy Waters' short position disclosures to CMVM passed the public
reporting threshold of 0.5% of Mota-Engil's issued share capital.

49.     On September 2, 2024, the Domino Fund filed a notification with CMVM
disclosing its net short position in Mota-Engil of 2,002,500 equivalent shares, which equaled
0.65% of Mota-Engil's issued share capital.

50.     On information and belief, the Domino Fund's September 2, 2024 disclosure was publicly published by CMVM on its website.

51.     On November 20, 2024, the Domino Fund filed a notification with CMVM disclosing its net short position in Mota-Engil of 1,769,859 equivalent shares, which equaled 0.57% of Mota-Engil's issued share capital.

52.     On information and belief, the Domino Fund's November 20, 2024 disclosure was publicly published by CMVM on its website.

53.     Other than disclosing its short positions in Mota-Engil to CMVM as required by law, Muddy Waters did not tell anyone that it was shorting Mota-Engil.

***Muddy Waters' Short of Mota-Engil Was Based on its Thorough Investigation of Mota-Engil, Which Revealed that the Company Was Materially Misleading its Investors Through, Among Other Issues, Underreporting its Debt, and that the Controlling Family Was Improperly Extracting Value from the Company at the Expense of the Public Shareholders***

54.     Muddy Waters had a good-faith basis to short Mota-Engil: Muddy Waters conducted deep research into Mota-Engil and discovered various accounting and structural flaws and discrepancies that led Muddy Waters to conclude that the market was misperceiving Mota-Engil's true value and that the company was ripe for a short position.

55.     *First*, Muddy Waters determined that Mota-Engil's cash generation is structurally weak, despite Mota-Engil reporting a massive increase in its operating cash flow in 2022.

56.     Muddy Waters' research team reconstructed Mota-Engil's cash flows and discovered that Mota-Engil's reported cash generation in 2022 was flattered by a massive increase in contract liabilities and trade payables, which contributed over €900 million to its operating cash flow. Muddy Waters concluded that other than that anomalous year, Mota-Engil's cash generation has been poor, and the company's dividends have been funded with debt.

57.    *Second*, Muddy Waters determined that, since 2018, approximately 60% of Mota-Engil's net income accrued to non-controlling interests ("NCIs"), and over half of dividends were paid to local partners in Mota-Engil's markets around the world, not to Mota-Engil shareholders. As a result, earnings before interest, taxes, depreciation, and amortization ("EBITDA") were shared with the NCIs, while debt was concentrated at the parent—Mota-Engil—and in its wholly-owned subsidiaries.

58.    *Third*, Muddy Waters found that Mota-Engil's accounts indicate that the company owes more (and more expensive) debt than it had publicly reported.

59.    In its 2023 accounts, Mota-Engil disclosed an "average cost of gross debt plus" to communicate its cost of debt to shareholders. According to Mota-Engil, its "average cost of gross debt plus" reached 7.6% on December 31, 2023.

60.    Muddy Waters determined that Mota-Engil's "average cost of gross debt plus" figure understates the company's true cost of capital and is not a useful indicator.

61.    For example, after Muddy Waters compared Mota-Engil's reported liabilities with its profits and losses and cash interest expenses, it determined that Mota-Engil's 2024 effective debt rate was 10.5-14.1%—which was significantly greater than Mota-Engil's reported averages and suggested either larger intra-period debt, higher pricing, or undisclosed or incorrect balance sheet liabilities.

62.    Similarly, when Muddy Waters calculated a weighted interest rate from Mota-Engil's disclosure, it arrived at a higher weighted average cost of debt and was still left with an unexplained approximately €50 million shortfall in implied interest versus what Mota-Engil reported. This analysis led Muddy Waters to conclude that Mota-Engil had unreported debt and/or an inaccurate or misleading balance sheet at year end.

63.     Muddy Waters also analyzed Mota-Engil's subsidiaries' local filings to build a dataset of Mota-Engil's debts by subsidiary. From local registries, Muddy Waters accessed the 2023 accounts for 81 of Mota-Engil's 230 subsidiaries and the 2024 accounts for 61 of the subsidiaries. Muddy Waters found around €160 million more debt than Mota-Engil had reported in its consolidated accounts.

64.     For example, Muddy Waters discovered that Mota-Engil had failed to disclose or mischaracterized massive debts held by its primary operating entity in Mexico, Mota-Engil Mexico ("ME Mexico"), which is 51% owned by Mota-Engil and fully consolidated.

65.     Muddy Waters reviewed security documents publicly filed by ME Mexico, which demonstrate that, in July 2023, ME Mexico obtained a debt facility that initially had a capacity of 3 billion MXN but was increased in size in October 2023 to 5 billion MXN (approximately €280 million) and then in March 2024 to 7 billion MXN (approximately €390 million).

66.     This secured credit facility was not disclosed by Mota-Engil to investors. Instead, Mota-Engil disclosed a €33 million facility in 2023, rising to €93 million by end of 2024.

67.     *Fourth*, Muddy Waters concluded that the Mota family has a history of using its board control to extract money from Mota-Engil at the expense of other shareholders.

68.     For example, Muddy Waters identified two alarming deals where the Mota family extracted cash from Mota-Engil at shareholder expense. Both of these deals happened in 2020, a time when Mota-Engil's share price was on the floor and the company had, for the third year in a row, breached debt covenants.

69.     The first deal involved the Chinese majority state-owned construction firm, China Communications Construction Company, Ltd. ("CCCC"). In 2020, CCCC was looking to take a stake in Mota-Engil and was willing to pay a control premium. The Mota family used its control

to negotiate a deal that extracted a pay-to-play fee worth over €80 million in cash to the Mota family.

70.    Specifically, the Mota family investment vehicle, Mota Gestão e Participações ("MGP"), sold 55 million existing shares in Mota-Engil to CCCC at €3.08 per share (€169 million total), which represented a massive premium to the market price of approximately €1.50 at the time, and which was not offered to minorities. Mota-Engil then carried out an equity issue on a preemptive basis at €1.50 per share, issuing 69,270,809 new shares (authorized up to 100 million shares). MGP also transferred 47.8 million rights to CCCC, which it used to subscribe for 44.4 million new shares.

71.    As a result, the Mota family monetized 55 million shares at €3.08 per share, capturing an approximately €85 million premium over the prevailing market price, and retained the dominant position (approximately 38%) in the capitalization table, post-rights issue.

72.    The second deal involved the Mota family using its investment vehicle, MGP, to flip an asset—land in Angola—to Mota-Engil for an approximately €22 million cash gain.

73.    In 2019, MGP paid an effective €50,000 to purchase a plot of land in Cabinda, a troubled coastal exclave of Angola. In 2020, the intent had been to develop a cashew nut plantation on the land, but the plan is now to grow cocoa instead.

74.    In 2020, Mota-Engil paid MGP over *€22 million* for control over this asset and, as a result, MGP made over *400 times* its investment in one year.

75.    Today, the planned cocoa plantation is still in its infancy, with no production planned until 2026 at the earliest.

76.    Muddy Waters did not publicly publish any of its research regarding Mota-Engil.

***Mr. Mota dos Santos Makes Defamatory Statements Concerning Muddy Waters During an Interview with* Expresso*, Portugal's Best-Selling Newspaper***

77.     On March 1, 2024, Mota-Engil's share price reached €5.80, its highest price since 2014.

78.     By early September 2024, Mota-Engil's share price dropped to €2.50.

79.     On September 6, 2024, the Portuguese online financial newspaper, ECO, published an article noting that, "[a]ccording to information released on the website of [CMVM], Muddy Waters Capital Domino Master Fund took a short position of 0.65% in the company's capital earlier this week. In other words, the fund is betting that the shares will fall."[1]

80.     The same article quoted Mr. Mota dos Santos, who stated: "The attack by this fund – which has been the target of market manipulation proceedings by regulators in other international markets – is incomprehensible to us and detrimental to Mota-Engil's small shareholders."

81.     On October 14, 2024, Bloomberg published an online article titled "Mota-Engil CEO Says Company Stock Worth Twice Its Current Value."[2]

82.     The Bloomberg article noted that "Mota-Engil is down 27% since it released results for the first half-year on Aug. 28 and short sellers ramped up bets against the stock. Muddy Waters Capital Domino Master Fund reported a short position of 1.99 million shares, or 0.65% of the company's stock, as of Sept. 2."

---

[1] Patricia Abreu and Antonio Costa, "Queda das ações da Mota são movimento 'especulativo que não reflete a atividade operacional', diz CEO," ECO (Sept. 5, 2024), https://eco.sapo.pt/2024/09/05/queda-das-acoes-da-mota-sao-movimento-especulativo-que-nao-reflete-a-atividade-operacional-diz-ceo/ (last visited Dec. 17, 2025).

[2] Henrique Almeida, "Mota-Engil CEO Says Company Stock Worth Twice Its Current Value," Bloomberg (Oct. 14, 2024), https://www.bloomberg.com/news/articles/2024-10-14/mota-engil-ceo-says-company-stock-worth-twice-its-current-value (last visited Dec. 17, 2025).

83.   The Bloomberg article featured quotes from Mr. Mota dos Santos, who said: "What happened between the end of August and during the month of September is a phenomenon that makes no sense to us and has to do with short positions that have no fundamental basis."

84.   Throughout December 2024, Mota-Engil's share price remained below €3.00.

85.   In December 2024, Mr. Mota dos Santos gave a lengthy interview to *Expresso*, Portugal's best-selling newspaper. A certified translation of the *Expresso* interview is annexed as Exhibit A.

86.   The interview was published in an online article on *Expresso*'s website on December 26, 2024.[3]

87.   In the *Expresso* interview, Mr. Mota dos Santos was introduced as the "president of Mota-Engil." Ex. A at 1.

88.   Throughout the *Expresso* interview, Mr. Mota dos Santos made clear that he was speaking in his capacity as Mota-Engil's CEO.

89.   For example, he repeatedly referred to Mota-Engil's ongoing railway construction projects using the first-person plural, noting: "We currently have nearly 1,800 km of railway" in Latin America, *id.* at 4; "We are by far the European company with the highest railway construction capacity," *id.* at 5; "We at Mota-Engil have proven ourselves and are as good or better than international companies," *id.* at 7.

---

[3] Pedro Lima, "Carlos Mota dos Santos, presidente da Mota-Engil: 'Os grandes atrasos nas obras são todos de empresas espanholas,'" *Expresso* (Dec. 26, 2024), https://expresso.pt/economia/2024-12-26-carlos-mota-dos-santos-presidente-da-mota-engil-os-grandes-atrasos-nas-obras-sao-todos-de-empresas-espanholas-1e6444e2 (last visited, Dec. 17, 2025).

90.     Likewise, he explained: "as a company executive, I have a duty to protect all shareholders." *Id.* at 26.

91.     In the interview, Mr. Mota dos Santos was asked about the sharp drop in Mota-Engil's share price.

92.     The interviewer asked: "In 2023, [Mota-Engil] was the champion of the Stock Exchange with a 238.4% increase in the [stock] price. From the beginning of 2024 until December 20, [Mota-Engil] was losing 30% and there were sharp declines caused by an investment fund considered a 'vulture,' Muddy Waters, who bet on the stocks to fall. Should these movements be more controlled?" *Id.* at 25.

93.     In response, Mr. Mota dos Santos made several false and defamatory statements concerning Muddy Waters.

94.     Mr. Mota dos Santos stated: "**in my view, there was market manipulation**," *id.* at 26, falsely implying that Muddy Waters engaged in market manipulation.

95.     Mr. Mota dos Santos also stated: "**I am absolutely sure that this fund is coordinated with other funds** because, although they have had a 0.65% short position that they have already lowered, we have even had short position in the order of 1% of the free-float, which is very significant. There are no coincidences. This fund may be followed by other funds, but **I take the view that there has clearly been market manipulation**." *Id.*

96.     Mr. Mota dos Santos further stated: "**I believe that there was a concerted action to destroy the value of the stock**, and that it obviously harmed all shareholders, especially the small ones." *Id.*

97.     The online article featuring the *Expresso* interview also prominently featured a pull quote in large text emphasizing: "There was market manipulation with Mota-Engil shares." *Id.* at 25.

98.     These statements, made by Mr. Mota dos Santos and in his capacity as Mota-Engil's CEO, were false. As detailed above, Muddy Waters did not engage in market manipulation. It investigated Mota-Engil, decided to take a short position in Mota-Engil based on its findings, took a short position alone and without coordinating or acting in concert with any other firms, and properly disclosed its short positions as required.

99.     The next day, December 27, 2024, Portugal's largest business journal, *Jornal de Negócios*, published an online article covering Mr. Mota dos Santos' *Expresso* interview.[4]

100.     The *Jornal de Negócios* article stated: "In an interview with Expresso this Friday, the head of Mota-Engil points the finger at the American fund Muddy Waters, and believes there is collusion with other funds in the decline of the construction company's shares, which have depreciated by 30% since the beginning of the year."

101.     *Jornal de Negócios* quoted Mr. Mota dos Santos' statements from the *Expresso* interview: "I understand that there was clearly market manipulation, a concerted action to destroy the value of the stock."

102.     The *Jornal de Negócios* article was posted online in a format that allows for readers to post public comments.

103.     One such commenter noted: "I agree that there IS manipulation."

---

[4] "Presidente da Mota-Engil pede mais regulação contra 'manipulação do mercado,'" *Jornal de Negócios* (Dec. 27, 2024), https://www.jornaldenegocios.pt/mercados/bolsa/detalhe/presidente-da-mota-engil-pede-mais-regulacao-contra-manipulacao-do-mercado (last visited, Dec. 17, 2025).

104.    Both the original December 26, 2024 *Expresso* interview and the December 27, 2024 *Jornal de Negócios* article remain published and accessible on the publications' respective websites.

105.    Both the December 26, 2024 *Expresso* interview and the December 27, 2024 *Journal de Negócios* article were and remain accessible online to readers in Texas.

**Mota-Engil's Business Dealings in Texas**

106.    Mota-Engil has active engineering and construction projects throughout Latin America, including several large infrastructure projects in Mexico.

107.    Mota-Engil has used a Houston, Texas address to import goods into the United States through Texas.

108.    On information and belief, Mota-Engil's use of a Houston, Texas address and imports through Texas are related to Mota-Engil's infrastructure projects in Mexico.

109.    For example, on September 30, 2021, Mota-Engil's Engineering and Construction division imported 21,868 kilograms of goods into the Port of Houston and used a Houston, Texas address on its formal filings with United States Customs and Border Protection ("CBP").

110.    Likewise, on October 29, 2021, Mota-Engil subsidiary Mota-Engil Europa, S.A. imported 26,961 kilograms of goods into the Port of Houston and used a Houston, Texas address on its formal filings with CBP.

111.    By using a Houston, Texas address and directing imports through Texas, Mota-Engil purposefully availed itself of the privilege of conducting activities within Texas, and thereby invoked the benefits and protections of Texas's laws.

16

**COUNT I**
**Defamation**
**(Against All Defendants)**

112.    Muddy Waters realleges and incorporates by reference each allegation contained in the preceding paragraphs as if the same were fully set forth herein.

113.    Mr. Mota dos Santos caused the publication of false statements of fact to a third party in the *Expresso* interview.

114.    In the *Expresso* interview, Mr. Mota dos Santos stated that Muddy Waters "coordinated with other funds" and engaged in "market manipulation" in a "concerted action to destroy the value of [Mota-Engil's] stock."

115.    Mr. Mota dos Santos' statements were published on December 26, 2024 in *Expresso*, Portugal's best-selling newspaper, and published again on December 27, 2024 in an article in the *Jornal de Negócios* website. The online *Expresso* and *Jornal de Negócios* articles were published to a worldwide audience and, as of today, remain available online.

116.    Mr. Mota dos Santos' statements at issue in the *Expresso* interview were explicitly of and concerning Muddy Waters.

117.    Mr. Mota dos Santos' statements at issue in *Expresso* interview were intended to convey, and were understood by readers of ordinary intelligence as conveying, the factual assertion that Muddy Waters "coordinated with other funds" to engage in "market manipulation" when it took a short position in Mota-Engil, i.e., unlawful conduct.

118.    Mr. Mota dos Santos' statements at issue in the *Expresso* interview are false and defamatory. The accusation that Muddy Waters "coordinated with other funds" to engage in "market manipulation" is false and tends to harm Muddy Waters' reputation so as to lower

Muddy Waters in the estimation of the community or to deter third persons from associating or dealing with it.

119.    Mr. Mota dos Santos' statements at issue in the *Expresso* interview are also defamatory *per se* in that they tend to affect Muddy Waters in its business as an investment firm and accuse Muddy Waters of engaging in unlawful conduct.

120.    Mr. Mota dos Santos' statements at issue in the *Expresso* interview caused harm to Muddy Waters' reputation.

121.    Mr. Mota dos Santos knew or reasonably should have known that his defamatory statements described herein were false, or, in the alternative, that he made the defamatory statements in reckless disregard for the truth.

122.    As a direct and proximate result of the publication of the false and defamatory statements described herein, Muddy Waters has suffered damages, including injury to reputation and economic damages in an amount to be determined at trial.

123.    Mota-Engil is vicariously liable for Mr. Mota dos Santos' tortious conduct because Mr. Mota dos Santos was acting in the scope of his employment as CEO of Mota-Engil when he made the statements during the *Expresso* interview.

**COUNT II**
**Defamation by Implication**
**(Against All Defendants)**

124.    Muddy Waters realleges and incorporates by reference each allegation contained in the preceding paragraphs as if the same were fully set forth herein.

125.    Mr. Mota dos Santos caused the publication of false statements of fact to a third party in the *Expresso* interview.

126.    In the *Expresso* interview, Mr. Mota dos Santos stated that Muddy Waters "coordinated with other funds" and engaged in "market manipulation" in a "concerted action to destroy the value of [Mota-Engil's] stock."

127.    Mr. Mota dos Santos' statements were published on December 26, 2024 in *Expresso*, Portugal's best-selling newspaper, and published again on December 27, 2024 in an article in the *Jornal de Negócios* website. The online *Expresso* and *Jornal de Negócios* articles were published to a worldwide audience and, as of today, remain available online.

128.    Mr. Mota dos Santos' statements at issue in the *Expresso* interview were explicitly of and concerning Muddy Waters.

129.    Mr. Mota dos Santos' statements at issue in *Expresso* interview described above were reasonably capable of conveying, and were understood by readers of ordinary intelligence as conveying, the factual assertion that Muddy Waters did not have a good-faith basis to take short positions in Mota-Engil, and instead took those positions in an effort to manipulate the market and decrease Mota-Engil's share price.

130.    Mr. Mota dos Santos' statements at issue in the *Expresso* interview are false and defamatory. The accusation that Muddy Waters took short positions in Mota-Engil to manipulate the market and decrease Mota-Engil's share price—and the implication that Muddy Waters lacked a good-faith basis to take short positions in Mota-Engil—is false and tends to harm Muddy Waters' reputation so as to lower Muddy Waters in the estimation of the community or to deter third persons from associating or dealing with it. In fact, Muddy Waters' decision to take short positions in Mota-Engil was based on the outcome of its own good-faith research, which in turn drew on publicly available information about Mota-Engil, as set forth herein, and which led Muddy Waters to conclude that Mota-Engil was materially misleading its investors through,

among other issues, underreporting its debt, and that Mota-Engil's controlling family was improperly extracting value from the company at the expense of the public shareholders.

131.    Mr. Mota dos Santos' October 14, 2024 statement to Bloomberg that Muddy Waters' short position had "no fundamental basis" further demonstrates that the statements at issue in the *Expresso* interview were intended to imply that Muddy Waters lacked a good-faith basis to take short positions in Mota-Engil.

132.    Mr. Mota dos Santos' statements at issue in the *Expresso* interview caused harm to Muddy Waters' reputation.

133.    Mr. Mota dos Santos knew or reasonably should have known that his defamatory statements described herein were false, or, in the alternative, that he made the defamatory statements in reckless disregard for the truth.

134.    As a direct and proximate result of the publication of the false and defamatory statements described herein, Muddy Waters has suffered damages, including injury to reputation and economic damages in an amount to be determined at trial.

135.    Mota-Engil is vicariously liable for Mr. Mota dos Santos' tortious conduct because Mr. Mota dos Santos was acting in the scope of his employment as CEO of Mota-Engil when he made the statements during the *Expresso* interview.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

1.  All pleaded damages suffered by Plaintiff;

2.  Pre-judgment and post-judgment interest;

3.  Attorneys' fees and costs; and

4.  Such other and further relief as the Court deems appropriate.

Dated: December 19, 2025

**GUERRERO & WHITTLE PLLC**

_/s/ Ketan U. Kharod_
Ketan U. Kharod
TX Bar No. 24027105

2905 San Gabriel Street, Suite 309
Austin, Texas 78705
ketan@gwjustice.com
(512) 605-2300

**EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP**

Andrew G. Celli Jr.*
Samuel Shapiro*
Nick Bourland*

One Rockefeller Plaza, 8th Floor
New York, New York 10020
acelli@ecbawm.com
sshapiro@ecbawm.com
nbourland@ecbawm.com
(212) 763-5000

_Attorneys for Plaintiff Muddy Waters
Capital LLC_

*_Pro Hac Vice_ motion pending