**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

MUDDY WATERS CAPITAL LLC,

        Plaintiff,

v.

CARLOS ANTÓNIO VASCONCELOS MOTA
DOS SANTOS and MOTA-ENGIL, SGPS, S.A.,

        Defendants.

Civil Case No. 1:25-cv-02090

**DEFENDANTS' MOTION TO DISMISS BASED ON FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

INTRODUCTION & SUMMARY OF ARGUMENT ............................................................. 1

BACKGROUND ................................................................................................................... 3

    I.      Muddy Waters's Short Position in Mota-Engil ................................................. 3

    II.    The *Expresso* Interview Statements ................................................................. 5

    III.   Procedural History and Claims ......................................................................... 6

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ........................................................................................................................ 7

    I.      The Complaint Fails to State a Defamation Claim ........................................... 7

          A.  The *Expresso* interview statements are non-actionable opinions. ......................... 8

          B.  The Complaint fails to plead actual malice............................................................11

          C.  The Complaint fails to plausibly plead damages. ................................................. 14

          D.  The "defamation-by-implication" theory fails for additional reasons. ................. 16

    II.    *Respondeat Superior* Liability Against Mota-Engil Is Conclusory and Implausible ... 18

CONCLUSION..................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bedford v. Spassoff*,
   520 S.W.3d 901 (Tex. 2017)................................................................................14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................7

*Brewer v. Cap. Cities/ABC*,
   986 S.W.2d 636 (Tex. App.-Fort Worth 1998, no pet.)..........................................9

*Carlson v. CRH Ams. Materials, Inc.*,
   A-25-CV-920-ADA-ML, 2025 WL 3463685 (W.D. Tex. Nov. 12, 2025),
   *report and recommendation adopted*, 2025 WL 3556114 (W.D. Tex. Dec. 10,
   2025) ...........................................................................................................13, 19

*In re CompUSA, Inc. Sec. Lit.*,
   No. 3:94-CV-1151-H, 1995 WL 811960 (N.D. Tex. Oct. 30, 1995) .......................4

*Corrosion Prevention Techs., LLC v. Hatle*,
   No. 4:20-CV-2201, 2020 WL 6202690 (S.D. Tex. Oct. 22, 2020) .........................14

*Corsi v. Infowars, LLC*,
   A-20-CV-298-LY, 2021 WL 2115272 (W.D. Tex. May 25, 2021), *report and
   recommendation adopted*, 2021 WL 4955914 (W.D. Tex. June 25, 2021)............11

*Cummins v. SunTrust Cap. Mkts., Inc.*,
   416 Fed. App'x 101 (2d Cir. 2011).....................................................................10

*D Mag. Partners, L.P. v. Rosenthal*,
   529 S.W.3d 429 (Tex. 2017)............................................................................7, 17

*Dallas Morning News, Inc. v. Tatum*,
   554 S.W.3d 614 (Tex. 2018)....................................................................... *passim*

*Fiber Sys. Int'l, Inc. v. Roehrs*,
   470 F.3d 1150 (5th Cir. 2006) ...........................................................................15

*Galotta v. Muddy Waters Cap., LLC et al*,
   Docket No. 4:21-cv-05556 (N.D. Cal. Jul 20, 2021)..............................................4

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000)...............................................................................4

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
　97 F.4th 1171 (9th Cir. 2024) .................................................................................3

*Glassdoor, Inc. v. Andra Grp., L.P.*,
　575 S.W.3d 523 (Tex. 2019).................................................................................6

*Grifols, S.A. v. Yu*,
　24-cv-576, 2025 WL 1826611 (S.D.N.Y. July 2, 2025)................................10, 15

*Hancock v. Variyam*,
　400 S.W.3d 59 (Tex. 2013).................................................................................14

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
　491 U.S. 657 (1989).............................................................................................11

*Immanuel v. Cable News Network, Inc.*,
　618 F. Supp. 3d 557 (S.D. Tex. 2022) ..........................................................12, 13

*KTRK Television, Inc. v. Robinson*,
　409 S.W.3d 682 (Tex. 2013)...............................................................................15

*Lilith Fund for Reprod. Equity v. Dickson*,
　662 S.W.3d 355 (Tex. 2023)...............................................................................10

*Linan v. Strafco, Inc.*,
　No. 13-05-027-CV, 2006 WL 1766204 (Tex. App.—Corpus Christi–Edinburg
　June 29, 2006, no pet.) ...................................................................................11, 15

*In re Lipsky*,
　460 S.W.3d 579 (Tex. 2015)...................................................................14, 15, 16

*Lyons v. Starbucks Coffee Co.*,
　No. 3:19-cv-2457-S-BT, 2020 WL 5732638 (N.D. Tex. Aug. 24, 2020),
　*report and recommendation adopted*, 2020 WL 5710245 (N.D. Tex. Sep. 24,
　2020) ...................................................................................................................19

*Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*,
　16 F.4th 1144 (5th Cir. 2021) .............................................................................16

*Maxwell v. Henry*,
　815 F. Supp. 213 (S.D. Tex. 1993) .....................................................................14

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
　17-CV-07568, 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018), *report and
　recommendation adopted*, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018).............10

*Minyard Food Stores, Inc. v. Goodman*,
　80 S.W.3d 573 (Tex. 2002)..................................................................................18

*Mitchem v. Fannie Mae*,
  571 Fed. App'x 298 (5th Cir. 2014) ..................................................................7

*Oberc v. Fairlane Cap. Inc.*,
  No. 3:13-CV-1010-N-BH, 2016 WL 3039658 (N.D. Tex. May 2, 2016),
  *report and recommendation adopted*, 2016 WL 3031949 (N.D. Tex. May 27,
  2016) ...............................................................................................................11

*Prime Hydration LLC v. Garcia*,
  No. 3:24-CV-1260-L, 2025 WL 963361 (N.D. Tex. Mar. 31, 2025).....................13

*Snead v. Redland Aggregates Ltd.*,
  998 F.2d 1325 (5th Cir. 1993) ..........................................................................13

*Solutions 30 E. Europe s.r.l. et al v. Muddy Waters Cap. LLC, et al*,
  Docket No. 4:21-cv-02423 (N.D. Cal. Apr 02, 2021) ...........................................4

*St. Jude Med., LLC v. Muddy Waters LLC, et al*,
  Docket No. 0:16-cv-03002 (D. Minn. Sep 06, 2016) ............................................4

*Sugarman v. Muddy Waters Cap., LLC et al*,
  File No. 27-CV-21-11850 (Hennepin County, Minnesota Dist. Ct., September
  29, 2021) ............................................................................................................4

*Techtronic Indus. Co. Ltd. v. Muddy Waters Cap. LLC, et al*,
  Docket No. 1:25-cv-00249 (W.D. Tex. Feb 20, 2025) ...........................................4

*Teel v. Deloitte & Touche LLP*,
  No. 3:15-CV-2593-G, 2015 WL 9478187 (N.D. Tex. Dec. 29, 2015)......................8

*Trotter v. Jack Anderson Enters., Inc.*,
  818 F.2d 431 (5th Cir. 1987) ............................................................................12

*Tu Nguyen v. Duy Tu Hoang*,
  318 F.Supp.3d 983 (Tex. 2018) ..........................................................................8

*Turner v. KTRK Television, Inc.*,
  38 S.W.3d 103 (Tex. 2000)..........................................................................16, 17

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) .......................................................................13, 14

*WFAA-TV, Inc. v. McLemore*,
  978 S.W.2d 568 (Tex. 1998)..............................................................................12

*White v. Fraternal Ord. of Police*,
  909 F.2d 512 (D.C. Cir. 1990) ..........................................................................17

*Wrenn v. G.A.T.X. Logistics, Inc.*,
    73 S.W.3d 489 (Tex. App.—Fort Worth 2002, no pet.) ..........................................................18

*Wu v. GSX Techedu Inc.*,
    738 F. Supp. 3d 527 (D.N.J. 2024) ........................................................................................3

**Statutes**

Tex. Civ. Prac. & Rem. Code § 16.002 ......................................................................................1

Tex. Civ. Prac. & Rem. Code § 73.001 ......................................................................................8

Tex. Civ. Prac. & Rem. Code § 73.005(a) ................................................................................9

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Carlos António Vasconcelos Mota dos Santos ("Mota Santos") and Mota-Engil, SGPS, S.A. ("Mota-Engil" or the "Company") file this motion to dismiss Plaintiff Muddy Waters Capital LLC's ("Muddy Waters" or "Plaintiff") Complaint and respectfully ask that the Court dismiss all claims with prejudice.

## INTRODUCTION & SUMMARY OF ARGUMENT

Muddy Waters is a well-known activist short seller that makes money by betting a company's stock price will fall. It often uses its substantial public microphone to publicize negative "findings" about its targets after it takes a short position.

In 2024, it took a gambit with a large short position in Mota-Engil. Muddy Waters's short position was widely covered and discussed in the Portuguese press, including in an interview of Mota-Engil's CEO by a Portuguese newspaper. Now, a year later, Muddy Waters is unhappy because Mota-Engil's stock has climbed significantly, meaning, Muddy Waters's current short position is likely out of the money, which may result in losses absent some previous attempt at a cover or hedge. On the eve of a time-bar,[1] Muddy Waters filed this action relating to Mota-Engil's CEO's interview under the guise of a defamation lawsuit as a means to broadcast purported "findings" about Mota-Engil, a foreign issuer with no ties to Texas,[2] in hopes to improve its own investment position. For several independent reasons, the Court should reject Muddy Waters's claims and dismiss the lawsuit.

*First*, on their face, the challenged interview remarks are non-actionable statements of opinion that the law protects. They appear in a multi-page Q&A in a Portuguese publication,

---

[1] In Texas, the statute of limitations for defamation (both libel and slander) is one year from the date the statement was published or spoken. TEX. CIV. PRAC. & REM. CODE § 16.002.

[2] This case should also be dismissed for lack of personal jurisdiction and, alternatively on *forum non conveniens* grounds, as set forth in Defendants' contemporaneously filed motions.

*Expresso*, that ranged across sectoral and policy topics, and they arose only when the reporter asked about Muddy Waters's already public short position; in response, Mota-Engil's CEO expressly and repeatedly framed his remarks as his personal view, acknowledged his uncertainty of the ultimate facts, and called for better regulation around short-selling practices. Beyond these non-actionable statements of qualified opinion on a matter of public concern, the Complaint identifies no other supposedly defamatory statement about Muddy Waters.

*Second*, Muddy Waters is a well-known short seller that publicly disclosed its short position in Mota-Engil, which was widely reported on by the Portuguese press. The statements at issue merely responded to an interviewer's question about that public topic. In that context, Muddy Waters is a limited-purpose public figure, and therefore, Muddy Waters had to plausibly plead that Mr. Mota Santos's alleged comments were made with *actual malice*—that is, subjective awareness of falsity. The Complaint falls far short of pleading actual malice. Instead, it offers only conclusory labels which the Fifth Circuit has deemed insufficient.

*Third*, Muddy Water's "per se" defamation theory fails as a matter of law because Mr. Mota Santos's statement that he believed there may have been potential "market manipulation," especially given its context within a policy-laden interview and in response to a question about regulatory reform, does not "unambiguously" impute a specific criminal offense or otherwise accuse Muddy Waters of criminal conduct. Indeed, the very fact that the Complaint has to resort to extrinsic sources to argue otherwise (by citing to alleged portions of the Portuguese and EU criminal codes) shows that Mr. Mota Santos's statements cannot be defamation per se. As such, the Complaint must plead damages, and its failure to do so provides another basis for dismissal.

*Finally*, the Complaint's attempt to hold Mota-Engil vicariously liable rests on nothing more than the conclusory assertion that Mr. Mota Santos spoke "in the scope of his employment." For

*respondeat superior*, Texas law requires factual allegations that the employee's conduct fell within his authority, furthered the employer's business, and served the purpose for which he was hired— yet the Complaint offers only a bare legal label with no supporting facts.  Moreover, the Complaint ignores that during the *Expresso* interview, Mr. Mota Santos *expressly disclaimed* that his opinions reflected those of the Company.  Courts routinely dismiss *respondeat superior* claims in these circumstances.

Stripped of rhetoric, this suit is a meritless attempt by an unscrupulous firm with a checkered history to leverage the courtroom to amplify its own investment "thesis" and salvage its failing investment.  Even if there were any meaningful Texas connection—which there is not—the Complaint does not come close to stating a viable claim.

## BACKGROUND

### I.    Muddy Waters's Short Position in Mota-Engil

Mota-Engil is a Portuguese holding company with controlling interests in subsidiaries that mainly operate in civil construction and public works sectors in Europe, Africa, and Latin America; Mota-Engil is incorporated in Portugal and has its principal place of business in Porto, Portugal. Compl. ¶ 20.  Its stock is publicly traded in Portugal on the Euronext Lisbon stock exchange.  *Id*. Mr. Mota Santos is Mota-Engil's CEO.  *Id*. ¶ 21.  Muddy Waters is an "activist" investment firm whose business model is based on short-selling public stocks.  *See id*. ¶¶ 27–30.  "Short selling" involves borrowing shares from a broker and agreeing to return them at a later time.  *See Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 550 n.24 (D.N.J. 2024).  The short seller then sells the borrowed stock, betting that its price will decline before the short seller has to buy replacement shares to return to the broker.  *Id*.  "Activist" short sellers take a short position in the company's stock and then often publish negative reports purporting to explain why the company's share price is overvalued.  *See In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1178 n.3 (9th Cir. 2024).  If all goes according

to plan, the market reacts and the stock price will plummet.  When that happens, Muddy Waters makes a considerable profit, while the target company might crumble for reasons unrelated to the fundamentals of the business, or be subjected to unwarranted regulatory investigation.  Muddy Waters's business activities have subjected it to repeated defamation suits in U.S. courts.[3]

In July 2024, Muddy Waters took short positions in Mota-Engil through two of its managed funds: the Domino Fund and the Global Opportunities Fund.  Compl. ¶¶ 44–45.  Around that time, Mota-Engil's share price was trading at around €3.50.[4]  On September 2, 2024, Muddy Waters publicly disclosed its short positions to the Portuguese Securities Market Commission (*Comissão do Mercado de Valores Mobiliários,* "CMVM"), which published them.  *Id.* ¶¶ 47–50.  Muddy Waters's short stake was covered widely in the Portuguese press.  *Id.* ¶¶ 79, 82.  By early September 2024, Mota-Engil's share price dropped to €2.50.  *Id.* ¶ 78.

By December 24, 2025, Mota Engil's stock price had risen above €5.00.[5]  Muddy Waters initially did not publish a report on its "thesis" with respect to Mota-Engil.  But with the increase in

---

[3] *See, e.g.*, *Techtronic Indus. Co. Ltd. v. Muddy Waters Cap. LLC, et al*, Docket No. 1:25-cv-00249 (W.D. Tex. Feb 20, 2025) (libel and defamation); *Sugarman v. Muddy Waters Cap., LLC et al*, File No. 27-CV-21-11850 (Hennepin County, Minnesota Dist. Ct., September 29, 2021); *Galotta v. Muddy Waters Cap., LLC et al*, Docket No. 4:21-cv-05556 (N.D. Cal. Jul 20, 2021); *Solutions 30 E. Europe s.r.l. et al v. Muddy Waters Cap. LLC, et al*, Docket No. 4:21-cv-02423 (N.D. Cal. Apr 02, 2021); *St. Jude Med., LLC v. Muddy Waters LLC, et al*, Docket No. 0:16-cv-03002 (D. Minn. Sep 06, 2016).

[4] Mota-Engil's relevant historical stock prices are published via Yahoo! Finance Historical Quotes Chart, available at https://finance.yahoo.com/quote/EGL.LS/history/?period1=1614366797&period2=1772133177 (last accessed Feb. 26, 2026).  "Judicial notice of stock prices is proper pursuant to rule 201(f) of the Federal Rules of Evidence." *In re CompUSA, Inc. Sec. Lit.*, No. 3:94-CV-1151-H, 1995 WL 811960, at *9, n.14, (N.D. Tex. Oct. 30, 1995) (citation omitted); *see also Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000) (noting that "the district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment").

[5] *See supra*, Yahoo! Finance Historical Quotes Chart.

Mota-Engil's stock price since September 2024, Muddy Waters filed the Complaint to publish false and misleading "findings" about Mota-Engil of the ilk Muddy Waters regularly publishes to drive down the price of a target's stock.

## II.    The *Expresso* Interview Statements

In December 2024, Mr. Mota Santos gave a lengthy interview to *Expresso*, a Portuguese newspaper.  Compl. ¶ 85.  The interview, which was conducted in Portugal and in the Portuguese language, was published in an online article on *Expresso*'s website on December 26, 2024.  *Id*. ¶ 86. It spanned 29 pages and touched on a variety of business and regulatory topics facing the Company. *Id*. ¶ 86, Ex. A.  In one paragraph, the reporter posed a question to Mr. Mota Santos regarding Muddy Waters's disclosed short position:

> **Interviewer:** In 2023, [Mota-Engil] was the champion of the Stock Exchange with a 238.4% increase in the price. From the beginning of 2024 until December 20, [Mota-Engil] was losing 30% and there were sharp declines caused by an investment fund considered a 'vulture', Muddy Waters, who bet on the stocks to fall. Should these movements be more controlled?

> **Mr. Mota Santos:** They should. I think there is market manipulation. I am not a capital market specialist or capital market regulation expert, but in my view, there was market manipulation, especially because this fund is extremely well-known in some markets. It had a complicated process with the SEC in the United States and a market manipulation process in Germany. I am absolutely sure that this fund is coordinated with other funds, because, although they have had a 0.65% short position that they have already lowered, we have even had a short position in the order of 14% of the free-float, which is very significant. There are no coincidences. This fund may be followed by other funds, but I take the view there has clearly been market manipulation. It's my personal opinion, it doesn't mean it's the company's opinion. I am a shareholder and as a shareholder I feel damaged by what happened and as a company executive I have a duty to protect all shareholders, from the smallest to the largest. I believe that there was a concerted action to destroy the value of the stock and

that it obviously harmed all the shareholders, especially the small ones. There must be better regulation in relation to these matters.

*Id.* [6]

## III.    Procedural History and Claims

On December 19, 2025—just five days before its claims would become time-barred—Muddy Waters filed the instant lawsuit asserting defamation claims against Mota-Engil and Mr. Mota Santos. Specifically, the Complaint alleges that, "[i]n the *Expresso* interview, Mr. Mota Santos stated that Muddy Waters 'coordinated with other funds' and engaged in 'market manipulation' in a 'concerted action to destroy the value of [Mota-Engil's] stock.'" Compl. ¶ 114.[7] Muddy Waters claims these statements were "false" because it "did not engage in market manipulation." *Id.* ¶ 98. It claims the statements "were defamatory *per se* because they tend to injure Muddy Waters in its business" and accuse Muddy Waters of engaging in "market manipulation," which is allegedly "unlawful in Portugal and the European Union." *Id.* ¶¶ 16, 120–123. Alternatively, Muddy Waters claims the statements were "defamatory by implication" because they "falsely suggested that Muddy Waters did not have a good-faith basis to take short positions in Mota-Engil…" *Id.* ¶¶ 17, 124–135. On these grounds, the Complaint asserts two causes of action: Count I, defamation (*id.* ¶¶ 112–123), and Count II, defamation by implication (*id.* ¶¶ 124–135).

---

[6] All translations are pulled from the Complaint, and Defendants do not concede the accuracy for any purpose other than solely for this motion.

[7] The Complaint also alleges that, on December 27, 2024, Portugal's largest business journal, *Jornal de Negócios*, published an online article covering Mr. Mota Santos's *Expresso* interview. *Id.* ¶ 99. However, Muddy Waters does not cite the *Jornal de Negócios* article as a basis for its claims, nor could it: it contained no new statements by Mr. Mota Santos, and is non-actionable under Texas's "single publication rule," which provides that any one edition of a publication containing the defamatory material shall be deemed to be a single publication. *See Glassdoor, Inc. v. Andra Grp., L.P.*, 575 S.W.3d 523, 528 (Tex. 2019).

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must provide the grounds for relief with "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Id*. at 555 (internal citations omitted). In the Rule 12(b)(6) context, in addition to the pleading itself, a court may consider "the documents attached to the complaint, the documents attached to the motion to dismiss which were referred to in the complaint and central to Plaintiffs' claim, as well as taking judicial notice of matters of public record." *Mitchem v. Fannie Mae*, 571 Fed. App'x 298, 299 (5th Cir. 2014) (citations omitted).

## ARGUMENT

### I.    The Complaint Fails to State a Defamation Claim

Under Texas law,[8] to prevail on a defamation claim, a plaintiff must establish that: "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement;… and (4) damages (unless the statement constitutes defamation *per se*)." *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). A statement is defamatory "if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity,

---

[8] For purposes of this motion only, Defendants assume that Texas law applies because the Complaint pleads only Texas legal claims. As described in Defendants' motion to dismiss on *forum non conveniens* grounds, Texas choice-of-law principles require the application of Portuguese law given the exclusively Portuguese locus of the speech, audience, and subject matter. *See* Dkt. 14 at 8–9. To the extent any claims survive the pleading stage, Defendants expressly do not concede that Texas law governs.

virtue, or reputation."  TEX. CIV. PRAC. & REM. CODE § 73.001.  These elements apply whether the allegedly defamatory statement is explicit or implied.

    **A.**    **The *Expresso* interview statements are non-actionable opinions.**

Statements that cannot be verified as false cannot form the basis of a defamation claim.  *Tu Nguyen v. Duy Tu Hoang*, 318 F.Supp.3d 983, 1007 (Tex. 2018).  Expressions of opinion are not actionable.  *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *4 (N.D. Tex. Dec. 29, 2015).  Whether a statement constitutes opinion or verifiable fact is a question of law resolved from a reasonable reader's perspective of the entire publication.  *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018).  Even verifiable statements are not actionable if, when viewed in context, a reasonable person would interpret them as opinions.  *Id*.  For several reasons, the statements at issue in this case are non-actionable as a matter of law because they are subjective opinions.

First, Texas courts recognize that language conveying a personal viewpoint—"I think," "in my view"—signifies opinion, not verifiable facts.  *Tatum*, 554 S.W.3d at 639–40.  Here, every single one of the targeted statements was expressly conveyed as Mr. Mota Santos's personal judgment based on his observations of public market activity.  *See, e.g.*, Compl. ¶ 86 Ex. A at 25 ("***I am not a capital market specialist or capital market regulation expert, but in my view***, there was market manipulation"; "***I am absolutely sure*** that this fund is coordinated with other funds because [there was a sudden increase in the percentage of free float shorted, and] ***[t]here are no coincidences***"; "***This fund may be followed by other funds, but I take the view*** there has clearly been market manipulation"; and "***I believe*** that there was a concerted action to destroy the value of the stock") (emphases added).  He went out of his way to explain that he was making a value judgment based on available facts.  *See, e.g.*, *id*. ("***It's my personal opinion***…."; "***I am not a capital market specialist or capital market regulation expert***").

Second, Mr. Mota Santos also disclosed the basis for his opinions. He noted the sudden share-price decline following Muddy Waters's disclosure, which coincided with a sharp rise in the percentage of free float shares shorted. *Id*. (after Muddy Waters took "a 0.65% short position that they have already lowered, we have even had a short position in the order of 14% of the free-float, which is very significant."). He also noted that Muddy Waters "is extremely well-known in some markets" and had faced prior scrutiny by U.S. and German regulators. *Id*. Notably, Muddy Waters does not challenge the veracity of any of these factual statements—it only challenges the personal opinions Mr. Mota Santos's formed based upon the stated facts. When a speaker discloses the facts and then offers a conclusion, courts treat the conclusion as non-actionable opinion because readers can evaluate the same disclosed premises. *Brewer v. Cap. Cities/ABC*, 986 S.W.2d 636, 643 (Tex. App.—Fort Worth 1998, no pet.). And statements that simply interpret disclosed facts are non-actionable opinions. *See Tatum*, 554 S.W.3d at 639–40. Moreover, the statement that Muddy Waters "coordinated" its investment or engaged in "concerted action" among different funds is true based on the Complaint itself, which confirms that Muddy Waters, at a minimum, caused two separate managed funds to simultaneously short the stock. *See* Compl. ¶¶ 44–45. Truth is an absolute defense to any defamation claim. *See Tatum*, 554 S.W.3d at 640 (citing Tex. Civ. Prac. & Rem. Code § 73.005(a) ("The truth of the statement in the publication on which an action for libel is based is a defense to the action.")).

And Mr. Mota Santos went further—even after explaining, repeatedly, that the statements were his personal opinions and explaining his basis, he still acknowledged that he was merely speculating based on the available facts. *See, e.g.*, *id*. ("***It's my personal opinion****….*"; "***I am not a capital market specialist or capital market regulation expert***"). Indeed, he even acknowledged that it was possible that other funds had merely opted to follow Muddy Waters—he just did not believe

it.  *See id.* ("***There are no coincidences. This fund may be followed by other funds, but I take the view there has clearly been market manipulation. It's my personal opinion . . .***").

Third, the public-debate context renders even more protection to these opinion statements. Texas and federal courts have especially emphasized that defamation law cannot be used to muzzle opinions asserted in ongoing public debates.  *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 366–68 (Tex. 2023) (no defamation where the defendant was not "disseminating facts about particular conduct, but rather advocacy and opinion responding to that conduct" including "his opinion about the legality and morality of that conduct.").  For that reason, courts have repeatedly found that opinions concerning the stock market and publicly traded securities are non-actionable, especially when clearly described as such.  *See, e.g.*, *Cummins v. SunTrust Cap. Mkts., Inc.,* 416 Fed. App'x 101, 103–104 (2d Cir. 2011) (characterization of option grants as "self-interested, abusive, unethical, unjustifiable, a manipulation of securities regulations, and akin to backdating were non-actionable . . . . While [Plaintiff] quarrels with the negative implications of these characterizations, such implications do not transform the characterizations from expressions of opinion into statements of fact.") (citations omitted); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP,* 17-CV-07568, 2018 WL 847014, at *7 (S.D.N.Y. Jan. 12, 2018), *report and recommendation adopted*, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) (collecting cases);  *Grifols, S.A. v. Yu*, 24-cv-576, 2025 WL 1826611, at *19 (S.D.N.Y. July 2, 2025) (no viable defamation claim where  published report stated that transaction was "unexplained" and "make[s] no sense" and is "out of line" based on available data, such statements did not suggest speaker knew of nonpublic facts but merely reflected speaker's "inherently unverifiable" value judgments).

Here, the *Expresso* interviewer asked whether the practice of short selling should be "more controlled," and elicited the CEO's views about market behavior and regulation.  This Q&A format

10

invited normative commentary regarding a matter of public concern.  In this posture, a reasonable reader could *only* interpret the statement that "there was market manipulation"—especially when based on uncontested facts and expressly couched as the speaker's own personal "view"—as Mr. Mota Santos's opinion, which the law entitles him to express.  *See Oberc v. Fairlane Cap. Inc*., No. 3:13-CV-1010-N-BH, 2016 WL 3039658, at *7 (N.D. Tex. May 2, 2016), *report and recommendation adopted*, 2016 WL 3031949 (N.D. Tex. May 27, 2016) (plaintiff failed to state a claim where defendant "was merely providing his 'sense' of what happened and what he 'think[s]' took place," notwithstanding that defendant "expressed the possibility that Plaintiff . . . colluded in some form" of criminal act); *Linan v. Strafco, Inc.*, No. 13-05-027-CV, 2006 WL 1766204, at *5 (Tex. App.—Corpus Christi–Edinburg June 29, 2006, no pet.) (finding statement that "[i]t is my suspicion and belief that [the plaintiff] was involved in the attempted theft" to be an "opinion[ ] and characterization[ ]").  As a result, both defamation claims fail as a matter of law, and dismissal is appropriate.

### B.    The Complaint fails to plead actual malice.

Both defamation claims also fail for the independent reason that Muddy Waters fails to plead the requisite degree of fault.  The correct standard of fault in this case is "actual malice" because Muddy Waters is a limited-purpose public figure vis-à-vis its short position in Mota-Engil.  "Actual malice is a high burden." *Corsi v. Infowars, LLC*, A-20-CV-298-LY, 2021 WL 2115272, at *6 (W.D. Tex. May 25, 2021), *report and recommendation adopted*, 2021 WL 4955914 (W.D. Tex. June 25, 2021) (citation omitted).  It requires showing "that the defendant in fact entertained serious doubts as to the truth of his publication," and "that the defendant actually had a 'high degree of awareness of ... [the] probable falsity'" of his statements.  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (omission in original) (citations omitted).

In Texas, a plaintiff is a limited purpose public figure if: (1) the controversy at issue is public "both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;" (2) the plaintiff had more than a trivial or tangential role in the controversy; and (3) the alleged defamation is germane to the plaintiff's participation in the controversy. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (citing *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987)).[9]  Those factors are all met here.

First, the Complaint's own allegations demonstrate the public nature of the controversy that Mr. Mota Santos remarked upon: Muddy Waters's short position in Mota-Engil was widely reported in the Portuguese press during the months leading up to the *Expresso* interview, leading the interviewer to affirmatively raise the topic.  Compl. ¶¶ 79, 82.  Second, Muddy Waters's role in the controversy is patent: it is an activist investment adviser that routinely publishes about global businesses through its own publications and on other outlets; it injected itself here by choosing to take a significant short position in Mota-Engil, which it knew would trigger reporting requirements (indeed, its purchases were just over the reporting threshold) and thereby receive widespread publicity.  *Id*. ¶¶ 1–4, 19, 27–55.  As an experienced investment firm, Muddy Waters knew prior to investing that its position would be made public and thus that it would garner attention in the press— indeed, publicizing its short stakes is a core part of Muddy Waters's business model.  Third, Mr.

---

[9] As to the second prong, in examining the size of a person's role in a controversy, Texas courts have looked to "(1) whether the plaintiff actually sought publicity surrounding the controversy, (2) whether the plaintiff had access to the media, and (3) whether the plaintiff voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation." *McLemore*, 978 S.W.2d at 572–73 (internal citations and quotations omitted); *see also Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 564 (S.D. Tex. 2022) ("[O]nce Dr. Immanuel injected herself into the public debate over medical treatments for COVID, she became a limited purpose public figure whose background and credibility were legitimate subjects of inquiry.").

Mota Santos's comments were squarely "germane" to the controversy: they were made within a context of a newspaper reporter's direct question about the effect of Muddy Waters's short position on Mota-Engil's valuation and share price, as well as a market debate over whether regulators should do more to prevent short-selling as a policy matter. *Id.* ¶¶ 3–4, 126–127, 131–132. These are more than sufficient to establish Muddy Waters as limited public figure for purposes of its claims. *See, e.g.*, *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1329–30 (5th Cir. 1993) (corporate public-figure analysis considers factors such as plaintiff's "significant past publicity" and whether statements were made "in response to previous media coverage of an issue"); *Prime Hydration LLC v. Garcia*, No. 3:24-CV-1260-L, 2025 WL 963361, at *4–*6 (N.D. Tex. Mar. 31, 2025) (applying public figure principles to corporate plaintiff).

As a limited purpose public figure, Muddy Waters "must allege clear and specific 'evidence' of actual malice." *Immanuel*, 618 F. Supp. 3d at 566 (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 744 (5th Cir. 2019)) (dismissing defamation claims at pleading stage for failure to plead actual malice). Indeed, in a media publication context, the complaint must plead specific facts showing the "defendant actually entertains serious doubts as to the truth of" its statements at the time of publishing. *Immanuel*, 618 F. Supp. 3d at 566. Conclusory allegations are insufficient. *See, e.g., Carlson v. CRH Ams. Materials, Inc.*, A-25-CV-920-ADA-ML, 2025 WL 3463685, at *5 (W.D. Tex. Nov. 12, 2025), *report and recommendation adopted*, 2025 WL 3556114 (W.D. Tex. Dec. 10, 2025) (dismissal warranted where plaintiff "has not alleged any *facts* showing this statement was made with knowledge of its falsity or with reckless disregard to the truth") (emphasis added).

Here, as already described, Mr. Mota Santos's statements were expressly couched as opinions and thus were not verifiable as "false" in the first place. But even if that were not the case, the claims would still fail because the Complaint pleads no facts plausibly suggesting that Mr. Mota Santos

13

*subjectively believed* his statements were false.[10]  The Complaint states only that Mr. Mota Santos "knew or reasonably should have known" the statements were false, or, alternatively, acted with "reckless disregard."  Compl. ¶¶ 121, 133.  These are paradigmatic legal conclusions that the Fifth Circuit has rejected as insufficient to state a claim.  *Walker*, 938 F.3d at 745 ("Such scant assertions are insufficient" to plausibly show actual malice, justifying dismissal at pleading stage); *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993) (dismissing limited-purpose public figure's defamation claim because he did not plead actual malice).

### C.    The Complaint fails to plausibly plead damages.

The Complaint's failure to adequately plead damages provides yet another independent basis for dismissal of both defamation claims.  Under Texas law, "the plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se."  *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015); *Corrosion Prevention Techs., LLC v. Hatle*, No. 4:20-CV-2201, 2020 WL 6202690, at *6 (S.D. Tex. Oct. 22, 2020) (dismissing defamation claim when plaintiff failed to adequately plead damages).

Texas law delineates defamation into defamation *per se* and defamation *per quod.  Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013).  A false statement will typically be classified as defamatory *per se* if it tends to injure "a person in [his] office, profession, or occupation."  *Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017) (citation and internal quotation marks omitted).  For example, "[a]ccusing someone of a crime, of having a foul or loathsome disease, or of engaging in

---

[10] If anything, the allegations suggest the opposite—*i.e.*, the fact that Mr. Mota Santos made other consistent statements in previous months only shows that he sincerely believed what he said in the *Expresso* interview.  *See, e.g*., Compl. ¶¶ 81–83 (describing October 14, 2024 Bloomberg article in which Mr. Mota Santos opined that Muddy Waters's short had "no fundamental basis"); ¶¶ 79–80 (describing Sept. 6, 2024 ECO article describing short position as "incomprehensible to us and detrimental to Mota-Engil's small shareholders").

serious sexual misconduct constitutes defamation *per se.*"  *In re Lipsky*, 460 S.W.3d at 596.  Whether statements are defamatory *per se* is a matter of law to be decided by the court.  *Id.*  Defamation *per quod* is defamation that is not actionable *per se.*  *Id.*  Statements that are defamatory *per quod* are actionable only upon allegation and proof of damages.  *See id.* at 593.

Here, the statements at issue do not constitute defamation *per se* as a matter of law, so Muddy Waters is not exempt from pleading the damages element.  Plaintiff characterizes the references to "market manipulation" and "coordination" as being criminal accusations and therefore defamatory *per se*.  Compl. ¶¶ 16, 120–123.  That is meritless.

For one, each statement was explicitly couched as an opinion or subjective belief.  Opinions cannot be defamation *per se*, whether stated explicitly or by implication.  *See Tatum*, 554 S.W.3d at 639 (rejecting claim because "any implied accusation of deception [by plaintiffs] . . . is opinion"); *Linan*, 2006 WL 1766204, at *5–6 (holding that, while arguably "false, abusive, unpleasant, or objectionable" to plaintiff, defendant's statement that he believed plaintiff was involved in a motor theft was "not an accusation, but rather his expression of his opinion or suspicion following his investigation" and thus not defamatory); *Grifols, S.A.*, 2025 WL 1826611, at *17 (holding that "the statement that Grifols 'manipulate[d]' debt and EBITDA" was "not akin to an accusation of criminal activity or fraud" where framed as opinion and based on disclosed facts).

Second, "to be defamatory *per se*, the defamatory nature of the challenged statement must be apparent on its face without reference to extrinsic facts or 'innuendo.'"  *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 691 (Tex. 2013).  "If the statement is ambiguous or cannot be fully understood without the use of extrinsic evidence, the statement is not defamatory per se, and extrinsic evidence can be considered only under a defamation per quod theory."  *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1166 (5th Cir. 2006).  To support its claim that Mr. Mota Santos accused it

of committing a crime, Muddy Waters cites to various EU and Portuguese statutes criminalizing certain financial schemes—none of which was referenced in the *Expresso* interview.  These are exactly the type of external references that disqualify a statement from being "*per se*" defamatory in the first place.  Moreover, whether a statement constitutes defamation *per se* depends on a reasonable person's perception when considering the publication as a whole.  *In re Lipsky*, 460 S.W.3d at 594. Here, when considered in its full context, the publication conveys the *opposite* impression than that alleged by Muddy Waters.  The exchange began when the *Expresso* interviewer asked whether investment activities like Muddy Waters's "should be more controlled," and Mr. Mota Santos's response ultimately concluded with his view that "there must be better regulation on these matters." Compl. ¶ 86 Ex. A at 25.  If anything, this implies that Muddy Waters's actions were not criminal— simply that Mr. Mota Santos believes they should be.

Because the Complaint does not plead statements that are defamatory *per se*, it must plead damages to state a claim.  But the only allegation of damages is that Mr. Mota Santos's statements "caused harm to Muddy Waters' reputation."  Compl. ¶¶ 120, 132.  That conclusory allegation is insufficient as a matter of law.  Se*e Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*, 16 F.4th 1144, 1154 n.8 (5th Cir. 2021) (where claim did not rise to level of defamation per se, the complaint was subject to dismissal where plaintiff only asserted "conclusory allegations of reputational harm").

### D.    The "defamation-by-implication" theory fails for additional reasons.

The Texas Supreme Court has explained that textual defamation can be either explicit or implicit.  "When a publication's text implicitly communicates a defamatory statement, we refer to the plaintiff's theory as 'defamation by implication.'"  *Tatum*, 554 S.W.3d at 627; *see also Turner v. KTRK Television, Inc*., 38 S.W.3d 103, 113 (Tex. 2000).  In determining whether a publication implies a defamatory meaning, a court should examine the publication's "gist," that is, "constru[ing]

the publication 'as a whole.'"  *Tatum*, 554 S.W.3d at 628 (quoting *Rosenthal*, 529 S.W.3d at 434).

To determine defamation by implication, the court must "determine whether the implication the

plaintiff alleges is among the implications that the objectively reasonable reader would draw."  *Id.* at

631.  "If the statement is not reasonably capable of a defamatory meaning, the statement is

not defamatory as a matter of law and the claim fails."  *Id.* at 632 (citation and internal quotation

marks omitted).  Further, a plaintiff who seeks to recover based on a defamatory implication "must

point to 'additional, affirmative evidence' within the publication itself that suggests the defendant

'intends or endorses the defamatory inference.'"  *Id.* at 635 (quoting *White v. Fraternal Ord. of

Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)).  Such evidence of intent cannot be extrinsic—it must

arise "from the publication itself."  *See id.* at 635–36.

Here, the Complaint states that Mr. Mota Santos's statements implied that "Muddy Waters

lacked a good-faith basis to take short positions in Mota-Engil," which it claims "is false and tends

to harm Muddy Waters' reputation so as to lower Muddy Waters in the estimation of the community

or to deter third persons from associating or dealing with it."  Compl. ¶ 130.  For several reasons,

this does not support a defamation-by-implication claim.

First, the full text of the interview does not support any defamatory meaning; as explained

above, it merely reflects Mr. Mota Santos's personal viewpoint—explicitly couched as such—based

on his observations of public facts that are not alleged to be false.  Expressing one's opinion, whether

explicitly or implicitly, on a party's subjective good faith is not actionable.  *Tatum*, 554 S.W.3d at

625–35; *Turner*, 38 S.W.3d at 115–17.

Second, to assert a defamation-by-implication claim, Muddy Waters is required to

additionally plead facts demonstrating that Mr. Mota Santos subjectively intended to convey the

defamatory inference alleged, and such facts must come from "the publication itself."  *Tatum*, 554

S.W.3d at 635.  Here, as to whether Mr. Mota Santos intended his comments to imply a lack of good faith, the Complaint points only to his prior remark in a Bloomberg article, published months earlier, in which he stated that Muddy Waters's short had "no fundamental basis."  Compl. ¶ 131.  But that is exactly the kind of extrinsic evidence that cannot be used to plead intent as required to state a defamation-by-implication claim.  *Tatum*, 554 S.W.3d at 633.  Each of these reasons is an additional basis to dismiss Count II.

## II.    *Respondeat Superior* **Liability Against Mota-Engil Is Conclusory and Implausible**

Finally, the Complaint seeks to impose vicarious liability on Mota-Engil by asserting, in conclusory terms, that Mr. Mota Santos spoke "in the scope of his employment" during the interview. Compl. ¶¶ 21, 123, 135.  Under the doctrine of *respondeat superior*, an employer is vicariously liable for the torts of its employee only when the employee is acting within the course and scope of his or her employment.  *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002) (citation omitted).  An employee's conduct meets this standard when it (1) "falls within the scope of the employee's general authority" and was (2) committed "in furtherance of the employer's business" (3) "for the accomplishment of the object for which the employee was hired."  *Id*. (citation omitted). This standard often precludes vicarious liability for an employee's intentional torts—such as assault and defamation—because "such acts are not ordinarily within the course and scope of an employee's authority or employment."  *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 494 (Tex. App.—Fort Worth 2002, no pet.) (citations omitted).

Here, the Complaint lacks any allegations as to corporate purpose, authorization, or scope. Comp. ¶ 12.  Likewise, it offers no facts showing the interview was an authorized, job-related function or that the challenged statements were authorized, that any defamatory content served Mota-Engil's business, or any other facts supporting the scope-of-employment elements.  Bare labels are insufficient, and courts routinely dismiss respondeat-superior theories that rest on formulaic

recitations.  *See, e.g.*, *Carlson*,  2025 WL 3463685, at *3 (dismissing under Rule 12(b)(6) where plaintiff pled no facts supporting various liability for statements of defendant's employee); *Lyons v. Starbucks Coffee Co.*, No. 3:19-cv-2457-S-BT, 2020 WL 5732638, *4 (N.D. Tex. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5710245 (N.D. Tex. Sep. 24, 2020) (granting employer's 12(b)(6) motion because plaintiff failed to show that "employee acted within the course and scope of his or her authority or employment when he or she allegedly ... defamed [plaintiff]").

The Complaint also ignores that Mr. Mota Santos expressly states: "***It's my personal opinion, it doesn't mean it's the company's opinion***."  Compl. ¶ 86 Ex. A (emphasis added).  That disclaimer undermines any inference that he was speaking within the scope of employment on behalf of the Company.  The absence of allegations about authorization, benefit, or corporate control is fatal to the respondeat superior theory at the pleading stage.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion dismiss Plaintiff's claims with prejudice for failure to state a claim.

Dated: March 10, 2026

Respectfully submitted,

ALLEN OVERY SHEARMAN STERLING US LLP

By: */s/ Emily Westridge Black*
Emily Westridge Black
Tex. Bar No. 24060815
300 W. 6th Street, Suite 2250
Austin, Texas 78701
(512) 647-1900
emily.westridgeblack@aoshearman.com

William D. Marsh, Jr.
Tex. Bar No. 24092762
The Link at Uptown
2601 Olive Street, 17th Floor
Dallas, Texas 75201
(214) 271-5777
billy.marsh@aoshearman.com

*Counsel for Defendants Carlos António Vasconcelos Mota Dos Santos and Mota-Engil, SGPS, S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, effecting service on all counsel of record.

*/s/   Emily Westridge Black*
Emily Westridge Black