**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| MUDDY WATERS CAPITAL LLC,<br><br>   *Plaintiff*,<br><br>  v.<br><br>CARLOS ANTÓNIO VASCONCELOS MOTA DOS SANTOS and MOTA-ENGIL, SGPS, S.A.<br><br>   *Defendants*. | Case No. 1:25-CV-02090-RP |

**PLAINTIFF'S COMBINED MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS**

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ..........................................................................................ii-viii

PRELIMINARY STATEMENT ........................................................................................1

FACTS ...............................................................................................................................2

ARGUMENT ......................................................................................................................6

    I.   THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS .............6

        A.    The Court Has Specific Jurisdiction Over Defendants, Who Have
             Minimum Contacts with Texas.....................................................................7

             1.    Mr. Mota dos Santos Purposefully Directed His Defamatory
                  Statements Toward Texas ................................................................7

             2.    Plaintiff's Claims Relate to Defendants' Contacts with Texas......12

        B.    This Court's Personal Jurisdiction Over Defendants Is Fair and
             Reasonable ...................................................................................................13

    II.  DEFENDANTS FAIL TO MEET THEIR HEAVY BURDEN IN OPPOSING
    PLAINTIFF'S CHOSEN FORUM.................................................................................17

        A.    Defendants' Speculations Regarding Plaintiff's Motives in Filing this
             Suit Are Baseless, Improperly Asserted, and Irrelevant to this Motion ....18

        B.    The Private-Interest Factors Do Not Favor Dismissal or Outweigh
             Plaintiff's Choice of Forum ......................................................................20

        C.    The Public-Interest Factors Favor this Forum ...........................................24

    III. THE COMPLAINT STATES VIABLE DEFAMATION CLAIMS AGAINST
    DEFENDANTS .................................................................................................................28

        A.    Plaintiff's Defamation Claims Are Viable.................................................29

             1.    Mr. Mota dos Santos's Statements Are Actionable Statements
                  of Fact ............................................................................................30

             2.    Mr. Mota dos Santos's Statements Are Defamatory *Per Se*..........36

                  a.    The Statements Accuse Plaintiff of Committing a
                        Crime............................................................................. 36

i

          b.     The Statements Accuse Plaintiff of Violating EU Securities Regulations.......................................................... 38

          c.     The Statements Directly Attack the Integrity of Plaintiff's Business ............................................................. 39

    3.     Mr. Mota dos Santos Acted with the Requisite Degree of Fault ..........................................................................................40

B.     Mota-Engil Is Vicariously Liable for Mr. Mota-Engil's Statements, Which He Made in His Capacity as Mota-Engil's CEO............................44

CONCLUSION...............................................................................................................................45

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Aron v. McKesson Corp.*,
    No. CIV.A. 3:22-00830, 2023 WL 1426439 (W.D. La. Jan. 13, 2023) ........................... 38

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 29

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
    793 F. Supp. 3d 882 (S.D. Tex. 2025) ............................................................................ 27

*Avila v. Larrea*,
    394 S.W.3d 646 (Tex. App.–Dallas 2012, pet. denied) ..................................................... 34

*Bearry v. Beech Aircraft Corp.*,
    818 F.2d 370 (5th Cir. 1987) ...................................................................................... 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 29

*Bentley v. Bunton*,
    94 S.W.3d 561 (Tex. 2002) ............................................................................... 31, 32, 34

*Bi-Wkly. Admin., Inc. v. Belo Corp.*,
    512 F.3d 137 (5th Cir. 2007) ...................................................................................... 26

*Block v. Barnes*,
    No. 1:22-CV-869-LY, 2023 WL 2732552, at *1 (W.D. Tex. Mar. 30, 2023),
    *R&R adopted*, No. 1:22-CV-869-DAE, 2023 WL 4582396
    (W.D. Tex. July 18, 2023) ...................................................................................... 11, 12

*Blue Ridge Bank v. Veribanc, Inc.*,
    866 F.2d 681, (4th Cir. 1989) ...................................................................................... 42

*Boren v. Gadwa*,
    578 P.3d 861, 872 (Idaho 2024), *reh'g denied* (Jan. 23, 2025) ....................................... 39

*Burt v. Isthmus Dev. Co.*,
    218 F.2d 353 (5th Cir. 1955) ...................................................................................... 20

*Calder v. Jones*,
    465 U.S. 783 (1984) ..................................................................................... 6, 8, 9, 10

*Campbell v. Clark*,
    471 S.W.3d 615 (Tex. App.–Dallas 2015, no pet.) ........................................................... 30

*Carl W. Aron Succession v. McKesson Corp.*,
No. CIV.A. 3:22-00830, 2023 WL 1415618 (W.D. La. Jan. 31, 2023) ........................... 38

*Clemens v. McNamee*,
615 F.3d 374 (5th Cir. 2010) .................................................................................... passim

*Clough v. Perenco, L.L.C.*,
No. CIV.A. H-05-3713, 2007 WL 2409357 (S.D. Tex. Aug. 21, 2007) .................... 17, 21

*Counts v. Guevara*,
328 F.3d 212 (5th Cir. 2003) .............................................................................................. 44

*Cummins v. SunTrust Capital Markets, Inc.*,
416 Fed. App'x 101 (2d Cir. 2011) ............................................................................ 35, 36

*Cuvillier v. Taylor*,
503 F.3d 397 (5th Cir. 2007) .............................................................................................. 29

*D Mag. Partners, L.P. v. Rosenthal*,
529 S.W.3d 429 (Tex. 2017) .............................................................................................. 30

*Dall. Morning News, Inc. v. Tatum*,
554 S.W.3d 614 (Tex. 2018) ................................................................................. 30, 33, 36

*Day v. Fed'n of State Med. Boards of the United States, Inc.*,
579 S.W.3d 810 (Tex. App.–San Antonio 2019, pet. denied) ......................................... 43

*DTEX, LLC v. BBVA Bancomer, S.A.*,
508 F.3d 785 (5th Cir. 2007) ...................................................................................... 17, 24

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .................................................................................................... 12, 13

*Greene v. Mizuho Bank, Ltd.*,
206 F. Supp. 3d 1362 (N.D. Ill. 2016) .............................................................................. 23

*Grifols, S.A. v. Yu*,
No. 24-cv-576 (LJL), 2025 WL 1826611 (S.D.N.Y. July 2, 2025) .................................. 37

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) ........................................................................................................... 17

*Hall v. Habul*,
No. CIV.A. 13-406-SDD-RLB, 2013 WL 5774700 (M.D. La. Oct. 24, 2013) ................ 14

*Howden N. Am. Inc. v. Ace Prop. & Cas. Ins. Co.*,
875 F. Supp. 2d 478 (W.D. Pa. 2012) ......................................................................... 15, 22

*ICT of N. Am. v. Team Air Exp., Inc.*,
    No. C.A. 00-3959, 2000 WL 1705774 (E.D. Pa. Nov. 2, 2000) ...................................... 23

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015) .................................................................................. 36, 39, 40

*Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ......................................................................................... 29

*Khan v. Qatar Airways Corp.*,
    No. 4:23-cv-04138, 2024 WL 3744397 (S.D. Tex. Aug. 8, 2024) ............................ 22, 25

*Kuykendall v. Amazon Studios LLC*,
    No. 5:20-CV-219, 2022 WL 19337992 (S.D. Tex. Mar. 18, 2022) .................................. 8

*LeBlanc v. Patton-Tully Transp., LLC*,
    138 F. Supp. 2d 817 (S.D. Tex. 2001) ........................................................................... 15

*Lesser v. Chevalier*,
    138 F. Supp. 330 (S.D.N.Y. 1956) ................................................................................. 20

*Levine v. CMP Publ'n, Inc.*,
    738 F.2d 660 (5th Cir. 1984) .................................................................................... 26, 27

*Lilith Fund for Reproductive Equity v. Dickson*,
    662 S.W.3d 355 (Tex. 2023) ..................................................................................... 33, 34

*Luke v. Schwartz*,
    No. 1:23-CV-1122-RP, 2024 WL 2304594 (W.D. Tex. May 21, 2024) .................. passim

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ...................................................................................................... 31, 32

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
    414 S.W.3d 142 (Tex. 2013) ................................................................................. 13, 14, 15

*Nix v. ESPN, Inc.*,
    No. 1:18-cv-22208-UU, 2018 WL 8802885 (S.D. Fla. Aug. 30, 2018) .......................... 27

*Oja v. U.S. Army Corps of Eng'rs*,
    440 F.3d 1122 (9th Cir. 2006) ....................................................................................... 26

*Petersen Energía Inversora S.A.U. v. Argentine Republic*,
    Nos. 15 Civ. 2739 (LAP), 16 Civ. 8569 (LAP), 2020 WL 3034824
    (S.D.N.Y. June 5, 2020) ................................................................................................. 23

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .................................................................................................. 17, 24

*Punyee ex rel. Doe #1 v. Bredimus*,
No. CIV.A. 3:04CV0893-G, 2004 WL 2511144 (N.D. Tex. Nov. 5, 2004) .................... 20

*Raytheon Eng'rs & Constructors, Inc. v. H L H & Assocs. Inc.*,
142 F.3d 1279 (5th Cir. 1998) ...................................................................................... 22

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) ........................................................................................ 10

*Rodriguez v. Sarabyn*,
129 F.3d 760 (5th Cir. 1997) ........................................................................................ 45

*S & D Trading Acad., LLC v. AAFIS, Inc.*,
494 F. Supp. 2d 558 (S.D. Tex. 2007) ........................................................... 22, 23, 26, 28

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
882 F.3d 96 (5th Cir. 2018) .......................................................................................... 13

*Schexnider v. McDermott Int'l, Inc.*,
817 F.2d 1159 (5th Cir. 1987) ...................................................................................... 28

*Schlesinger v. ES & H, Inc.*,
No. CIV.A. 11-294, 2011 WL 3819585 (E.D. La. Aug. 29, 2011) ............................ 15, 16

*Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007) ...................................................................................................... 17

*Spir Star AG v. Kimich*,
310 S.W.3d 868 (Tex. 2010) ............................................................................. 13, 14, 15

*Tellez v. Madrigal*,
223 F. Supp. 3d 626 (W.D. Tex. 2016) ................................................................... passim

*Terrell v. Mazaheri*,
676 S.W.3d 116 (Tex. App.–San Antonio 2023, no pet.) ................................... 40, 41, 42

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011) ........................................................................................ 29

*TV Azteca v. Ruiz*,
490 S.W.3d 29 (Tex. 2016) ....................................................................................... 7, 12

*Walden v. Fiore*,
571 U.S. 277 (2014) ...................................................................................................... 12

*WFAA-TV, Inc. v. McLemore*,
978 S.W.2d 568 (Tex. 1998) .................................................................................. 40, 41, 43

vi

*Wien Air Alaska, Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) ........................................................................... 13

*Wit Software v. Talkdesk, Inc.*,
    No. CIV.A. 23-94-WCB, 2023 WL 3454193 (D. Del. May 15, 2023) ........................... 27

*Wound Care Concepts, Inc. v. Vohra Health Servs., P.A.*,
    No. 19-62078-CIV-SMITH, 2022 WL 320952 (S.D. Fla. Jan. 28, 2022) ........................ 38

**Treatises**

*Restatement (Second) of Conflicts* § 150 ................................................................. 26, 27

*Restatement (Second) of Torts* § 566 ........................................................................ 34

**PRELIMINARY STATEMENT**

Defendants defamed Plaintiff Muddy Waters Capital LLC ("Muddy Waters"), an Austin, Texas investment firm, regarding its Texas-based investment operations, including its decision to short Mota-Engil's stock starting in summer 2024.  Now, after purposefully directing their defamation toward Texas residents, they hope to evade accountability by arguing that this case has nothing to do with Texas and that their accusations that Plaintiff committed a crime are somehow not defamatory.  The Court should reject Defendants' arguments and allow this case to proceed.

Defendant Mota-Engil, SGPS, S.A. ("Mota-Engil") is a Portugal-based holding company whose subsidiaries operate in the construction and public works sectors, and Defendant Carlos António Vasconcelos Mota dos Santos is Mota-Engil's CEO.  By December 2024, Mota-Engil's stock was dropping precipitously.  In search of a scapegoat, Mr. Mota dos Santos decided to blame Plaintiff for his company's woes.  During an interview with Portugal's best-selling newspaper, *Expresso*, Mr. Mota dos Santos repeatedly and unambiguously accused Plaintiff—and only Plaintiff—of engaging in coordinated "market manipulation"—a crime in Portugal, a regulatory violation in Europe, and an allegation that tarnished Plaintiff's business as an investment firm.  Mr. Mota dos Santos's accusations were false.  Plaintiff did not commit market manipulation or coordinate with other firms to drive down Mota-Engil's stock price.  To the contrary, it acted alone and disclosed its short positions to Portuguese regulators, as the law required.

To correct the record and undo the baseless reputational damage wrought by Defendants, Plaintiff filed its Complaint in this District, its home Court.  Defendants' three motions to dismiss Plaintiff's suit should be denied.[1]

---

[1] As requested by the Court's March 18, 2026 Order, Plaintiff addresses Defendants' three separate motions to dismiss in one consolidated opposition brief.

**Defendants' motion to dismiss for lack of personal jurisdiction should be denied.** *See* Section I, *infra*. Plaintiff makes a prima facie showing that the Court has specific personal jurisdiction over Defendants, who had minimum contacts with Texas based on Mr. Mota dos Santos's defamatory statements, which were purposefully directed toward a Texas entity regarding its Texas-based business activities. Defendants fail to meet their burden to show that Plaintiff's assertion of jurisdiction here in Texas is unfair and reasonable.

**Defendants' motion to dismiss for *forum non conveniens* should be denied.** *See* Section II, *infra*. Plaintiff's choice of forum is afforded great deference, especially in light of Plaintiff's status as an Austin, Texas-based business that chose to litigate this suit on its home turf. Defendants are unable to demonstrate that Portugal is a more appropriate forum.

**Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim should be denied.** *See* Section III, *infra*. Plaintiff pleads viable defamation claims: (1) Mr. Mota dos Santos's statements are actionable statements of fact; (2) the statements are defamatory *per se* because they accuse Plaintiff of a crime and regulatory violation, and attack the integrity of Plaintiff's business; and (3) Mr. Mota dos Santos acted with the applicable degree of fault, which is negligence, not actual malice. Mota-Engil is vicariously liable for Plaintiff's claims because Mr. Mota dos Santos's statements fell within the scope of his employment as Mota-Engil's CEO.

**FACTS**

*The Parties*

Plaintiff Muddy Waters is an Austin, Texas-based investment firm that investigates, reports on, and shorts the stock of companies it believes are misleading their investors through manipulating their financial reports or outright fraud. Compl., Dkt. 1 ¶ 1. It accomplishes this by performing comprehensive research and forensic accounting to assess a company's true worth and uncover fraud and fundamental problems not yet perceived by the market. *Id.* ¶ 2.

2

Defendant Mota-Engil is a holding company incorporated and based in Portugal that controls various subsidiaries in the construction and public works sectors. *Id.* ¶ 20. It is publicly traded in Portugal on the Euronext Lisbon stock exchange. *Id.* Defendant Carlos Mota dos Santos is Mota-Engil's CEO. *Id.* ¶ 21.

***Muddy Waters' Research into Mota-Engil***

In 2023, Mota-Engil was the highest-performing company traded on the Portuguese stock exchange, with its share price rising 238.4%. *Id.* ¶ 43. Muddy Waters conducted deep research into Mota-Engil and discovered various accounting and structural flows and discrepancies that led Muddy Waters to conclude that the market was misperceiving Mota-Engil's true value and that the company was ripe for a short position. *Id.* ¶ 54. Muddy Waters discovered that: (1) Mota-Engil's cash generation is structurally weak, despite the company reporting a massive increase in its operating cash flow in 2022, *id.* ¶ 55; (2) since 2018, approximately 60% of Mota-Engil's net income accrued to non-controlling interests ("NCIs"), and over half of dividends were paid to local partners, not to Mota-Engil's shareholders, which resulted in earnings before interest, taxes, depreciation, and amortization being shared with NCIs, while debt was concentrated at Mota-Engil, *id.* ¶ 57; (3) Mota-Engil's accounts indicate that the company owes more (and more expensive) debt than it had publicly reported, *id.* ¶ 58; and (4) the Mota family has a history of using its board control to extract money from Mota-Engil at the expense of other shareholders, *id.* ¶ 67.

***Muddy Waters' Short of Mota-Engil***

Based on its research, Muddy Waters, through two of its wholly-controlled funds, took short positions in Mota-Engil starting in July 2024. *Id.* ¶¶ 44-45. Muddy Waters did not coordinate with any other funds in its short of Mota-Engil; it acted alone. *Id.* ¶ 46. Muddy Waters disclosed

its funds' short positions in Mota-Engil to the Portuguese Securities Market Commission (Comissãodo Mercado de Valores Mobiliários, or "CMVM") as required by European and Portuguese securities regulations. *Id.* ¶¶ 47-52. Other than disclosing its short positions in Mota-Engil to CMVM as required by law, Muddy Waters did not tell anyone that it was shorting Mota-Engil. *Id.* ¶ 53.

***During an Interview with* Expresso*, Portugal's Best-Selling Newspaper, Mr. Mota dos Santos Makes Defamatory Statements Regarding Muddy Waters***

From March 2024 to September 2024, Mota-Engil's share price dropped from €5.80 to €2.50. *Id.* ¶¶ 77-78. Mr. Mota dos Santos then engaged in a press campaign in an apparent attempt to counteract Muddy Waters' short positions. On September 6, 2024, *ECO*, a Portuguese online financial newspaper, published an article noting that, "[a]ccording to information released on the website of [CMVM], Muddy Waters . . . took a short position of 0.65% in [Mota-Engil's] capital earlier this week. In other words, the fund is betting that the shares will fall." *Id.* ¶ 79. The same article quoted Mr. Mota dos Santos, who stated: "The attack by this fund – which has been the target of market manipulation proceedings by regulators in other international markets – is incomprehensible to us and detrimental to Mota-Engil's small shareholders." *Id.* ¶ 80. A month later, on October 14, 2024, Mr. Mota dos Santos told *Bloomberg*: "What happened between the end of August and during the month of September is a phenomenon that makes no sense to us and has to do with short positions that have no fundamental basis." *Id.* ¶ 83. Throughout December 2024, Mota-Engil's share price remained below €3.00. *Id.* ¶ 84.

In December 2024, Mr. Mota dos Santos gave a lengthy interview to *Expresso*, Portugal's best-selling newspaper. *Id.* ¶ 85. On December 26, 2024, the interview was published in an online article on *Expresso*'s website. Throughout the *Expresso* interview, Mr. Mota dos Santos made clear that he was speaking in his capacity as Mota-Engil's CEO. *Id.* ¶ 88; *see id.* ¶¶ 89-91.

4

In the *Expresso* interview, the reporter asked Mr. Mota dos Santos about Muddy Waters' short of Mota-Engil. *Id.* ¶ 92. In response, Mr. Mota dos Santos made several false and defamatory statements concerning Muddy Waters. He stated: "**in my view, there was market manipulation**," falsely claiming that Muddy Waters engaged in market manipulation. *Id.* ¶ 94. He also stated: "**I am absolutely sure that this fund is coordinated with other funds** because, although they have had a 0.65% short position that they have already lowered, we have even had short position in the order of 1% of the free-float, which is very significant. There are no coincidences. This fund may be followed by other funds, but **I take the view that there has clearly been market manipulation**." *Id.* ¶ 95. He further stated: "**I believe that there was a concerted action to destroy the value of the stock**, and that it obviously harmed all shareholders, especially the small ones." *Id.* ¶ 96.

The next day, December 27, 2024, Portugal's largest business journal, *Jornal de Negócios*, published an online article covering Mr. Mota dos Santos's *Expresso* interview. *Id.* ¶ 99. It stated: "In an interview with *Expresso* this Friday, the head of Mota-Engil points the finger at the American fund Muddy Waters, and believes there is collusion with other funds in the decline of the construction company's shares, which have depreciated by 30% since the beginning of the year." *Id.* ¶ 100.

Mr. Mota dos Santos's statements were false. Muddy Waters did not engage in "market manipulation." As explained above and in greater detail in the Complaint, Muddy Waters investigated Mota-Engil, decided to take a short position in the company based on its findings, took a short position alone and without coordinating or acting in concert with any other firms, and properly disclosed its short positions as mandated by law. *Id.* ¶ 98.

**ARGUMENT**

Defendants' motions to dismiss should be denied because (I) the Court has personal jurisdiction over Defendants, (II) this is the appropriate forum in which to resolve this case, and (III) Plaintiff has stated a claim for relief.

## I.     THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

The Complaint states a prima facie case for this Court's specific personal jurisdiction over Defendants, and Defendants fail to meet their burden to show that Plaintiff's assertion of jurisdiction offends traditional standards of fair play and substantial justice.

Defendants' motion rests on a false premise: that this case is about a domestic Portuguese dispute with no meaningful connection to Texas. It is not. This case arises from Mr. Mota dos Santos's intentional, targeted, and defamatory statements about a Texas-based business and its business activities. Mr. Mota dos Santos accused Plaintiff of conspiring with other firms to commit market manipulation, a serious allegation of criminal conduct, regulatory violations, and improper trading practices that strike at the core of Plaintiff's business and reputation as an investment firm. Mr. Mota dos Santos made those statements knowing exactly who Plaintiff was and where the reputational harm would be felt. This conduct is sufficient to confer personal jurisdiction under *Calder v. Jones*, 465 U.S. 783 (1984), and its progeny, including applicable Fifth Circuit law.

Defendants attempt to recast Mr. Mota dos Santos's statements as insulated foreign speech regarding Portuguese matters, solely on the basis that the *Expresso* interview occurred in Portugal. But the location of the speaker is not dispositive. What matters is where the speech is *targeted*. Here, Mr. Mota dos Santos identified and falsely accused a Texas business by name; he knew Plaintiff was a U.S.—not Portuguese—investment firm; his statements were tailor-made to harm Plaintiff's reputation in business, including among other investors and market participants; and the injury was predictably and primarily suffered here in Texas, where Plaintiff is based and conducts

6

its business operations.  This is precisely the type of forum-directed conduct that supports specific jurisdiction.

To establish personal jurisdiction over a foreign defendant, a plaintiff must only make a prima facie showing.  *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).  The Court must "accept the plaintiff's uncontroverted allegations as true" and resolve disputed facts in plaintiff's favor.  *Id.*  "The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Id.*  Both prongs are met here.

### A.      The Court Has Specific Jurisdiction Over Defendants, Who Have Minimum Contacts with Texas

"Minimum contacts may create either general or specific personal jurisdiction." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016).  "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens*, 615 F.3d at 378 (cleaned up).  The Court has specific personal jurisdiction over Defendants here because Mr. Mota dos Santos purposefully directed his defamatory statements at Plaintiff, an Austin, Texas-based business, and this suit is related to those actions.

### 1.      Mr. Mota dos Santos Purposefully Directed His Defamatory Statements Toward Texas

Mr. Mota dos Santos's defamatory statements were purposefully directed toward Texas because they specifically addressed a Texas entity—Plaintiff—and the business activities it conducted in and from its headquarters in Texas.

The most instructive case on this issue is *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, a Florida-based tabloid published an allegedly defamatory story about the plaintiff, an actress and California resident. *Id.* at 785. The plaintiff filed suit in California against the story's author and the tabloid's editor. *Id.* The Supreme Court held that California courts had jurisdiction over the defendants notwithstanding their Florida residence because they had "expressly aimed" their conduct towards California:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

*Id.* at 788-89. Applying this standard, which is referred to as the "subject and sources" test, *Kuykendall v. Amazon Studios LLC*, No. 5:20-CV-219, 2022 WL 19337992, at *4 (S.D. Tex. Mar. 18, 2022), the Fifth Circuit has emphasized that the forum state must "be the focal point of the story," *Clemens*, 615 F.3d at 379.

This case fits neatly within each factor of the *Calder* subject and sources test. *First*, Mr. Mota dos Santos's statements "impugned the professionalism of an [investment firm] whose [] career [is] centered in Texas." *Calder*, 465 U.S. at 788 (cleaned up). Mr. Mota dos Santos's statements: (1) were about Plaintiff (and only Plaintiff), which was referenced specifically by name in the *Expresso* interview Q&A, *see* Compl. ¶¶ 94-96; (2) accused Plaintiff of market manipulation and coordination with other funds to "destroy the value of the stock," *id.* ¶¶ 95-96; and (3) were made in response to a question specifically about Plaintiff's conduct, *see* Compl. ¶ 92 (referring to "an investment fund considered a 'vulture,' Muddy Waters, who bet on the stocks to fall"). Critically, Mr. Mota dos Santos knew exactly who Plaintiff was when he made the statements. On

his own, he noted during the interview that Plaintiff "is extremely well-known" and referenced Plaintiff's prior involvement with U.S. and German securities regulators.  See Compl., Ex. A at 27.

*Second*, the statements "concerned the [Texas] activities of a [Texas] resident."  *Calder*, 465 U.S. at 788.  Defendants describe Plaintiff's short positions in Mota-Engil as "investment activity in Portugal" that had nothing to do with Texas,  Defs' Mot. to Dismiss for Lack of Personal Jurisdiction, Dkt. 12 at 7, as if Plaintiff was a *Portuguese* investment firm that placed its stock trades from an office in Portugal or in-person on the trading floor of the Lisbon Stock Exchange. But the underlying trading activity Mr. Mota dos Santos addressed in his defamatory statements— the actual work Plaintiff performed in taking its short positions in Mota-Engil—was controlled by, performed by, and based on research conducted by Plaintiff, its principals, and its employees *in Texas*.  Nobody at Muddy Waters ever set foot in Portugal to effectuate the firm's short positions in Mota-Engil.

*Third*, Mr. Mota dos Santos's statements were, at least in part, necessarily "drawn from [Texas] sources," or, at a minimum, American sources regarding Plaintiff's Texas activities. *Calder*, 465 U.S. at 788.  During the *Expresso* interview, Mr. Mota dos Santos specifically referenced the United States Securities and Exchange Commission's ("SEC") investigation of Plaintiff.  Compl., Ex. A at 27.[2]  As a Texas-based firm, Plaintiff is registered with the SEC as a Texas-registered entity.[3]  When Mr. Mota dos Santos referenced the SEC investigation in the

---

[2] *See U.S. government ends probes into Muddy Waters' Carson Block, sources tell Reuters*, CNBC (Aug. 12, 2024, 12:56 PM), https://www.cnbc.com/2024/08/12/us-government-ends-probes-into-muddy-waters-carson-block-sources-tell-reuters.html.

[3] *See* U.S. Securities & Exchange Commission, *Investment Adviser Public Disclosure – Investment Adviser Firm Summary – Muddy Waters Capital LLC*, https://adviserinfo.sec.gov/firm/summary/281411 (SEC database listing Plaintiff as registered in Texas as of October 5, 2021).

*Expresso* interview, he was referring to a U.S. regulator's investigation of a Texas-registered business in Texas.

*Fourth*, "the brunt of the harm," namely, "the injury to [Plaintiff's] professional reputation, was suffered in [Texas]." *Calder*, 465 U.S. at 789. Plaintiff diligently complies with securities laws and regulations in all of the markets where it invests. *See* Compl. ¶ 30. When Mr. Mota dos Santos falsely accused Plaintiff of committing "market manipulation," which violates Portuguese criminal law and European securities regulations, he tarnished the reputation of a Texas-based investment firm. In short, Mr. Mota dos Santos's defamatory statements "concerned the [Texas] activities of a [Texas] resident" and "impugned the professionalism of a[n] [investment firm] whose [] career was centered in [Texas]," and "the brunt of the harm . . . was suffered in [Texas]." *Calder*, 465 U.S. at 788-89.

The cases Defendants rely on—*Revell*, *Clemens*, and *Block*—do not alter this analysis because none involved allegedly defamatory statements concerning the respective plaintiffs' activities in Texas. In *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), the Fifth Circuit distinguished *Calder* and held that the district court did not have personal jurisdiction over an out-of-state defendant who published allegedly defamatory information about the plaintiff because the defendant's article contained "no reference to [the plaintiff's activities in] Texas," which "weigh[ed] heavily against finding the requisite minimum contacts." *Id.* at 474. Instead, the defendant's statements in *Revell* concerned the plaintiff's actions when he was previously working as an Associate Deputy Director of the FBI in Washington, D.C., not the plaintiff's actions in Texas, where he later moved after his FBI career ended. *Id.* at 469, 75-76.

In *Clemens*, former professional baseball player Roger Clemens brought defamation claims against an athletic trainer who agreed to testify against Clemens in a federal criminal case

regarding Clemens' alleged use of performance-enhancing drugs. 615 F.3d at 377. Federal investigators interviewed the trainer at his home in New York. *Id.* During the interview, the trainer made several statements concerning Clemens' alleged performance-enhancing drug use in Toronto and New York, which were then published in a public report and in the press. *Id.* Clemens, a Texas resident, filed suit in Texas against the trainer. *Id.* at 378. The Fifth Circuit affirmed dismissal of the suit for lack of personal jurisdiction on the grounds that it failed to meet the *Calder* subject and sources test. *See id.* at 380. Specifically, because the trainer's statements "concerned non-Texas activities—the delivery of performance-enhancing drugs to Clemens in New York and Canada"—the statements could not be considered "directed to residents of Texas." *Id.* In contrast, here, Plaintiff is not suing Defendants over statements regarding its activities in a miscellaneous third state. Mr. Mota dos Santos's statements were specifically about Plaintiff's short-selling activity, which was conducted from Plaintiff's headquarters in Austin and therefore constitutes "activity in Texas." *Id.*

Likewise, *Block* did not involve the plaintiff's activities in Texas. In *Block*, the plaintiff, Muddy Waters founder Carson Block, brought a defamation suit against his former contract employee regarding allegedly defamatory statements the defendant made in a *Wall Street Journal* interview. *Block v. Barnes*, No. 1:22-CV-869-LY, 2023 WL 2732552, at *1 (W.D. Tex. Mar. 30, 2023), *R&R adopted*, No. 1:22-CV-869-DAE, 2023 WL 4582396 (W.D. Tex. July 18, 2023). Critically, when Mr. Block filed the suit, he had recently relocated from California to Texas. *Id.* at *1. The defendant argued in his motion to dismiss for lack of personal jurisdiction that Mr. Block's suit could not pass the *Calder* test because "the allegedly defamatory story [did] not concern the Texas activities of a Texas resident"—it "concern[ed] a New York handshake agreement by a then-California resident," Mr. Block, as well as other activity that took place in

11

either "New York, Washington[,] D.C., or Pennsylvania." Def's Mot. to Dismiss Reply Br., *Block v. Barnes*, No. 1:22-CV-00869-LY, Dkt. 15, 2022 WL 20112395 (W.D. Tex. Oct. 18, 2022). Thus, the defendant asserted, "the brunt of the harm . . . was suffered in California," which was "the focal point both of the story and the harm suffered." *Id.* The court ultimately sided with the defendant, finding that, since Mr. Block was "only recently domiciled in Austin, Texas" and "ha[d] no relationship to Texas" at the time of the events giving rise to the suit, it was "similar to *Clemens* and distinguishable from *Calder*." *Block*, 2023 WL 2732552, at *1, *4.

Defendants cite *Block* at length but do not mention that Mr. Block lived in California, not Texas, when the conduct addressed by the defamatory statements in that suit occurred. Meanwhile, this suit involves defamatory statements about investment activities that Plaintiff indisputably conducted in Texas. *Block* is fundamentally distinguishable on this basis and does not support dismissal here.

### 2. Plaintiff's Claims Relate to Defendants' Contacts with Texas

Defendants had sufficient minimum contacts with Texas to support specific personal jurisdiction. This "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Clemens*, 615 F.3d at 379. "A claim arises from or relates to a defendant's forum contacts if there is a substantial connection between those contacts and the operative facts of the litigation." *TV Azteca*, 490 S.W.3d at 52 (cleaned up).

This inquiry focuses on "the relationship among the defendant, the forum, and the litigation," *Walden v. Fiore*, 571 U.S. 277, 284 (2014), and is concerned with whether there is a "'connection' between a plaintiff's suit and a defendant's activities," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361 (2021). Most critically, as the Supreme Court recently explained, the "purposeful availment" requirement does not necessarily "require[] proof of

12

causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Id.* at 362.  Or as the Fifth Circuit more colorfully explained:

> It is of no use to say that the plaintiff 'fortuitously' resided in Texas. If this argument were valid in the tort context, the defendant could mail a bomb to a person in Texas but claim Texas had no jurisdiction because it was fortuitous that the victim's zip code was in Texas.  It may have been fortuitous, but the tortious nature of the directed activity constitutes purposeful availment.

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

This suit readily satisfies the purposeful availment test.  Defendants are not being "haled into [Texas] solely as a result of random" or "fortuitous" contacts.  *Clemens*, 615 F.3d at 379.  Mr. Mota dos Santos intentionally made the statements about Plaintiff's Texas-based investment business, and the statements were designed to affect (and did affect) Plaintiff's reputation and credibility in its Texas-based business.

**B.    This Court's Personal Jurisdiction Over Defendants Is Fair and Reasonable**

The applicable fairness factors favor Plaintiff and bolster the Court's exercise of personal jurisdiction over Defendants in this case.

Once a plaintiff makes a prima facie case for personal jurisdiction, "the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) (citation omitted). "To defeat jurisdiction, [a defendant] must present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878-79 (Tex. 2010) (cleaned up).  Only in "rare cases" does exercising jurisdiction fail to comport with fair play and substantial justice. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 156 (Tex. 2013)

Texas courts weigh several factors to evaluate the fairness of exercising jurisdiction over a nonresident defendant:

> (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies.

*Id.* at 155. Defendants do not meet their burden with respect to these factors.

**Burden:** The fact that Defendants face some burden in litigating in Texas is insufficient to render this Court's exercise of jurisdiction unfair or unreasonable. "Subjecting [] Defendants to suit in Texas certainly imposes a burden on them, but the same can be said of all nonresidents. Distance alone cannot ordinarily defeat jurisdiction." *Id.*; *see Spir Star AG*, 310 S.W.3d at 879 ("The fact that [the defendant] is headquartered in Germany cannot, by itself, defeat jurisdiction.); *Hall v. Habul*, No. CIV.A. 13-406-SDD-RLB, 2013 WL 5774700, at *4 (M.D. La. Oct. 24, 2013) ("[T]he interests of the forum state in resolving the matter may justify even large burdens on the non-resident defendant.").

Defendants' scant examples of the burdens it faces in litigating this dispute in Texas are not unique to Defendants: any foreign defendant facing suit in Texas may be "forced to travel overseas" or "litigate a dispute in a non-native language." Dkt. 12 at 11. Meanwhile, Defendants' assertion that it would not have access in Texas to key witnesses and documents in Portugal ignores that Defendants will not need to use subpoenas to obtain evidence and testimony from themselves (and their own employee witnesses, if any). It also ignores the fact that the key witnesses and documents concerning Plaintiff and the damages it suffered as a result of Defendants' defamatory statements are all located in Texas. Any non-party discovery that may need to be done in Portugal can be obtained through the Hague Convention on the Taking of Evidence Abroad in Civil or

14

Commercial Matters ("Hague Convention"), to which Portugal is a signatory. *See Howden N. Am. Inc. v. Ace Prop. & Cas. Ins. Co.*, 875 F. Supp. 2d 478, 484 (W.D. Pa. 2012) (noting that the Hague Convention "is routinely used for purposes of obtaining the testimony of witnesses located abroad").[4]

**Interests of the Forum:** Texas has a compelling interest in adjudicating this dispute because it involves defamatory statements regarding a Texas business.  Texas courts have consistently recognized that the state has an important interest in hearing disputes regarding torts committed against Texans.  *See, e.g.*, *Spir Star AG*, 310 S.W.3d at 879 ("Texas has a significant interest in exercising jurisdiction over controversies arising from injuries a Texas resident sustains . . . ."); *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 155 ("[T]he allegations that . . . Defendants committed a tort in Texas against a resident implicate a serious state interest in adjudicating the dispute."); *see also LeBlanc v. Patton-Tully Transp., LLC*, 138 F. Supp. 2d 817, 820 (S.D. Tex. 2001) ("Texas has no interest in resolving this dispute, given that neither Plaintiff nor Defendant are residents of the State.").  Defendants' argument that Texas lacks an interest here because "Texas law does not apply to Plaintiff's claims," Dkt. 12 at 11, lacks merit.  As explained below in opposition to Defendants' *forum non conveniens* motion, applying the correct choice-of-law analysis, Texas law applies to this case.  *See* Section II.C, *infra*.

**Plaintiff's Interest in Effective and Convenient Relief:** "The Fifth Circuit and other circuits have held that plaintiffs have a strong interest in obtaining convenient and effective relief, justifying jurisdiction over a nonresident defendant." *Schlesinger v. ES & H, Inc.*, No. CIV.A. 11-294, 2011 WL 3819585, at *4 (E.D. La. Aug. 29, 2011).  Because Defendants' "intentional

---

[4] *See* U.S. Dep't of State, Judicial Assistance Country Information – Portugal (last updated Aug. 29, 2018), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Portugal.html.

misconduct was directed at Plaintiff, Plaintiff is not required to travel to [Portugal] to obtain a remedy," *id.*, and has a strong interest in resolving this dispute here.

**The International Judicial System's Interest:** Defendants have failed to demonstrate that the "most efficient resolution" factor has any impact on the Court's exercise of jurisdiction here. Defendants suggest that "most of the relevant witnesses and evidence are located in [Portugal]," not Texas, and therefore litigating this case in Texas would be inefficient. Dkt. 12 at 12. But if this suit were litigated in Portugal, Plaintiff would face the same inefficiencies Defendants assert here: Plaintiff's witnesses and evidence—particularly damages evidence, which is likely to come largely from non-parties—are located in *Texas* and would be outside the jurisdiction of the Portuguese court. At most, this factor is neutral and does not help Defendants carry their burden.

**Texas and Portugal's Shared Interests:** The shared interests of Texas and Portugal will be promoted by resolution of this dispute. "When determining this, courts take into consideration the interest of states in the predictability of jurisdiction and allowing citizens to structure their transactions to limit their amenability to suits in foreign states." *Schlesinger*, 2011 WL 3819585, at *4 (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 377 (5th Cir. 1987)). Here, Mr. Mota dos Santos could have avoided exposure to litigation in Texas but chose to interact with the state by defaming a Texas resident. "Because of his intentional actions directed at [Texas], [Mr. Mota dos Santos] did not limit his amenability to suit in this state." *Id.*

Because none of the factors suggests the assertion of jurisdiction is unfair or unreasonable, Defendants have failed to carry their burden.

## II.    DEFENDANTS FAIL TO MEET THEIR HEAVY BURDEN IN OPPOSING PLAINTIFF'S CHOSEN FORUM

Defendants' motion to dismiss for *forum non conveniens* should be denied.

There is "a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Defendants fail to meet their burden to overcome the deference given to Plaintiff's chosen forum: this Court.

"Only in 'rather rare cases' should the doctrine [of *forum non conveniens*] be applied." *Clough v. Perenco, L.L.C.*, No. CIV.A. H-05-3713, 2007 WL 2409357, at *1 (S.D. Tex. Aug. 21, 2007) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)). This is not such a case. This is not a foreign dispute between foreign parties with no connection to the United States. This case seeks redress for Defendants' intentional tortious conduct causing harm to an American entity that is incorporated, has its offices in, and directs its business activities from the U.S. The Court should reject Defendants' efforts to avoid discovery in a U.S. federal court and Texas's strong defamation laws by recasting their far-reaching tortious conduct as a domestic Portuguese dispute.

"The doctrine of forum non conveniens permits a court to dismiss a case properly in its jurisdiction in favor of trial in another forum with jurisdiction when trial in the plaintiff's chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Tellez v. Madrigal*, 223 F. Supp. 3d 626, 633 (W.D. Tex. 2016) (cleaned up). As the Supreme Court has instructed, "[a] defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *accord. DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 795 (5th Cir. 2007) (holding that, unless the

17

private- and public-interest factors "strongly" favor the defendant's proposed forum, "the plaintiff's choice of forum should rarely be disturbed").

Defendants' *forum non conveniens* motion should be denied for three primary reasons: (1) Defendants' unsupported speculations regarding Plaintiff's motives for filing this suit are false, improper, and have no bearing on this motion; (2) the private-interest factors do not favor dismissal or outweigh Plaintiff's choice of forum; and (3) the public-interest factors favor a United States forum.[5]

### A.      Defendants' Speculations Regarding Plaintiff's Motives in Filing this Suit Are Baseless, Improperly Asserted, and Irrelevant to this Motion

Having already been sued for defaming Plaintiff in the press, Defendants now attempt to use their *forum non conveniens* motion to, yet again, baselessly tarnish Plaintiff's reputation by asserting—without a shred of supporting evidence—that Plaintiff is using this suit to "publicize false and misleading 'findings' about Mota-Engil that are not relevant to Plaintiff's claims as a strategy to drive down the stock price." Defs' Mot. to Dismiss for *Forum Non Conveniens*, Dkt. 13 at 9. These allegations regarding Plaintiff's purported motives are false, improperly raised in a motion to dismiss, and have no conceivable bearing on the sole issue raised by Defendants' motion: whether Portugal is a more appropriate and convenient forum than Plaintiff's chosen forum.

*First*, Defendants do not explain *how* Plaintiff's findings regarding Mota-Engil are purportedly "false" or "misleading." Defendants simply assert that Plaintiff's research conclusions, which are summarized in the Complaint, are wrong and made up by Plaintiff to manipulate Mota-Engil's stock price, full stop. In other words, Defendants are reasserting the

---

[5] Because courts typically "presume that [the foreign forum] is an available and adequate forum and move on to consider the remaining factors," *Tellez*, 223 F. Supp. 3d at 636 (cleaned up), Plaintiff does not contest the threshold issues of the availability and adequacy of the Portugal forum for purposes of Defendants' *forum non conveniens* motion.

same baseless, defamatory statements Mr. Mota dos Santos made in the *Expresso* interview, now in a legal brief.  If Defendants wish to contest Plaintiff's facts, the only proper way to do so in this litigation is by developing the record and presenting a defense at trial.  Until then, Defendants' drive-by fact disputes serve no proper purpose.

*Second*, Plaintiff's findings regarding Mota-Engil *are* plainly relevant to Plaintiff's defamation claims and therefore properly asserted.  *Contra id.*  Defendants defamed Muddy Waters by asserting that it engaged in market manipulation, which conveyed "the factual assertion that Muddy Waters did not have a good-faith basis to take short positions in Mota-Engil, and instead took those positions in an effort to manipulate the market and decrease Mota-Engil's share price."  Compl. ¶¶ 126, 129.  To prove its defamation claims, Plaintiff will demonstrate that Defendants' statements were false and Plaintiff *did* have a good-faith basis to take short positions in Mota-Engil.  To that end, Plaintiff's Complaint includes a high-level summary of Plaintiff's research regarding Mota-Engil, which led Plaintiff to conclude that Mota-Engil "was materially misleading its investors . . . and that Mota-Engil's controlling family was improperly extracting value from the company at the expense of the public shareholders," *id.* ¶ 130, making the company "ripe for a short position," *id.* ¶ 5.

*Third*, Defendants' unsupported allegations regarding Plaintiff's purported motive for filing this suit in the United States have no bearing on the *forum non conveniens* analysis.  On motions to dismiss for *forum non conveniens*, Courts consistently reject conclusory assertions of "vex[atiousness]," "harass[ment]," and oppress[ion]," like those asserted by Defendants here. Dkt. 13 at 9.  For example, in *Tellez*, the Texas-domiciled plaintiff sued the Mexico-domiciled defendant over a business dispute.  *See* 223 F. Supp. 3d at 639.  In support of his motion to dismiss for *forum non conveniens*, the defendant argued that "there is no reason for [the plaintiff] to pursue

19

this case except to obtain some sort of advantage over [the defendant] in their ongoing disputes." *Id.* at 639. The court rejected the defendant's baseless assertion, noted that the defendant "offer[ed] no legal authority to shore up these desultory contentions," and concluded that it was "unconvinced that [the plaintiff's] lawsuit [was] vexatious or designed to harass." *Id.*; *see Burt v. Isthmus Dev. Co.*, 218 F.2d 353, 358 (5th Cir. 1955) (rejecting defendant's conclusory *forum non conveniens* argument that plaintiff was "simply seeking to vex and harass it," which were not supported by the record).

Defendants do not even attempt to explain how Plaintiff "has sought to harass the defendant *by selecting an improper forum*." *Punyee ex rel. Doe #1 v. Bredimus*, No. CIV.A. 3:04CV0893-G, 2004 WL 2511144, at *3 (N.D. Tex. Nov. 5, 2004) (emphasis added). They fail to articulate how Plaintiff filing suit *in this forum* was motivated by any purported desire to "publicize false and misleading 'findings'" and "drive down [Mota-Engil's] stock price." Dkt. 13 at 9. "There has been a complete lack of showing that this forum was chosen with a view to vex, harass or oppress [Defendants]. Mere inconvenience to a non-citizen is not ground for dismissing a suit brought by a citizen of the United States in a Federal Court and relegating him to the courts of [Defendants'] country." *Lesser v. Chevalier*, 138 F. Supp. 330, 331 (S.D.N.Y. 1956).

**B.     The Private-Interest Factors Do Not Favor Dismissal or Outweigh Plaintiff's Choice of Forum**

When weighing a defendant's *forum non conveniens* motion, a court must "consider all of the relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum." *Tellez*, 223 F. Supp. 3d at 633 (citation omitted). The applicable private-interest factors include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to

20

the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Tellez*, 223 F. Supp. 3d at 636 (citation omitted).  Weighed against Plaintiff's choice of forum, these factors do not favor dismissal.

**Private-Interest Factor 1: Key evidence, including witnesses and evidence, is in both the United States and Portugal, and also in at least one third country.**

*First*, because there are key witnesses and documents in *both* the United States and Portugal, "[a]t best, the inconvenience to the parties" on this factor "is relatively equal," which means the Court should "defer to [Plaintiff's] choice of forum."  *Clough*, 2007 WL 2409357, at *6.  The most critical witnesses and document custodians in this case—the parties themselves— are located in the United States (Muddy Waters and its principals and employees, including those who conducted Muddy Waters' research into Mota-Engil) and Portugal (Mota-Engil and Mr. Mota dos Santos).  Defendants otherwise generally identify a handful of potential non-party witnesses and document custodians in Portugal, while ignoring the non-party witnesses and evidence in Texas that bear on Plaintiff's damages.  Because there are "substantial numbers of witnesses and documentary evidence located in both places," "[i]t is clear that some inconvenience would result to either party with respect to access to sources of proof whether trial was held in [Portugal] or in the United States," and "the first private-interest factor does not favor dismissal."  *Tellez*, 223 F. Supp. 3d at 637.  As for the remaining witnesses Defendants identify in their motion—the two Muddy Waters funds that took a short position in Mota-Engil—both are registered in the Cayman Islands.  *See* Dkt. 13 at 6.  If Defendants wish to seek discovery from these entities, they will face the same burden regardless of whether this suit is litigated in the U.S. or Portugal.

*Second*, the fact that some evidence will have to be translated from Portuguese to English, *see* Dkt. 13 at 7, is immaterial.  After all, if this case were litigated in Portugal, then all of Plaintiff's

documents and testimony would have to be translated from English to Portuguese. "In any international case in which Parties or important witnesses hail from distant shores, language barriers are going to be an issue—regardless of which shore is ultimately chosen as the location for the trial. This issue is not new to U.S. courts, which face an increasingly diverse array of litigants as the global economy expands." *S & D Trading Acad., LLC v. AAFIS, Inc.*, 494 F. Supp. 2d 558, 573 (S.D. Tex. 2007).

**Private-Interest Factor 2: Compulsory process is available.** Defendants do not meaningfully analyze this factor and instead state, without citing any authority, that "Defendants will have no means to compel unwilling witnesses . . . to appear or produce documents." Dkt. 13 at 6. Defendants are mistaken. As noted above, the Hague Convention "is routinely used for purposes of obtaining the testimony of witnesses located abroad." *Howden N. Am. Inc.*, 875 F. Supp. 2d at 484. Defendants do not mention the Hague Convention in their motion or the fact that Portugal is a party to it. "While [the parties] would have to take some steps in [Portugal] to secure an order to compel testimony for use in the United States," Defendants have not met their burden of demonstrating that discovery concerning non-parties through the Hague Convention is "not feasible." *Id.*

Meanwhile, with respect to the "Mota-Engil employees and staff" that Defendants say are potential witnesses in this case, Dkt. 13 at 6, Mota-Engil "could presumably secure the attendance of" its "own employees." *Khan v. Qatar Airways Corp.*, No. 4:23-cv-04138, 2024 WL 3744397, at *8 (S.D. Tex. Aug. 8, 2024) (denying *forum non conveniens* motion where the defendant's employee-witnesses were located in Qatar).[6] After all, "if [Mota-Engil] believes it did nothing

---

[6] *See Raytheon Eng'rs & Constructors, Inc. v. H L H & Assocs. Inc.*, 142 F.3d 1279 (5th Cir. 1998) (reversing *forum non conveniens* dismissal and noting that private interest factors did not support

wrong, it has every incentive to have its employees cooperate and convey its position." *Greene v. Mizuho Bank, Ltd.*, 206 F. Supp. 3d 1362, 1381 (N.D. Ill. 2016).

**Private-Interest Factor 3: The cost of obtaining attendance of willing witnesses is insignificant.** Defendants address this factor in a single, conclusory sentence, where they insist that Plaintiff's chosen forum "imposes a massive burden on Defendants and any willing witnesses that must travel overseas to attend in-person proceedings or testify." Dkt. 13 at 6. Defendants' cursory argument misses the mark.

*First*, witnesses in Portugal will not be *required* to travel to the U.S. "because the Court liberally construes Federal Rule of Civil Procedure 32 to allow depositions wherever convenient." *S & D Trading Acad., LLC*, 494 F. Supp. 2d at 573 (cleaned up). *Second*, the actual physical location of willing witnesses and their documents is irrelevant in light of the parties' ability to take remote depositions via videoconference and collect electronic discovery, which are common practices in federal civil practice today. *See ICT of N. Am. v. Team Air Exp., Inc.*, No. C.A. 00-3959, 2000 WL 1705774, at *2 (E.D. Pa. Nov. 2, 2000) ("The cost of obtaining attendance of willing witnesses is also not persuasive given the ability to take videotaped trial depositions.").[7] *Third*, while Defendants "argue[] that the cost of obtaining attendance for willing witnesses would be great, [] [they] fail[] to demonstrate that the costs of securing witnesses to appear in the United States exceed[s] the cost of securing witnesses to appear in [Portugal]." *Tellez*, 223 F. Supp. 3d at

---

the defendant where "witnesses located in Panama and identified by Defendant are its employees and therefore will be readily available to attend court in Houston").

[7] *See also Petersen Energía Inversora S.A.U. v. Argentine Republic*, Nos. 15 Civ. 2739 (LAP), 16 Civ. 8569 (LAP), 2020 WL 3034824, at *11 n.11 (S.D.N.Y. June 5, 2020) (holding that private-interest factors did not support dismissal and explaining that "depositions can be conducted via videoconference; documents located overseas can be uploaded easily and reviewed by the parties via e-discovery platforms; and, if it comes to it, the parties can request that the Court allow trial witnesses to testify via video pursuant to the good cause exception in Fed. R. Civ. P. 43").

23

638.  "Asserting that there are more witnesses in [Portugal] and that the cost of their attendance would be 'great' is . . . not the same as[] carrying the movant's burden of demonstrating that the cost of securing witnesses strongly disfavors trial in the plaintiff's chosen forum."  *Id.*[8]

**The private-interest factors do not outweigh the substantial deference given to Plaintiff's chosen forum.**  As noted above, there is "a strong presumption in favor of" Plaintiff's decision to litigate this case in this Court, *Piper Aircraft Co.*, 454 U.S. at 255-56, which Defendants can only overcome by demonstrating that the applicable factors "strongly" favor Portugal over this forum, *DTEX, LLC*, 508 F.3d at 794-95.  Moreover, when a "resident or citizen plaintiff[]" chooses its "home forum," as Plaintiff has done here, that choice "is entitled to greater deference" because "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co.*, 454 U.S. at 255-56.

None of the private-interest factors support dismissal: the first is, at most, neutral, and the remaining factors support Plaintiff.  Defendants have not met their burden of demonstrating that the private-interest factors "clearly point towards trial in the alternative forum."  *Id.* at 255.

C.      **The Public-Interest Factors Favor this Forum**

Because "the private interests do not weigh in favor of [] dismissal, [the Court] must then consider the public interest factors."  *Tellez*, 223 F. Supp. 3d at 633 (citation omitted).  The public-interest factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of

---

[8] Plaintiff agrees that the final private-interest factor, the "possibility of view of premises, if view would be appropriate to the action," *Tellez*, 223 F. Supp. 3d at 636, is not applicable here.

burdening citizens in an unrelated forum with jury duty." *Id.* at 641.  Each of the relevant public-interest factors favors Plaintiff's chosen forum.

**Public-Interest Factor 1**: **There is no indication that this Court faces greater "administrative difficulties flowing from court congestion" than courts in Portugal.** Defendants do not address this factor.  Because they "offer[] no information that would enable the Court to make an intelligent appraisal of whether its docket is more or less congested than [Portuguese] court[s]," "the first public-interest factor counsels against dismissal." *Id.* at 642.

**Public-Interest Factor 2**: **There is strong local interest in resolving this dispute here because it involves Defendants' defamatory statements against an American entity.** Defendants insist that this is "not a localized controversy in Texas" because Defendants' defamatory statements were made in Portugal, Dkt. 13 at 8, but ignore that Plaintiff is a U.S. citizen and Texas resident, with its principal office in Austin.  Indeed, Plaintiff was specifically identified as an "American fund" in contemporaneous Portuguese press coverage of Mr. Mota dos Santos's *Expresso* interview.  Compl. ¶ 100 ("In an interview with *Expresso* this Friday, the head of Mota-Engil points the finger at the *American fund Muddy Waters* . . . . (emphasis added)).

As courts have acknowledged, the U.S. has an interest in adjudicating issues involving defamation or other torts committed against its citizens, even when the underlying acts occur in foreign countries.  *See, e.g.*, *Tellez*, 223 F. Supp. 3d at 642 (noting that "the local community has a substantial interest in the resolution of claims," including a "defamation per se" claim, "of a Texas resident under Texas law concerning a Texas corporation, . . . even if those claims are against a Mexican citizen and the case has a substantial nexus with Mexico." (cleaned up)); *Khan*, 2024 WL 3744397, at *9 (holding that the second public-interest factor weighed against dismissal because "the U.S. has an interest in adjudicating issues involving the sexual assault of its citizens,"

25

even where "the alleged events occurred in Qatar, and concern a Qatari Defendant and Qatari actors"); *S & D Trading Acad., LLC*, 494 F. Supp. 2d at 573 (explaining that the fact that the plaintiff is "a local corporation" supports a finding that there "is a strong local interest in th[e] matter," which weighs against dismissal).

**Public-Interest Factors 3 and 4: This forum is "at home with the law that must govern the action."** Defendants' analysis with respect to the third and fourth public-interest factors is flawed for three reasons.

*First*, applying choice-of-law principles to this diversity action, Texas law applies to Plaintiff's defamation claims. "[A] federal district court sitting in a diversity case must apply the choice of law principles of the forum state." *Levine v. CMP Publ'n, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984). "Texas has adopted the most-significant-relationship test for determining which state's law applies to a tort action" and applies the "general rules set forth in the *Restatement (Second) of Conflicts*, §§ 6 and 145" (the "*Restatement*"). *Id.*

Because this is a defamation case, an additional *Restatement* provision impacts the choice-of-law analysis. "Texas defamation law is designed primarily to protect the interest of individuals in preserving their reputations." *Id.* Accordingly, the Fifth Circuit has adopted the principles in *Restatement* § 150(2), which states: "When a natural person claims that he has been defamed by an aggregate communication,[9] the state of most significant relationship will usually be *the state*

---

[9] A "typical Internet publication," such as a publication "posted on [a] website and made widely available to the public via the Internet" is considered "an aggregate communication." *Nationwide Bi-Wkly. Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 143 (5th Cir. 2007) (quoting *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1133 (9th Cir. 2006)).

*where the person was domiciled at the time*, if the matter complained of was published in that state." *Id.* (quoting *Restatement* § 150(2)) (emphasis added).[10]

Here, the state of most significant relationship is Texas because that is where Plaintiff was domiciled at the time the defamatory *Expresso* interview statements were published. Although the statements were published by *Expresso*, which is based in Portugal, they were published on the internet and available worldwide, including in Texas. As one court explained when applying the *Restatement*'s choice-of-law principles in another case involving allegedly defamatory statements that were published online: "the place where the conduct occurred" is less significant in the choice-of-law analysis when the statements at issue "were published online and therefore were viewable anywhere." *Nix v. ESPN, Inc.*, No. 1:18-cv-22208-UU, 2018 WL 8802885, at *4 (S.D. Fla. Aug. 30, 2018) (citing *Restatement* § 145, cmt. e).

The case Defendants rely on most extensively in their choice-of-law analysis, *Wit Software*, is therefore readily distinguishable because it involved copyright infringement and other business torts, not defamation claims. *See Wit Software v. Talkdesk, Inc.*, No. CIV.A. 23-94-WCB, 2023 WL 3454193, at *1 (D. Del. May 15, 2023). *Wit Software* necessarily did not apply the defamation-specific choice-of-law principles the Fifth Circuit adopted from *Restatement* § 150(2), which, as the Fifth Circuit explained in *Levine*, are appropriate given "Texas' strong expression of interest in protecting its citizens from defamation." 738 F.2d at 667.

*Second*, even if Portuguese law did apply to Plaintiff's defamation claims (it does not), "no one private or public interest factor should be given conclusive weight." *Tellez*, 223 F. Supp. 3d

---

[10] *See Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 793 F. Supp. 3d 882, 892 n.5 (S.D. Tex. 2025) (applying *Levine* and holding that "the defamation laws of Florida and Virginia" applied to the plaintiffs' respective defamation claims "because [they] are domiciled in those states").

at 633 (citation omitted).  Thus, if the Court did have to apply Portuguese defamation law to decide Plaintiff's claims here, "the need to apply foreign law is not in itself reason to apply the doctrine of *forum non conveniens*" because "deciding foreign law" is "a chore federal courts must often perform."  *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163-64 (5th Cir. 1987) (citations omitted).

*Third*, in deciding Plaintiff's claims under Texas law, the jury will have to decide whether Mr. Mota dos Santos accused Plaintiff of criminal conduct, which is an issue that could involve jury instructions on Portuguese, EU, and U.S. securities laws.  However, this is a question of fact, not a question of law, and therefore has no impact on the choice-of-law analysis.

**Public-Interest Factor 5: This suit will not "unfairly burden[] citizens in an unrelated forum with jury duty."**  "[B]ecause there is significant local interest" in this case, which involves torts committed against a Texas business, "requesting the citizens of this District to help resolve this dispute by sitting on a jury is not unfair."  *S & D Trading Acad., LLC*, 494 F. Supp. 2d at 574. Given Plaintiff's situs in Austin and the Western District of Texas, "it would be unreasonable to hold that the case has no relation to the forum."  *Tellez*, 223 F. Supp. 3d at 643.

"No public-interest factor weighs in favor of dismissal, much less the balance of the factors."  *Id*.  Defendants have not demonstrated that Plaintiff's chosen forum "is disproportionately oppressive and vexatious to [them] out of all proportion with [Plaintiff's] convenience."  *Id.*  Defendants' *forum non conveniens* motion must be denied.

## III.    THE COMPLAINT STATES VIABLE DEFAMATION CLAIMS AGAINST DEFENDANTS

Plaintiff pleads viable defamation claims against Defendants.  Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim should be denied.

"[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (cleaned up). In deciding a 12(b)(6) motion, a "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (cleaned up). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Defendants' motion to dismiss for failure to state a claim should be denied because (1) Mr. Mota dos Santos's false statements regarding Plaintiff are actionable, non-opinion; (2) the statements are defamatory *per se* because they either explicitly or implicitly accuse Plaintiff of committing a crime and a regulatory offense, and attack the integrity of Plaintiff's business; and (3) Mota-Engil is vicariously liable for Mr. Mota dos Santos's statements.

### A.   Plaintiff's Defamation Claims Are Viable

Plaintiff pleads viable defamation claims based on Mr. Mota dos Santos's statements in the *Expresso* interview, which falsely accused Plaintiff of "coordinat[ing] with other funds" to engage in "market manipulation" when it took short positions in Mota-Engil. Compl. ¶¶ 94-95.

"Under Texas law, to prevail on a defamation claim, a plaintiff must establish that: '(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement; and (4) damages (unless the statement constitutes defamation per se).'" *Luke v. Schwartz*, No. 1:23-CV-1122-RP, 2024 WL 2304594, at *3 (W.D.

29

Tex. May 21, 2024) (quoting *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017)).  Each element is met here.

> **1.      Mr. Mota dos Santos's Statements Are Actionable Statements of Fact**

"For a statement to be actionable in a defamation claim, the statement must 'assert an objectively verifiable fact, rather than an opinion.'"  *Id.* (quoting *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App.–Dallas 2015, no pet.) (cleaned up)).  "Thus, statements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions."  *Id.* (quoting *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018)).

Defendants' attempt to cast Mr. Mota dos Santos's statements as non-actionable opinions fails for the following four reasons.

***First***, the statements are actionable—and not opinion—because they are "objectively verifiable fact."  *Luke*, 2024 WL 2304594, at *3.  Tellingly, in their motion, Defendants' arguments focus almost exclusively on the words and context *surrounding* Mr. Mota dos Santos's defamatory statements and not the statements themselves.  Properly analyzed, each of the statements at issue, on its face, contains objectively verifiable facts:

| Mr. Mota dos Santos's Statements | Objectively Verifiable Facts |
|---|---|
| "[I]n my view, there was market manipulation."  Compl. ¶ 94. | That Plaintiff committed market manipulation when it took short positions in Mota-Engil. |
| "I am absolutely sure that this fund is coordinated with other funds because, although they have had a 0.65% short position that they have already lowered, we have even had short position in the order of 1% of the free-float, which is very significant. There are no coincidences. This fund may be followed by other funds, but I take the view that there has clearly been market manipulation."  *Id.* ¶ 95. | That Plaintiff coordinated with other funds to commit market manipulation when it took short positions in Mota-Engil. |
| "I believe that there was a concerted action to destroy the value of the stock, and that it | That Plaintiff coordinated with other funds in a "concerted action" to "destroy the value of |

| obviously harmed all shareholders, especially the small ones." *Id.* ¶ 96. | [Mota-Engil's] stock" when it took short positions in Mota-Engil. |
|---|---|

Relatedly, to the extent that Defendants argue on this motion that Mr. Mota dos Santos's statement regarding Plaintiff "coordinat[ing] with other funds" was truthful (and therefore non-defamatory) because Plaintiff took short positions using two of its wholly-managed funds, that is a non-starter. *Contra* Defs' Mot. to Dismiss Based on Fed. R. Civ. P. 12(b)(6), Dkt. 14 at 5. In response to a question about *Muddy Waters*, Mr. Mota dos Santos said: "I am absolutely sure that *this fund* is coordinated with other funds . . . ." Compl. ¶¶ 95 (emphasis added). The only reasonable inference (and the only permissible inference on this motion) is that Mr. Mota dos Santos accused Muddy Waters ("this fund") of coordinating with other outside investment funds to manipulate the market in its short of Mota-Engil, not that Muddy Waters was somehow coordinating with *itself* through its own entities.

**<u>Second</u>**, courts squarely reject Defendants' argument that Mr. Mota dos Santos's use of certain "language conveying personal viewpoint" renders the statements non-actionable. *Contra* Dkt. 14 at 8. There are no magic words that, if uttered alongside defamatory statements of fact, automatically transform those statements into opinions. What matters is whether a statement is *verifiable, see Luke*, 2024 WL 2304594, at *3, not whether the defendant couched it in language "signif[ying] opinion," Dkt. 14 at 8.

This specific issue was addressed—and resolved in Plaintiff's favor—by the United States Supreme Court in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), and the Texas Supreme Court in *Bentley v. Bunton*, 94 S.W.3d 561 (Tex. 2002). In *Milkovich*, the Court explained:

> If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. . . . Simply couching such statements in terms of opinion does not dispel these implications . . . . As Judge Friendly aptly

31

> stated: '[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.''

497 U.S. at 18-19 (citation omitted).  Likewise, in *Bentley*, the defendant stated on a radio show that the plaintiff, a local district court judge, "is corrupt, that's my opinion" and spoke of the plaintiff's "corruptness, my opinion, but you'll have to make up your own opinion."  94 S.W.3d at 570.  The Texas Supreme Court, citing *Milkovich*, held that the statements were actionable because "[t]he clear import of [the defendant's statements] was that [the plaintiff] was corrupt as a matter of verifiable fact."  *Id.* at 585.

Sidestepping *Bentley* and *Milkovich*, Defendants insist that Mr. Mota dos Santos's inclusion of phrases like "I think" and "I take the view" insulate him from liability.  But none of these disclaimers impact the verifiability of the accompanying statements.  For example, when Mr. Mota dos Santos said, "I take the view that there has clearly been market manipulation," Compl. ¶ 95, his inclusion of the introductory phrase "I take the view," does not change that the rest of the sentence—"there has clearly been market manipulation"—is an objectively verifiable statement of fact.  Defendants even attempt to extend this argument to Mr. Mota dos Santos's statement, "***I am absolutely sure*** that this fund is coordinated with other funds because [there was a sudden increase in the percentage of free float shorted, and] ***[t]here are no coincidences***."  Dkt. 14 at 8 (quoting Compl. ¶ 95).  The only reasonable inference to draw from Mr. Mota dos Santos's use of the phrases "I am absolutely sure" and "there are no coincidences" is that he was *certain* of the facts he was stating.  Regardless, these phrases do not turn the rest of the sentence—"this fund coordinated with other funds"—into something other than an objectively verifiable fact.  Defendants' remaining examples fare no better.

*Tatum*, which Defendants rely on throughout their briefing, does not change the analysis.  In *Tatum*, the court held that the statement at issue (which accused the plaintiff of "deception"),

was non-actionable opinion because of its context, which was *a newspaper opinion column* written in a persuasive style, and because the statement was "literally true" as the plaintiff had in fact been "deceptive." *Id.* at 639-40.  Meanwhile, here, Mr. Mota dos Santos was being interviewed as a CEO regarding Mota-Engil's business performance, not writing an op-ed, and his statements were, of course, false.

**_Third_**, Defendants' argument that the statements should be given "more protection" because they were "normative commentary regarding a matter of public concern," Dkt. 10-11, once again asks the Court to construe Plaintiff's allegations in *Defendants'* favor.  Defendants point to the "Q&A format" and suggest that this created a "public-debate context." *Id.*  Defendants ignore that the "Q" here—the questions the reporter posed, which caused Mr. Mota dos Santos to make the defamatory statements, are only about *Plaintiff*.  First, the reporter asked:

> In 2023, [Mota-Engil] was the champion of the Stock Exchange with a 238.4% increase in the [stock] price. From the beginning of 2024 until December 20, [Mota-Engil] was losing 30% and there were sharp declines caused by an investment fund considered a 'vulture,' Muddy Waters, who bet on the stocks to fall. Should these movements be more controlled?

Compl. ¶ 92.  After Mr. Mota dos Santos provided his first answer about Plaintiff, the reporter then asked: "Are you aware of any investigation into what happened?" Compl., Ex. A at 27.  These were not abstract, open-ended inquiries regarding the state of securities regulation in Portugal. They were pointed questions about *Plaintiff and its short of Mota-Engil*, specifically.

Defendants' cases on this point are inapposite.  Defendants rely on *Lilith Fund for Reproductive Equity v. Dickson*, 662 S.W.3d 355 (Tex. 2023), for the proposition that Plaintiff's claims seek to "muzzle opinions asserted in ongoing public debates." Dkt. 14 at 10.  In *Lilith*, the court held that the defendant's statements that the plaintiffs, organizations that advocate for legalized abortion, were "criminal organizations" that "exist to help pregnant Mothers murder their

33

babies," were not "disseminating facts . . . but rather advocacy and opinion," including "opinion about the legality and morality of that conduct." *Id.* at 359.  The statements were specifically made as part of a political campaign. *Id.* at 358, 366.  In this specific "national, historical, and temporal context," a reasonable listener would be aware that those opposed to abortion view it as "an unjust killing of human life—that it is, in essence, murder" and that such statements "reflect an opinion about morality, society, and the law." *Id.* at 368.  But as this Court later recognized in *Luke*, where it distinguished *Lilith* on grounds that are equally apt in this case, "[h]ere, [Mr. Mota dos Santos] is not engaging in a *debate* about the legality or morality of [Plaintiff's] conduct," *Luke*, 2024 WL 2304594, at *3 (emphasis added), "invok[ing] a moral premise," *Lilith*, 662 S.W.3d at 368, or advancing a political campaign regarding a social issue; he spoke directly about Plaintiff's actions and described them as "market manipulation."

**_Fourth_**, even if Mr. Mota dos Santos's statements were opinions and did not contain statements of fact, they still would be actionable because they implicitly assert facts that can be objectively verified.  *See Bentley*, 94 S.W.3d at 580-81 (noting that the *Restatement (Second) of Torts* § 566 "set out a rule making a statement of opinion actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion" (cleaned up)); *Avila v. Larrea*, 394 S.W.3d 646, 658 (Tex. App.–Dallas 2012, pet. denied) ("[A]n opinion, like any other statement, can be actionable in defamation if it expressly or impliedly asserts facts that can be objectively verified.").

Mr. Mota dos Santos's statements strongly imply the existence of undisclosed verifiable facts regarding whether Plaintiff engaged in "market manipulation" when it took short positions in Mota-Engil.  For example, Mr. Mota dos Santos did not disclose the basis for his ironclad statement that he was "*absolutely sure* that this fund is coordinated with other funds" in its short

34

of Mota-Engil.  Compl. ¶ 95 (emphasis added).  This statement necessarily implies that Mr. Mota dos Santos had learned that Plaintiff had improperly coordinated with other investment firms to mount a short-selling campaign against Mota-Engil—something that never happened.  As for the statement that "there was market manipulation," Compl. ¶ 94—it implicitly asserts that Mr. Mota dos Santos had knowledge of unlawful market abuse perpetrated by Plaintiff in its short of Mota-Engil, such as disseminating false information or committing fraud, *see id.* ¶ 37, which also never happened.

Mr. Mota dos Santos did reference two underlying facts in his statements but neither rendered his purported opinion statements non-actionable.  Mr. Mota dos Santos first noted that after Plaintiff took "a 0.65% short position," there was a rise in the percentage of the free float shares that were shorted.  *Id.* ¶ 95.  Defendants argue that by including this fact, Mr. Mota dos Santos disclosed the basis for his "market manipulation" and "coordinat[ion]" accusations.  But the fact that there was an increase in short positions after Plaintiff *publicly disclosed its short position* as required by law does not support the conclusion that Plaintiff engaged in "market manipulation" or improper "coordinat[ion]."  It simply shows that others in the market took notice—either of Plaintiff's short position or that Mota-Engil was grossly overvalued—and decided to take a short position in the company.  Mr. Mota dos Santos then referred to Plaintiff being "well-known" and "fac[ing] prior scrutiny by U.S. and German regulators."  Dkt. 13 at 9.  But neither Plaintiff's prominence in the industry nor that it had been scrutinized before provides a reasonable basis for any of Mr. Mota dos Santos's defamatory accusations.[11]

---

[11] *Cummins v. SunTrust Capital Markets, Inc.*, 416 Fed. App'x 101 (2d Cir. 2011), which Defendants rely on regarding this issue, is also distinguishable.  In *Cummins*, the court applied Texas law and held that the defendants' statements that plaintiff's grant of stock options was "self-interested, abusive, unethical, unjustifiable, a manipulation of securities regulations, and akin to backdating," *id.* at 103, were non-actionable opinions because "the statements [in *Cummins*] [did]

35

### 2.    Mr. Mota dos Santos's Statements Are Defamatory *Per Se*

Mr. Mota dos Santos's statements are defamatory *per se* because they: (1) accused Plaintiff of committing a criminal offense under Portuguese law; (2) accused Plaintiff of violating EU securities regulations; and (3) attacked the integrity of Plaintiff's business.  Because "[d]efamation per se refers to statements that are so obviously harmful that general damages may be presumed," *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015), Plaintiff does not need to plead special damages.

### a.    The Statements Accuse Plaintiff of Committing a Crime

"[A] statement is defamatory per se when it is so obviously harmful that general damages, such as . . . loss of reputation, are presumed."  *Tatum*, 554 S.W.3d at 638 (cleaned up).  For example, "accusing someone of a crime . . . constitutes defamation per se."  *Id.* (cleaned up).

In their *forum non conveniens* motion, Defendants effectively concede that Mr. Mota dos Santos accused Plaintiff of committing a crime.  There, Defendants argue that for Plaintiff to prevail on its defamation claims, it "would have to prove that the statements were false, *and its short-selling activity did not violate Portuguese or European securities laws*."  Dkt. 13 at 8-9 (emphasis added).  Then, in their Rule 12(b)(6) motion, Defendants argue that Mr. Mota dos Santos's statements imply that Plaintiff's actions "were not criminal."  Dkt. 14 at 16.  Defendants were right the first time.  Mr. Mota dos Santos's statements accusing Plaintiff of "market manipulation" are "reasonably capable of communicating that [Plaintiff] committed a crime," *Luke*, 2024 WL 2304594, at *4, by the exact same name under Portuguese Securities Code Article 397: "market manipulation," Compl ¶¶ 36-37.  "Accusing [Plaintiff] of a crime would certainly

---

not imply the existence of undisclosed verifiable facts as the basis for defendants' opinions," because they were based solely on "the circumstances in which they were awarded," such as their "timing." *Id.* at 104.  In contrast, as discussed above, Mr. Mota dos Santos's statements strongly imply the existence of undisclosed verifiable facts regarding the purported illegality of Plaintiff's short of Mota-Engil.

harm [its] reputation and impeach his integrity, and [Plaintiff] pleads as much in [its] [] [C]omplaint." *Luke*, 2024 WL 2304594, at *4; *see, e.g.*, Compl. ¶ 118 ("The accusation that Muddy Waters 'coordinated with other funds' to engage in 'market manipulation' is false and tends to harm Muddy Waters' reputation so as to lower Muddy Waters in the estimation of the community or to deter third persons from associating or dealing with it.").[12]

Moreover, the defamatory nature of the statements—accusing Plaintiff of engaging in criminal activity—is apparent "without reference to extrinsic facts or 'innuendo.'" *Contra* Dkt. 14 at 15. Defendants suggest that because Mr. Mota dos Santos did not reference the specific Portuguese criminal code or EU securities regulations, his statements cannot be defamatory *per se* because this "extrinsic evidence" is necessary for a listener to understand the statements' defamatory meaning. *See id.* The specific elements of the criminal offense of "market manipulation" are part of the *legal definition* of the offense, but a listener does not need to parse the Portuguese criminal code to recognize the defamatory sting of Mr. Mota dos Santos's statements. For example, if a defendant falsely accused a business of "tax evasion," a listener does not need to consult the tax code or speak with an accountant to understand the defamatory nature of that accusation. If adopted, Defendants' narrow—and unprecedented—reading of the law would prohibit plaintiffs from bringing defamation *per se* claims based on false accusations of criminal conduct unless the defendant happened to specifically reference criminal statutes.

---

[12] On this point, Defendants' reliance on *Grifols, S.A. v. Yu*, No. 24-cv-576 (LJL), 2025 WL 1826611, at *17 (S.D.N.Y. July 2, 2025), is misplaced. According to Defendants, *Grifols, S.A.* held that the statement that the plaintiff "'manipulate[d] debt and EBITDA'" was 'not akin to an accusation of criminal activity or fraud' where framed as opinion and based on disclosed facts." Dkt. 14 at 15 (quoting *Grifols, S.A.*, 2025 WL 1826611, at *17). That is incorrect. Instead, the court held that that statement at issue was not "an accusation of criminal activity or fraud" because it *would not have been a crime or fraudulent* for the plaintiff to do what it had been accused of. *See Grifols*, 2025 WL 1826611, at *17. Here, on the other hand, "market manipulation" is a crime and Mr. Mota dos Santos's statements are therefore defamatory *per se*.

Relatedly, on this same point, Defendants' motion asks the Court to draw impermissible inferences in their favor. They argue that Mr. Mota dos Santos's statements that "there must be better regulation on these matters" and short-selling "should be more controlled" imply that Plaintiff's "actions were *not* criminal," so Mr. Mota dos Santos could not have been accusing Plaintiff of committing a crime. Dkt. 14 at 16 (emphasis added). This is precisely the type of pro-movant inference that Rule 12(b)(6) forbids. Drawing all inferences in Plaintiff's favor, Mr. Mota dos Santos's statement that "better regulation" was needed and Plaintiff's short-selling activities "should be more controlled" implied that Plaintiff was violating the law and should be subject to "more control[]" and "better regulation" by the Portuguese and European authorities. Compl. ¶ 86.

### b.     The Statements Accuse Plaintiff of Violating EU Securities Regulations

A defendant's false statement accusing a plaintiff of violating regulations that govern the plaintiff's business is also defamatory *per se*. *See, e.g.*, *Aron v. McKesson Corp.*, No. CIV.A. 3:22-00830, 2023 WL 1426439, at *4 (W.D. La. Jan. 13, 2023), *R&R adopted sub nom. Carl W. Aron Succession v. McKesson Corp.*, No. CIV.A. 3:22-00830, 2023 WL 1415618 (W.D. La. Jan. 31, 2023) (denying motion to dismiss and holding that plaintiff, a pharmacist, adequately alleged defamation *per se* based on the defendant's statement that "either expressly or implicitly accused [the plaintiff] of criminal or regulatory wrongdoing," (violating DEA regulations), "that, by its very nature, tended to . . . injure [the plaintiff's] professional reputation"); *Wound Care Concepts, Inc. v. Vohra Health Servs., P.A.*, No. 19-62078-CIV-SMITH, 2022 WL 320952, at *16 (S.D. Fla. Jan. 28, 2022) (holding that the defendant's statement that the plaintiff, a Medicare-enrolled medical equipment supplier, violated federal anti-kickback regulations constituted actionable defamation *per se*); *Boren v. Gadwa*, 578 P.3d 861, 872 (Idaho 2024), *reh'g denied* (Jan. 23, 2025)

(holding that the plaintiff, a pilot, stated viable claim for defamation *per se* based on the defendant's assertions that the plaintiff "committed crimes or violated [FAA] regulations").

When Mr. Mota dos Santos said "[t]here are no coincidences" and he is "absolutely sure that this fund is *coordinated with other funds*" to manipulate the market in a "*concerted action* to destroy the value of [Mota-Engil's] stock, Compl. ¶¶ 95-96 (emphases added), he accused Plaintiff of violating MAR Article 12, which defines market manipulation to include "placing an order to trade . . . which: (i) gives, or is likely to give, false or misleading signals as to the . . . price of[] a financial instrument," *id.* ¶ 33, and further accused Plaintiff of violating MAR Recital 39, which specifically extends the regulation's market manipulation prohibitions to "cover[] those persons who *act in collaboration* to commit market abuse," *id.* ¶ 34 (emphasis added).  This accusation forms a separate *per se* basis for defamation liability.

### c.    The Statements Directly Attack the Integrity of Plaintiff's Business

Mr. Mota dos Santos's statements are also defamatory *per se* because they are particularly harmful to Plaintiff's business as an investment firm.

"Remarks that adversely reflect on a person's fitness to conduct his or her business or trade are also deemed defamatory per se." *Lipsky*, 460 S.W.3d at 596.  "To qualify as defamation per se under this category the disparaging words must affect the plaintiff in some manner that is peculiarly harmful to the plaintiff's trade, business, or profession and not merely upon the plaintiff's general characteristics." *Id.*

For example, in *Lipsky*, the Texas Supreme Court held that the defendant's false statements that the plaintiff, a natural gas producer, was "a polluter and a threat to public health and safety," constituted defamation *per se* because "[e]nvironmental responsibility is an attribute particularly important to those in the energy industry—none more so than natural gas producers, . . . who

39

employ [fracking] in their business," and the statements at issue "adversely affect[ed] the perception of [the plaintiff's] fitness and abilities as a natural gas producer." *Id.* Likewise, here, Mr. Mota dos Santos's statements are defamatory *per se* because adhering to securities laws and regulations is "an attribute particularly important to those in the [financial] industry—none more so than" short sellers like Plaintiff, who face particularly heavy scrutiny by regulators, and the statements therefore, "adversely affect[ed] the perception of [Plaintiff's] fitness and abilities as a[n] [investment firm]." *Id.*

### 3.    Mr. Mota dos Santos Acted with the Requisite Degree of Fault

Plaintiff's defamation claims, as pled, demonstrate that Mr. Mota dos Santos acted with the degree of fault required.

The third element of a defamation claim under Texas law, the "requisite degree of fault," hinges on whether the plaintiff is a public figure. "The question of public-figure status is one of constitutional law for courts to decide." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). "Public figures fall into two categories: (1) all-purpose, or general-purpose, public figures, and (2) limited-purpose public figures. General-purpose public figures are those individuals who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts. Limited-purpose public figures, on the other hand, are only public figures for a limited range of issues surrounding a particular public controversy." *Id.* (cleaned up). "The status of the person allegedly defamed determines the requisite degree of fault. A private individual need only prove negligence, whereas a public figure or official must prove actual malice." *Terrell v. Mazaheri*, 676 S.W.3d 116, 127 (Tex. App.–San Antonio 2023, no pet.) (cleaned up).

40

Plaintiff is not a general-purpose public figure "for all purposes and in all contexts," *WFAA-TV, Inc.*, 978 S.W.2d at 571, and Defendants do not argue otherwise. Instead, they propose that Plaintiff is a limited-purpose public figure. *See* Dkt. 14 at 11. It is not.

To determine whether an individual is a limited-purpose public figure, the Fifth Circuit has adopted a three-part test: "(1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy." *Terrell*, 676 S.W.3d at 128. In sum, "[l]imited-purpose public figures are those who thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved[,] inviting attention and comment." *Id*. (cleaned up).

Defendants' attempt to classify Plaintiff as a limited-purpose public figure fails on the second element. "In considering a libel plaintiff's role in a public controversy," the second element, "several inquiries are relevant and instructive: (1) whether the plaintiff actually sought publicity surrounding the controversy; (2) whether the plaintiff had access to the media; and (3) whether the plaintiff voluntarily engag[ed] in activities that necessarily involve[d] the risk of increased exposure and injury to reputation." *WFAA-TV*, 978 S.W.2d at 573 (cleaned up). Defendants mention these factors in a footnote but do not analyze them. None support Defendants' conclusion that Plaintiff's role in the public controversy renders it a public figure.

*First*, Defendants argue that Plaintiff "routinely publishes about global businesses" but ignore that *Plaintiff never sought any publicity* surrounding its short positions in Mota-Engil. Dkt. 14 at 12. To the contrary, other than making mandatory disclosures to CMVM, Plaintiff "did not tell anyone that it was shorting Mota-Engil." Compl. ¶ 53. *Second*, Plaintiff had access to the

41

media just as anyone else does but did not speak with any reporters, put out a press release, or otherwise trigger media coverage of its short positions.  Indeed, there was *zero* press coverage or public discussion regarding Plaintiff's short positions in Mota-Engil until *Mr. Mota dos Santos* injected the issue—and Plaintiff—into news headlines.  *Third*, Plaintiff's short positions, which were based on Plaintiff's in-depth research regarding Mota-Engil, timely disclosed to CMVM in accordance with the law and taken without coordinating with anyone, did not carry more "risk of increased exposure and injury to reputation" than any other lawful investment transaction. Plaintiff did nothing more than take an investment position in Mota-Engil; it cannot be that an investment firm becomes a limited-purpose public figure simply by taking a position in a stock.

The Fourth Circuit's decision in *Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681 (4th Cir. 1989), supports Plaintiff's position.  In *Blue Ridge Bank*, the plaintiff, a bank, did not engage in any advertising or promotional efforts regarding its financial health, which was the subject of the defendant's allegedly defamatory statements.  *Id.* at 687-88.  The defendant nevertheless argued that the bank was a limited-purpose public figure because it "injected itself" into controversy by "participat[ing] in a government regulated industry of national economic importance."  *Id.* at 688. The court rejected this argument, held that the bank was not a limited-purpose public figure, and explained: "We do not believe that the existence of an ongoing public interest in the stability of society's financial institutions and markets, or in the supervision of the gaming industry, or in the regulation of utilities automatically elevates every member of the regulated class to public figure status."  *Id.  Blue Ridge Bank*'s reasoning applies with equal force here.

Because Plaintiff is a private figure, not a limited-purpose public figure, it need "only prove negligence." *Terrell*, 676 S.W.3d at 127.  "In the defamation context, negligence is defined as the failure to investigate the truth or falsity of a statement before publication, and the failure to act as

42

a reasonably prudent person." *Day v. Fed'n of State Med. Boards of the United States, Inc.*, 579 S.W.3d 810, 822 (Tex. App.–San Antonio 2019, pet. denied) (cleaned up). "In other words, the plaintiff must establish that the defendant knew or should have known that the defamatory statement was false." *Id.* (citation omitted). The Complaint readily satisfies this standard. Accepting Plaintiff's allegations as true, Plaintiff took its short positions based on its good-faith research, which revealed systemic problems with Mota-Engil's financials, reporting, and governance—all issues that Mota-Engil's CEO, Mr. Mota dos Santos, knew or should have been aware of. Mr. Mota dos Santos therefore knew that Plaintiff's short was not baseless "market manipulation."

Even if Plaintiff were considered a limited-purpose public figure with respect to its defamation claims against Defendants (it is not), Plaintiff's allegations show that Mr. Mota dos Santos acted with the necessary degree of malice. "Actual malice is defined as the publication of a statement with knowledge that it was false or with reckless disregard of whether it was false or not." *WFAA-TV*, 978 S.W.2d at 573-74 (cleaned up).

It is reasonable to infer that the CEO of Mota-Engil, a large international corporation, had knowledge of the systemic problems that informed Plaintiff's good-faith decision to take short positions in the company and therefore knew that Plaintiff did not in fact commit market manipulation. In light of Mr. Mota dos Santos's "duty" to "protect all shareholders," Compl. ¶ 90, it is also reasonable to infer that he had a motive to defame Plaintiff because he wanted to downplay Plaintiff's short of Mota-Engil and drive Mota-Engil's stock price back up. As for Mr. Mota dos Santos's false statement that Plaintiff "coordinated with other funds" to manipulate the market, he explicitly recklessly disregarded whether that statement was false or not when he disclaimed, "[t]his fund *may* be followed by other funds" but ultimately stated, in definite terms, "[t]here are

43

no coincidences" and "I am absolutely sure that this fund is coordinated with other funds."  Compl. ¶ 95 (emphasis added).

### B.    Mota-Engil Is Vicariously Liable for Mr. Mota-Engil's Statements, Which He Made in His Capacity as Mota-Engil's CEO

Mota-Engil is vicariously liable for Mr. Mota dos Santos's defamatory statements during the *Expresso* interview, which fell within the scope of his employment as Mota-Engil's CEO.  "In Texas, an employee's conduct is considered to fall within the scope of his employment if his actions were "(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed." *Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003) (cleaned up).

Mr. Mota dos Santos's statements meet this test.  Throughout the interview with *Expresso*, Mr. Mota dos Santos made clear that he was speaking as Mota-Engil's CEO, in furtherance of Mota-Engil's business, and to accomplish his mission as CEO: to fulfill his "duty" as "a company executive" to "protect all shareholders."  Compl. ¶ 90.  Moreover, at the start of the interview, he was introduced as the "president of Mota-Engil," Compl. ¶ 87; and, throughout the interview, he repeatedly referred to Mota-Engil's ongoing construction and infrastructure projects around the world using the first-person plural, "we," *id.* ¶ 89.

Defendants argue that Mr. Mota dos Santos's defamatory statements cannot trigger Mota-Engil's liability because Plaintiff has not demonstrated that the statements were "authorized" by Mota-Engil.  Dkt. 14 at 18.  However, Texas courts do not require that a statement be authorized by a corporate defendant for a plaintiff to establish *respondeat superior* liability.  Rather, "[a]n action is sustainable against a corporation for defamation by its agent, if such defamation is referable to the duty owing by the agent to the corporation, and was made while in the discharge of that duty.  Neither express authorization nor subsequent ratification is necessary to establish

44

liability." *Rodriguez v. Sarabyn*, 129 F.3d 760, 767 (5th Cir. 1997) (collecting cases). Mota-Engil is on the hook for Mr. Mota dos Santos's statements.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss for lack of personal jurisdiction (Dkt. 12), *forum non conveniens* (Dkt. 13), and failure to state a claim (Dkt. 14) should be denied.

Dated: April 23, 2026

**GUERERRO & WHITTLE PLLC**

*/s/ Ketan U. Kharod*

Ketan U. Kharod
TX Bar No. 24027105
2905 San Gabriel Street, Suite 309
Austin, Texas 78705
ketan@gwjustice.com
(512) 605-2300

**EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP**

Andrew G. Celli, Jr.*
Samuel Shapiro*
Nick Bourland*

One Rockefeller Plaza, 8th Floor
New York, New York 10020
acelli@ecbawm.com
sshapiro@ecbawm.com
nbourland@ecbawm.com
(212) 763-5000

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff Muddy Waters
Capital LLC*

45

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 23, 2026, the foregoing was served on all counsel of record via ECF in compliance with the Federal Rules of Civil Procedure.

*/s/ Ketan U. Kharod*

Ketan U. Kharod

46