**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

MUDDY WATERS CAPITAL LLC,

        Plaintiff,

v.

CARLOS ANTÓNIO VASCONCELOS MOTA
DOS SANTOS and MOTA-ENGIL, SGPS, S.A.,

        Defendants.

Civil Case No. 1:25-cv-02090

**DEFENDANTS' OMNIBUS REPLY IN SUPPORT OF MOTIONS TO DISMISS FOR
LACK OF PERSONAL JURISDICTION, *FORUM NON CONVENIENS*,
AND FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

ARGUMENT ...........................................................................................................................3

I.    Muddy Waters has not met its burden to establish a *prima facie* case for personal jurisdiction. ...........................................................................................................3

    A.    The Opposition does not identify a single contact that either Defendant had with Texas that relates to Muddy Waters's claims. ...............................3

    B.    The Opposition confirms that Texas was not the "focal point" of the article........................................................................................................3

    C.    The Opposition improperly relies on Muddy Waters's contacts with the forum.......................................................................................................4

    D.    Muddy Waters cannot escape *Block* and controlling Fifth Circuit precedent. ..............................................................................................5

    E.    The Opposition confirms that exercise of jurisdiction would offend traditional standards of fair play and substantial justice. .............................6

II.   The Court should dismiss the case on *forum non conveniens* grounds....................7

    A.    The private interest factors favor Portugal...................................................7

    B.    The public interest factors favor Portugal....................................................9

    C.    Muddy Waters's chosen forum should be given little deference, considering Muddy Waters's motivation for filing suit.............................12

III.  Muddy Waters fails to state a claim under Rule 12(b)(6).....................................13

    A.    Mr. Mota Santos gave his opinion on a matter of public concern with no suggestion of insider knowledge...............................................................13

    B.    "Market manipulation" is not a *per se* accusation of crime.......................17

    C.    Muddy Waters is a limited-purpose public figure that has failed to plead actual malice. ......................................................................................19

    D.    The Complaint pleads no basis for vicarious liability. ...............................22

CONCLUSION.......................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bentley v. Bunton*,
94 S.W.3d 561 (Tex. 2002)..................................................................................16, 22

*Block v. Barnes*,
No. 1:22-CV-869-LY, 2023 WL 2732552 (W.D. Tex. Mar. 30, 2023), *report
and recommendation adopted*, No. 1:22-CV-869-DAE, 2023 WL 4582396
(W.D. Tex. July 18, 2023) .....................................................................................3, 4, 5

*Blue Ridge Bank v. Veribanc, Inc.*,
866 F.2d 681 (4th Cir. 1989) ..................................................................................20

*Brewer v. Cap. Cities/ABC, Inc.*,
986 S.W.2d 636 (Tex. App.—Fort Worth 1998, no pet.)........................................14

*Calder v. Jones*,
465 U.S. 783 (1984)................................................................................................3, 5

*Carlson v. CRH Ams. Materials, Inc.*,
2025 WL 3463685 (W.D. Tex. Nov. 12, 2025)......................................................22

*Clemens v. McNamee*,
615 F.3d 374 (5th Cir. 2010) ..................................................................................6

*Clerides v. Boeing Co.*,
534 F.3d 623 (7th Cir. 2008) ..................................................................................9

*Cummins v. SunTrust Cap. Mkts, Inc.*,
416 Fed. App'x 101 (2d Cir. 2011) .........................................................................15, 16

*Dallas Morning News, Inc. v. Tatum*,
554 S.W.3d 614 (Tex. 2018)...................................................................................13, 16

*Delta Air Lines, Inc. v. Chimet, S.p.A.*,
619 F.3d 288 (3d Cir. 2010)....................................................................................9

*Punyee ex rel. Doe #1 v. Bredimus*,
No. CIV.A. 3:04CV0893-G, 2004 WL 2511144 (N.D. Tex. Nov. 5, 2004) ...........12

*DTEX, LLC v. BBVA Bancomer, S.A.*,
508 F.3d 785 (5th Cir. 2007) ..................................................................................9, 10

*Falk & Mayfield L.L.P. v. Molzan*,
974 S.W.2d 821 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) .................18

*Fiber Sys. Int'l, Inc. v. Roehrs*,
    470 F.3d 1150 (5th Cir. 2006) ...................................................................................17

*Foshee v. Banks*,
    No. 20-62699-CIV-DIMITROULEAS, 2021 WL 1688977 (S.D. Fla. Mar. 25,
    2021) *aff'd*, 2022 WL 17547200 (11th Cir. Dec. 9, 2022) ...................................8, 9

*Gray v. HEB Food Store*,
    941 S.W.2d 327 (Tex. App.—Corpus Christi 1997, writ denied) ....................................17, 18

*Grifols, S.A. v. Yu*,
    24-cv-576, 2025 WL 1826611 (S.D.N.Y. July 2, 2025)....................................................16, 18

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989)..........................................................................................................22

*Herman v. Cataphora Inc.*,
    730 F.3d 460 (5th Cir. 2013) ..............................................................................................5, 6

*Immanuel v. Cable News Network, Inc.*,
    618 F. Supp. 3d 557 (S.D. Tex. 2022) .................................................................................21

*KTRK Television, Inc. v. Robinson*,
    409 S.W.3d 682 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)....................................17

*Kuykendall v. Amazon Studios LLC*,
    No. 5:20-CV-219, 2022 WL 19337992 (S.D. Tex. Mar. 18, 2022) ........................................4

*Lecody v. Anderson*,
    2021 WL 1202348 (Tex. App.—Amarillo Mar. 30, 2021, no pet.).......................................17

*Levine v. CMP Publ'n, Inc.*,
    738 F.2d 660 (5th Cir. 1984) .............................................................................................11

*Lilith Fund for Reprod. Equity v. Dickson*,
    662 S.W.3d 355 (Tex. 2023)..........................................................................................14, 15

*Linan v. Strafco, Inc.*,
    No. 13-05-027-CV, 2006 WL 1766204 (Tex. App.—Corpus Christi–Edinburg
    June 29, 2006, no pet.) ...................................................................................................14, 19

*Luke v. Schwartz*,
    1:23-CV-1122-RP, 2024 WL 2304594 (W.D. Tex. May 21, 2024)................................16, 19

*Lyons v. Starbucks Coffee Co.*,
    No. 3:19-cv-2457-S-BT, 2020 WL 5732638 (N.D. Tex. Aug. 24, 2020) ...............................24

*M. W. Prince Hall Grand Lodge v. Anderson*,
    No. 24-30517, 2025 WL 1576802 (5th Cir. June 4, 2025)......................................................3, 5

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
    17-CV-07568, 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018), *report and
    recommendation adopted*, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018).............................16

*Minyard Food Stores, Inc. v. Goodman*,
    80 S.W.3d 573 (Tex. 2002)...............................................................................................22, 23

*Oberc v. Fairlane Cap. Inc.*,
    No. 3:13-CV-1010-N-BH, 2016 WL 3039658 (N.D. Tex. May 2, 2016),
    *report and recommendation adopted*, 2016 WL 3031949 (N.D. Tex. May 27,
    2016) ...............................................................................................................................14, 19, 22

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) ........................................................................................................6

*Ritzmann v. Wkly. World News, Inc.*,
    614 F. Supp. 1336 (N.D. Tex. 1985) ........................................................................................11

*S & D Trading Academy, LLC v. AAFIS, Inc.*,
     494 F. Supp. 2d 558 (S.D. Tex. 2007) .....................................................................................9

*Snead v. Redland Aggregates Ltd.*,
    998 F.2d 1325 (5th Cir. 1993) ..................................................................................................21

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)...................................................................................................................21

*Tellez v. Madrigal*,
    223 F. Supp. 3d 626 (W.D. Tex. 2016)..............................................................................7, 8, 10

*Texas & P. Ry. Co. v. Hagenloh*,
    247 S.W.2d 236 (Tex. 1952)................................................................................................23, 24

*Veba-Chemie A.G. v. M/V Getafix*,
    711 F.2d 1243 (5th Cir. 1983) ..................................................................................................12

*Walden v. Fiore*,
    571 U.S. 277 (2014)................................................................................................................4, 5

*WFAA-TV, Inc. v. McLemore*,
    978 S.W.2d 568 (Tex. 1998).......................................................................................................19

**Statutes**

Portuguese Securities Code, Article 397 .........................................................................................11

**Other Authorities**

*Gathering Evidence in Aid of Foreign Litigation Guide*, LEXMUNDI (Mar. 24, 2022), https://tinyurl.com/2ck7ncad ................................................................................8

*Portugal Judicial Assistance Information* (Aug. 29, 2018), https://tinyurl.com/82n8ax98 ................................................................................8

Restatement (Second) of Conflicts § 150 ........................................................................11

Restatement (Second) of Agency § 235............................................................................23

**INTRODUCTION**[1]

Plaintiff's Opposition confirms that (1) the Court lacks personal jurisdiction; (2) Portugal is the more appropriate forum; and (3) the Complaint fails to state a claim.

**The Court lacks personal jurisdiction over Defendants.** The Opposition concedes Muddy Waters's claims target comments that Mr. Mota Santos (the Portuguese CEO of Mota-Engil, a Portuguese company) made in Portugal to a Portuguese reporter (later published in Portuguese in a Portuguese newspaper for a Portuguese audience) about Muddy Waters's short selling transactions in Portuguese securities markets (through two Cayman-based entities). Pointing only to Muddy Waters's own presence in Texas, the Opposition dodges "the proper question" of whether *Defendants'* "conduct connects [them] to the forum in a meaningful way." Dkt. 12 at 8; Opp'n at 12–13. The claims have nothing to do with Texas, and there is no connection between Defendants and the forum. Case after case, from the Supreme Court in *Walden*, to this Court in *Block*, has rejected the arguments advanced in the Opposition. Muddy Waters cannot identify a single instance in which a court found personal jurisdiction with remotely analogous facts.

**Portugal is the more appropriate forum.** Alternatively, this case should be dismissed on *forum non conveniens* grounds. Muddy Waters concedes Portugal is an available and adequate forum. The Opposition further admits that effectively all non-Muddy Waters witnesses and documents are located abroad and that the claims involve Portugal-based conduct and interpretation of Portuguese and EU securities laws. Contrary to Muddy Waters's assertion, key documents and non-party witnesses located in Portugal cannot be accessed through resort to the

---

[1] Capitalized words not otherwise defined herein have their meaning as set forth in Defendants' motions to dismiss.

Hague Convention. Muddy Waters's choice of U.S. forum deserves no deference because this lawsuit was intended to do no more than save face on a short position that Muddy Waters still holds and that remains out-of-the-money.

**The Complaint fails to state a claim.** Even if jurisdiction and forum were proper, Muddy Waters's defamation claims fail as a matter of law and should be dismissed under Rule 12(b)(6). The Opposition highlights the portions of Mr. Mota Santos's statements that require dismissal: Mr. Mota Santos qualified his statements as his own personal views and beliefs, disclosed the facts that formed the basis of his opinions (while acknowledging that others could draw contrary opinions from those same facts), and gave the remarks in the context of a policy discussion about regulatory reform—each an independent basis for protection under Texas law. Muddy Waters's *per se* defamation theory fails in any event, because "market manipulation" is not an unambiguous accusation of a specific crime. Separately, Muddy Waters—a self-described activist investment firm with a global media profile that deliberately crossed public-reporting thresholds, generating significant publicity in Portugal—is a limited-purpose public figure, and the Complaint's conclusory recitation of the actual-malice standard, devoid of any specific factual support, is insufficient to survive dismissal. Finally, the Opposition does not make any real attempt to demonstrate that Mr. Mota Santos's statements were made in the scope of his employment and ignores his express disclaimer that he was offering his "personal opinion, it doesn't mean it's the company's opinion." This forecloses vicarious liability as a matter of law.

At bottom, the takeaway of the Court's decision on all three motions should be simple—a Texas entity cannot engage in controversial commercial activity outside the U.S. and then weaponize Texas courts and defamation law to reach into those foreign jurisdictions and harass anyone that speaks out against it.

**ARGUMENT**

I.  **Muddy Waters has not met its burden to establish a *prima facie* case for personal jurisdiction.**

Muddy Waters concedes, as it must, that the Court does not have general jurisdiction and has failed to carry its burden to establish a *prima facie* case of specific jurisdiction.

A.    **The Opposition does not identify a single contact that either Defendant had with Texas that relates to Muddy Waters's claims.**

For specific jurisdiction, Muddy Waters had to show: (1) the claims "arise out of or relate to" the Defendants' contacts with Texas and (2) Defendants "purposely directed" their activities toward the forum.  Dkt. 12 at 5.  In essence, the Opposition skips over the first prong and discusses only "purposeful direction."  There is not a single mention in the Opposition of any contact either Defendant had with Texas, let alone one that gives rise to the claims at issue.[2]  "Without a nexus between its defamation claim and [Defendants'] contacts with [Texas], [Muddy Waters] has failed to offer sufficient evidence to support a prima facie case of specific jurisdiction."  *M. W. Prince Hall Grand Lodge v. Anderson*, No. 24-30517, 2025 WL 1576802, at *5 (5th Cir. June 4, 2025).

B.    **The Opposition confirms that Texas was not the "focal point" of the article.**

For the "purposeful direction" prong, Muddy Waters relies heavily on *Calder*.  But *Calder* is of no help.  Under *Calder*, the forum must be the "focal point" of the defamatory story.  *Calder v. Jones*, 465 U.S. 783, 789 (1984).  "In applying the *Calder* analysis, the Fifth Circuit has emphasized the importance of the 'focal point' language" and "declined to find personal jurisdiction when the statements focus on activities and events outside the forum state."  *Block v.*

---

[2] The Opposition abandons the Complaint's sole jurisdictional allegation related to Texas, which was that Mota-Engil subsidiaries imported goods through the Port of Houston years ago for use in infrastructure projects in Mexico.  Compl. ¶¶ 106–11.  Even taken as true, that allegation is irrelevant to jurisdiction because it has nothing to do with Muddy Waters's defamation claims.  *See* Dkt. 12 at 6.  The Complaint does not identify any contacts Mr. Mota Santos has with Texas.

*Barnes*, No. 1:22-CV-869-LY, 2023 WL 2732552, at *4 (W.D. Tex. Mar. 30, 2023), *report and recommendation adopted*, No. 1:22-CV-869-DAE, 2023 WL 4582396 (W.D. Tex. July 18, 2023).

As in *Block*, Texas is not the "focal point" of Muddy Waters's claims because the challenged statements were not "made in Texas, about Texas, or [] specifically directed at Texas residents" (i.e. they were not broadcast specifically to a Texas audience). *Id.* The Opposition concedes that the statements were made in Portugal, intended for a Portuguese audience, and about short-selling activity in Portuguese securities (through Cayman entities). Opp'n at 6, 21; Compl. at 85–86. And the Opposition does not dispute the statements were made and published in a language few Texans speak, and in a newspaper with no reach in Texas. Compl. at 85–86. Muddy Waters has not identified any case law that comes close to suggesting that Texas could serve as the "focal point" of this case.[3]

**C.      The Opposition improperly relies on Muddy Waters's contacts with the forum.**

Left with little else to say, the Opposition focuses on Muddy Waters's contacts with Texas, claiming that the challenged statements harmed "the reputation of a Texas-based investment firm." Opp'n at 10. This is unavailing. "*Calder* made clear that mere injury to a forum resident is not a

---

[3] The Opposition refers to the test in *Calder* as the "subject and sources" test. Opp'n at 8. To satisfy *Calder*, a plaintiff must satisfy both prongs of the test. *Kuykendall v. Amazon Studios LLC*, No. 5:20-CV-219, 2022 WL 19337992, at *5 (S.D. Tex. Mar. 18, 2022). Muddy Waters satisfies neither. The "subject" portion is simply a restatement of the "focal point" analysis, which fails for the reasons set forth above. For example, in *Kuykendall* (cited by Muddy Waters), the plaintiff did not "satisf[y] the subject prong" of the "subject and sources" test because the "focal points of . . . the allegations about Plaintiff [were] events that occurred in Mexico and California." *Id.* The "sources" prong refers to whether the speaker relied on information from forum-based sources, as in *Calder*. *Id.* at 6. The Opposition does not identify a Texas-based source. Opp'n at 5. It asserts that Mr. Mota Santos referenced the SEC investigation into Muddy Waters (as well as a German regulatory investigation), but that portion of the comments is not alleged to have been defamatory (indeed, these regulators have investigated Muddy Waters's activity). *Id.* at 9. Moreover, the SEC was not a "source" in any real sense nor is it a *Texas*-based source. *Id.* at 9–10.

sufficient connection to the forum" for purposes of jurisdiction "[r]egardless of where a plaintiff lives or works." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).[4] By focusing on Muddy Waters, not Defendants, the Opposition refuses to engage with the "proper question" of "whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* Without any other identified connection between Defendants and the forum, it is of no moment that Muddy Waters sits in Texas or felt reputational harm in the state (an assertion for which there is no support, as Muddy Waters has failed to identify a single person in Texas who read the article).

> **D.    Muddy Waters cannot escape *Block* and controlling Fifth Circuit precedent.**

The Motion highlighted the similarities between this case, *Block*, and several Fifth Circuit defamation cases that affirmed dismissal on jurisdictional grounds. Muddy Waters claims those cases are distinguishable because they did not involve "allegedly defamatory statements concerning the respective plaintiffs' activities in Texas." Opp'n at 10. Incorrect.

In *Block*, Muddy Waters's founder argued that the defendant's defamatory comments implicated meetings and communications with Block in Texas. *Block*, 2023 WL 2732552, at *3. The plaintiff in *M. W. Prince* accused the defendant of defamation through a statement that explicitly referenced "persistent and deliberate UNMASONIC acts" that took place in the forum. 2025 WL 1576802, at *1. And in *Herman v. Cataphora Inc.*, another Fifth Circuit case not cited in the Opposition, the court rejected the same argument advanced by Muddy Waters, affirming

---

[4] In *Calder*, the defendants traveled to California, gathered research from California-based informants, and elicited comments from the plaintiff through calls to her residence in California. 465 U.S. at 785–86. The article at issue also focused on activities and events that took place in California and received significant print circulation within California, the publication's largest market. *Id.* at 785, 788. None of those facts are present here.

5

dismissal even though the court acknowledged that the challenged statements concerned "some activity in Louisiana." 730 F.3d 460, 465 (5th Cir. 2013).

Regardless, the challenged statements here have no connection to Texas-based activity in any event, so Muddy Waters's attempt to distinguish these cases falls flat as a factual matter too. Like in *Revell v. Lidov*, the *Expresso* article "contain[ed] no reference to Texas, nor does it refer to the Texas activities of [Muddy Waters]." 317 F.3d 467, 473 (5th Cir. 2002). Instead, the article discussed Muddy Waters's transactions in a Portuguese stock through two Cayman-based funds (not Texas-based entities). And like in *Clemens v. McNamee*, which involved statements about a Texas baseball player's transactions involving performance enhancing drugs outside the state, Muddy Waters executed the relevant transactions outside of Texas. *See* 615 F.3d 374, 377 (5th Cir. 2010). It is irrelevant that Muddy Waters may have directed its Cayman-based affiliates from Texas—the trades were still executed within a foreign securities market.

**E.    The Opposition confirms that exercise of jurisdiction would offend traditional standards of fair play and substantial justice.**

The parties generally agree on the framework for the Court's assessment of whether jurisdiction comports with "fair play and substantial justice." And Muddy Waters does not dispute that this case would (1) be litigated in a foreign language; (2) involve foreign entities, witnesses, and documents not subject to compulsory process from U.S. courts; (3) require interpretation of foreign securities laws; and (4) foreign defendants face unique burdens in U.S. courts. *See* Dkt. 12 at 10–12; Opp'n at 21–22, 28. Nevertheless, the Opposition asks the Court to set that all aside, essentially for no other reason than Muddy Waters having based its operations in Texas and filing the lawsuit here.

Muddy Waters's location should carry little weight. Defendants submit that it is neither fair nor just for a Texas court to exercise jurisdiction over a foreign defendant that speaks in a

foreign language through foreign media channels against the actions of a business engaged in controversial commercial activity in his or her country, even if that business happens to have a headquarters in Texas.  Here, the allegedly tortious conduct occurred entirely abroad—a Portuguese citizen made statements to a Portuguese journalist, published in Portuguese, in a Portuguese newspaper, about Muddy Waters's transaction in Portuguese securities.  Texas's interest in protecting its residents does not extend to regulating foreign speech of that nature.

## II.    The Court should dismiss the case on *forum non conveniens* grounds.

In addition, or in the alternative, the Court should dismiss the case on *forum non conveniens* grounds in favor of a Portugal forum.  The Opposition does not dispute that Portugal is an available and adequate forum.  Opp'n at n.5.  The only remaining question is whether the private and public interest factors weigh in favor of dismissal.  They do.

### A.    The private interest factors favor Portugal.

The private interest factors weigh in favor of Portugal because Portugal grants the parties greater, more convenient, and less costly access to relevant party and non-party documents, witnesses, and evidence, whether through compulsory process or willing assistance.  The Opposition concedes that key documents and witnesses identified in the motion are located in Portugal and fails to address the case law Defendants cited showing that these facts weigh strongly in favor of dismissal.  *Id.* at 21.  There is also no dispute that a Texas forum places substantial burden on witnesses located in Portugal (willing or not), just as a matter of logistics and costs. While Muddy Waters posits that there are non-party witnesses and documents located in Texas relevant to its damages, it fails to identify any such witnesses or documents.  *See id.*  Given the number of identified Portugal-based witnesses, relative to the number of identified U.S.-based witnesses, Muddy Waters's reliance on *Tellez* is misplaced.  *Tellez v. Madrigal*, 223 F. Supp. 3d

626, 637 (W.D. Tex. 2016) (denying motion to dismiss on forum non conveniens grounds where the plaintiff argued that "at least 21 of her 33 potential witnesses" lived in the U.S).[5]

Muddy Waters retorts that the Hague Convention and availability of videoconferencing technology mitigate inferior access to Portugal-based evidence from a Texas forum. *See* Opp'n at 22. This contention is wrong. "The Portuguese Central Authority has informed the Hague Conference . . . that depositions in Portugal of Portuguese and third-country nationals may occur only in a Portuguese court proceeding."[6] Further, "the Portuguese State made a reservation regarding the applicability of Article 23 of the Hague Evidence Convention, meaning it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as foreseen in common law countries."[7]

In any event Muddy Waters dramatically oversimplifies the process. Invocation of the Hague Convention takes significant time and resources, and would permit only limited discovery, even assuming Portuguese authorities chose to acquiesce. For that reason, courts have consistently recognized that use of "the Hague Convention to gather this evidence . . . can be 'unduly time consuming and expensive,'" tilting the private factors in favor of dismissal. *Foshee v. Banks*, No.

---

[5] The *Tellez* court found that ease of access to sources of proof did not favor dismissal because substantial documents relating to the corporate activities of a Texas-headquartered entity, Omnilife USA, were already located in the United States, and indeed one of the plaintiff's claims was a request under the Texas Business Organizations Code for examination of Omnilife USA's books and records—a claim that inherently required access to documents in the forum. *Tellez*, 223 F. Supp. 3d 626 at 632. Here, no such domestic evidentiary anchor exists; the critical witnesses— Mr. Mota Santos, the interviewing journalist, and any percipient witnesses to the publication—are located exclusively in Portugal, along with the documentary and regulatory evidence needed to adjudicate the claims.

[6] *Portugal Judicial Assistance Information*, TRAVEL.STATE.GOV (Aug. 29, 2018), https://tinyurl.com/82n8ax98.

[7] *Gathering Evidence in Aid of Foreign Litigation Guide*, LEXMUNDI (Mar. 24, 2022), https://tinyurl.com/2ck7ncad.

20-62699-CIV-DIMITROULEAS, 2021 WL 1688977, at *5 (S.D. Fla. Mar. 25, 2021) *aff'd*, 2022 WL 17547200 (11th Cir. Dec. 9, 2022). *see also DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 799 (5th Cir. 2007) ("This court cannot compel attendance by any unwilling nonparty witness who is in Mexico."); *Clerides v. Boeing Co.*, 534 F.3d 623, 630 (7th Cir. 2008) ("[T]he inconvenience of taped depositions obtained by letters rogatory favor[s] dismissal.").

Finally, Muddy Waters dismisses the need for translation as "immaterial." But translation goes to the core of the case. Indeed, Muddy Waters could not even file its Complaint without first translating the very article it contends serves as the basis for its claims. If this suit were to proceed in Texas, the article would be just one of thousands of translations necessary. Other core documents (including, e.g., the reporter's notes and drafts of the article and Muddy Waters's disclosures to and communications with the Portuguese regulator) and witness testimony (including testimony by Mr. Mota Santos and the *Expresso* reporter) would likewise be in Portuguese. Muddy Waters relies on *S & D Trading Academy, LLC v. AAFIS, Inc.*, but that case is easily distinguished because it involved China- and U.S.-based claims, and the court could not determine whether English or Chinese documents were "more voluminous and . . . more important to the outcome of this case." 494 F. Supp. 2d 558, 572 (S.D. Tex. 2007).

In short, the private interest factors weigh in favor of a Portuguese forum.

## B.    The public interest factors favor Portugal.

Likewise, the public interest factors strongly favor dismissal given Portugal's central role in this case. *See DTEX*, 508 F.3d at 803 (public interest factors weighed in favor of dismissal when "Mexico [wa]s the focal point"); *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 300 (3d Cir. 2010) ("the locus of the alleged culpable conduct was Italy, not Pennsylvania," and the court "therefore reasonably concluded that the public interest factors also supported dismissal.").

With respect to the "administrative difficulties" factor, "the public interest in minimizing administrative difficulties weighs in favor of dismissal in favor of a [foreign] forum, given the difficulties in obtaining evidence" and the "likely application of [foreign] law. *DTEX*, 508 F.3d at 802.[8] Regardless of comparative congestion of each court (and recognizing this Court is very busy, and soon to become much busier with upcoming judicial departures), Portugal offers fewer administrative obstacles from an efficiency perspective. If the case proceeded here, the Court and the parties would have to manage considerable challenges arising from taking evidence from Portugal-based witnesses, the review of voluminous Portuguese-language discovery, and oversight and coordination of depositions conducted through interpreters across multiple time zones.

Muddy Waters asserts that the public interest factors nevertheless do not weigh in favor of dismissal because there is "strong local interest" due to Muddy Waters's status as a Texas business. Opp'n at 25–26. But local interest is measured by the nature of the controversy, not merely the plaintiff's domicile. *See DTEX*, 508 F.3d at 802 (local interest favors dismissal when the alleged tort occurred in a foreign forum). Texas's connection to the dispute is limited to the fortuity that Muddy Waters chose to trade in securities abroad while maintaining offices here. By contrast, Portugal's local interest in resolving this dispute is overwhelming: this litigation implicates the freedom of Portuguese citizens to comment on matters of public concern and Portuguese securities

---

[8] *Tellez* is distinguishable. There, the court recognized that "the United States and Texas have very strong interests in adjudicating Plaintiffs' contentions that Defendant violated Texas law by using instrumentalities of United States commerce." *Tellez*, 223 F. Supp. 3d at 642 (citation omitted). That reasoning has no application here: there is no alleged use of instrumentalities of U.S. commerce. To the contrary, the very instrumentalities through which the short positions were taken are two funds registered in the Cayman Islands—not Texas. The factors that led the *Tellez* court to deny dismissal—domestic substantive law, a Texas corporation at the heart of the case, and a genuinely bilateral distribution of evidence—are entirely absent here.

10

markets through Portuguese media channels, the conduct and freedom of the Portuguese financial press, and the interpretation of Portuguese securities laws and EU regulations.

Portugal is also better suited to handle this case because important matters of Portuguese law govern central issues—and Muddy Waters effectively concedes as much. The Complaint itself cites Article 397 of the Portuguese Securities code (the "Código dos Valores Mobiliários"), and the Opposition relies on those same statutes to support its *per se* defamation theory. Compl. ¶¶ 36–38; Opp'n at 36. Determining whether Mr. Mota Santos's statements are defamatory requires understanding what "manipulation" means in the context of complicated Portuguese and EU securities regulations—questions Portuguese courts are uniquely equipped to answer.

Muddy Waters's argument that Texas law applies to its claims under Restatement (Second) of Conflicts § 150(2) fails because the *Expresso* interview—published in Portuguese, for a Portuguese audience, in a Portuguese newspaper—does not constitute an "aggregate communication" meaningfully directed at Texas, and the mere technical accessibility of the article on the internet does not change that result. Opp'n at 26. Texas does not have "the most significant relationship" despite being Muddy Waters's principal place of business because "the place of principal circulation of the matter claimed to be defamatory" was not in Texas. Restatement (Second) of Conflicts § 150(3) Comment (f). [9]

---

[9] Muddy Waters's reliance on *Levine v. CMP Publ'n, Inc.*, is misplaced because that case involved an English-language publication distributed in the U.S., not a foreign-language article published in a foreign newspaper, and the nature and language of the publication here point decisively to Portugal. 738 F.2d 660 (5th Cir. 1984); *see also Ritzmann v. Wkly. World News, Inc.*, 614 F. Supp. 1336, 1338 (N.D. Tex. 1985) ("distribution of [the defamatory] publication at supermarket check-out counters throughout Texas" yielded the conclusion that the principal injuries of the Texas-based plaintiff occurred in Texas). In any event, even if Texas law were determined to apply to certain aspects of this dispute, that would not weigh against dismissal. Portuguese courts are fully capable of applying Texas law where necessary.

11

While Muddy Waters contends that citizens of this District should not be spared from jury service because "Plaintiff's situs is in Austin," the reality is that a trial in this case would require the jury to grapple with Portuguese securities law, EU regulations, the structure of the Euronext Lisbon exchange, and testimony from Portuguese-speaking witnesses through interpreters. *See* Opp'n at 28. There is not a "strong local interest" in the matter that warrants burdening a Texas jury with this quintessentially Portuguese dispute. Portugal has a superior interest and connection to the controversy, and burdening local jurors with matters of foreign interest is precisely the concern that *forum non conveniens* is designed to address.

### C. Muddy Waters's chosen forum should be given little deference, considering Muddy Waters's motivation for filing suit.

Muddy Waters does not dispute that it continues to maintain a short position in Mota-Engil stock and that its short position remains out-of-the-money (absent undisclosed hedge or cover). It has every economic motivation to drive down Mota-Engil's stock price through its public speech and actions. Muddy Waters contends the Court should not consider these facts in deciding whether Muddy Waters's choice of forum merits deference. *Id.* at 19–20. But even the cases cited by Muddy Waters caution that courts should be mindful of the plaintiff's motivation for filing suit in an inconvenient forum. *See, e.g. Punyee ex rel. Doe #1 v. Bredimus*, No. CIV.A. 3:04CV0893-G, 2004 WL 2511144, at *3 (N.D. Tex. Nov. 5, 2004) (including "whether the plaintiff has sought to harass the defendant by selecting an improper forum" as one of the "practical problems" to consider while applying the private interest factors). Here, Muddy Waters has used the Complaint to publish "findings" of the ilk it typically publishes on the internet, while securing the protection of the judicial proceedings privilege. Under these circumstances, Muddy Waters's choice of forum should be given little deference. *See Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1248 n.10 (5th Cir. 1983) ("forum non conveniens is sensitive to plaintiff's motive for choosing his forum.").

12

**III.     Muddy Waters fails to state a claim under Rule 12(b)(6).**

> **A.     Mr. Mota Santos gave his opinion on a matter of public concern with no suggestion of insider knowledge.**

The Motion demonstrated that none of the challenged statements are actionable: they are expressly couched as opinions, grounded in disclosed facts, and made in response to a journalist's question about whether short selling activity should be regulated.  Dkt. 14 at 8–11.  The Opposition does not rebut these dispositive points, but instead asks the Court to disregard them in favor of Muddy Waters's own interpretation of cherry-picked snippets.  That approach fails.

First, Mr. Mota Santos repeatedly and explicitly qualified his statements as opinions. Muddy Waters acknowledges this but argues "there are no magic words" that automatically insulate defamatory statements.  Opp'n at 31.  That is correct but irrelevant.  As explained in the Motion—and as Muddy Waters does not dispute—prefatory language that couches a statement as an opinion is a strong factor in determining whether a statement is actionable.  In *Tatum*, the Texas Supreme Court held that a column's "first-person, informal style indicates that the format is subjective rather than objective" and that the column's use of "various versions of 'I think' and 'I understand' . . . indicate[s] that the statement is an opinion."  *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018).  Here, the opinion signals are even more emphatic.  Mr. Mota Santos stated five separate first-person opinion signals within a single passage—far more than *Tatum*.  *Id*.  Muddy Waters attempts to distinguish *Tatum* by arguing that "the court held that the statement at issue. . . was non-actionable opinion" because it "was a newspaper opinion column" and "because the statement was 'literally true.'"  Opp'n at 32–33.  That is incorrect.  *Tatum*'s holding did not turn on either its format or its "literal truth;" rather, it identified multiple contextual signals—first-person qualifiers, disclosed factual bases, and a public-debate setting—any one of which can render a statement non-actionable.  554 S.W.3d at 639–40.  All three are present here.

13

The Opposition ignores other cases in which courts have reached the same result. *See Brewer v. Cap. Cities/ABC, Inc.*, 986 S.W.2d 636, 643 (Tex. App.—Fort Worth 1998, no pet.); *Oberc v. Fairlane Cap. Inc.*, No. 3:13-CV-1010-N-BH, 2016 WL 3039658, at *7 (N.D. Tex. May 2, 2016), *report and recommendation adopted*, 2016 WL 3031949 (N.D. Tex. May 27, 2016); *Linan v. Strafco, Inc.*, No. 13-05-027-CV, 2006 WL 1766204, at *5 (Tex. App.—Corpus Christi–Edinburg June 29, 2006, no pet.).

Second, Mr. Mota Santos disclosed the factual premises for his opinions. When "the facts underlying [the] opinion are set out in the publication itself," readers can "evaluate the facts and either accept or reject the opinion" themselves, and the statement is non-actionable opinion. *Brewer*, 986 S.W.2d at 643. Here, Mr. Mota Santos cited (1) Muddy Waters's publicly disclosed 0.65% short position and the subsequent spike in free-float short interest (Ex. A at 25–26; Compl. ¶ 95), and (2) Muddy Waters's well-documented history of being investigated by regulators in the U.S. and Germany (*id*.). Both are publicly available facts that any *Expresso* reader could independently verify. The Opposition concedes this, yet argues that the disclosed facts "d[o] not support the conclusion that Plaintiff engaged in 'market manipulation' or improper 'coordinat[ion].'" Opp'n at 35–36. But that is a dispute about the *rationality of the inference*, not about undisclosed facts. In attacking Mr. Mota Santos's logic, Muddy Waters proves the point— a reasonable reader could equally evaluate the disclosed factual bases and draw their own conclusions.

Nor does the phrase "I am absolutely sure" imply undisclosed evidence, as the Opposition posits. Opp'n at 32, 34–35. "[T]he sincerity of one's belief does not transform an opinion into a fact." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 369 (Tex. 2023). And Mr. Mota Santos expressly disclaimed specialized knowledge: "I am not a capital market specialist or capital

14

market regulation expert." Ex. A at 25. This further negates any inference that his statements rested on insider knowledge.[10]

Finally, the Opposition does not rebut that the interview's regulatory-reform framing independently protects Mr. Mota Santos's statements. In *Lilith Fund*, the Texas Supreme Court held that statements calling abortion providers "criminal organizations" were non-actionable because a reasonable reader "could not understand [the speaker] as conveying false information about the plaintiffs' underlying conduct, as opposed to his opinion about the legality and morality of that conduct." 662 S.W.3d at 368. Here too, the *Expresso* interviewer's question framed a discussion about policy: "Should these [short-selling] movements be more controlled?" Compl. ¶ 92; Ex. A at 25. Mr. Mota Santos responded with a call for "better regulation." Ex. A at 26; Compl. ¶ 96. As in *Lilith Fund*, this signals to the reader that the "purpose is advocacy, not the dissemination of facts." 662 S.W.3d at 367.

Muddy Waters tries to distinguish *Lilith Fund* by noting that it involved a political campaign regarding abortion. Opp'n at 33–34. But the *Lilith Fund* principle is not confined to abortion politics. What matters is whether the speaker's purpose was "advocacy" on a public policy issue rather than "the dissemination of facts." 662 S.W.3d at 367. Here, the interviewer's question explicitly invited normative commentary on regulatory policy, and Mr. Mota Santos responded with a call for "better regulation"—textbook advocacy. The Opposition also fails to refute that other courts have applied this principle in the context of market-regulation commentary.

---

[10] *Cummins v. SunTrust Cap. Mkts, Inc*., 416 Fed. App'x 101 (2d Cir. 2011), applying Texas law, reached the same result, holding that accusing plaintiff of securities "manipulation," when tethered to disclosed public facts and framed by opinion qualifiers, is textbook opinion. Muddy Waters's attempt to distinguish *Cummins* on the ground that the statements there "did not imply the existence of undisclosed verifiable facts" (Opp'n at 36) only underscores the point—Mr. Mota Santos likewise disclosed the factual bases for his views, and no undisclosed facts are implied.

15

*See* Dkt. 14 at 10–11 (citing *Cummins*, 416 Fed. App'x at 103–04; *Grifols, S.A. v. Yu*, 24-cv-576, 2025 WL 1826611, at *19 (S.D.N.Y. July 2, 2025); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, 17-CV-07568, 2018 WL 847014, at *7 (S.D.N.Y. Jan. 12, 2018), *report and recommendation adopted*, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018)).  Muddy Waters's reliance on *Luke v. Schwartz*, 1:23-CV-1122-RP, 2024 WL 2304594 (W.D. Tex. May 21, 2024), is misplaced.  In *Luke*, the defendant sent a private email to a third party flatly accusing the plaintiff of "sexual assault" without any debate context, disclosed factual bases, or opinion qualifiers.  *See id.* at *3.  On those facts, the Court rightly found the statements were not analogous to *Lilith Fund*.  *Id.*  Here, in contrast, the debate context is woven into the very structure of the exchange, multiple opinion qualifiers are present, the factual bases are disclosed, and Mr. Mota Santos concludes with a call for better regulation—the precise combination of factors that *Lilith Fund* found dispositive.

Unable to rebut these points, Muddy Waters tries to shift the Court's focus.  In chart format, the Opposition revises each of Mr. Mota Santos's actual statements to identify the "objectively verifiable" defamatory facts purportedly conveyed.  Opp'n 30–31.  According to Muddy Waters, this Court should ignore the "words and context *surrounding* Mr. Mota Santos's defamatory statements" and focus on "the statements themselves"—or at least Plaintiff's parsed version.  *Id.* at 30.  But the law requires the opposite: whether a statement is capable of defamatory meaning is a question of law resolved from a reasonable reader's perspective of the *entire* publication.  *Tatum*, 554 S.W.3d at 624.  Indeed, "even when a statement *is* verifiable as false, it does not give rise to liability if the 'entire context in which it was made' discloses that it is merely an opinion masquerading as a fact."  *Id.* (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002)) (emphasis in original).

The Court should reject Muddy Waters's invitation to disaggregate the statements from their context. Viewed as a whole, no reasonable reader of the *Expresso* interview would understand Mr. Mota Santos's remarks as asserting verifiable facts rather than expressing his personal viewpoint. The statements are non-actionable as a matter of law.

**B.      "Market manipulation" is not a *per se* accusation of crime.**

Because it pleads no facts supporting damages, Muddy Waters must plausibly plead "*per se*" defamation to survive dismissal. In support of that theory, Muddy Waters claims that Mr. Mota Santos's statement that there was "manipulation" was an unambiguous accusation of a crime. But they ignore the reasons why this argument fails. First and foremost, the imputation-of-crime category of defamation *per se* requires "a statement that 'unambiguously and falsely imputes criminal conduct to' a party." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006). Courts have found that general accusations lacking specificity do not meet this standard. *Lecody v. Anderson*, 2021 WL 1202348, at *4 (Tex. App.—Amarillo Mar. 30, 2021, no pet.) (no defamation *per se* where "the statement does not accuse [the plaintiff] of any specific illegal act"); *see also Fiber Sys. Int'l, Inc.*, 470 F.3d at 1166 (criminal offense must be identifiable to reasonable person).

To establish that "market manipulation" unambiguously accuses a crime, the Opposition cites obscurely to the Portuguese Securities Code and EU Market Abuse Regulation—statutes and regulations nowhere referenced in the interview. Opp'n at 36–37, 39; Compl. ¶¶ 33–37. This is the kind of extrinsic reference that Texas *per se* doctrine forbids. *See KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 691 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). To be sure, the statement does not have to charge a violation of a criminal statute "in a technical manner" (and Defendants do not argue otherwise). *Gray v. HEB Food Store*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied). Still, as Muddy Waters acknowledges, the statement must be

17

specific enough that, "in hearing the statement, an ordinary person would draw a reasonable conclusion that the complaining party was charged with a violation of some criminal law." *Id*. That standard is not met here. A reasonable reader of the *Expresso* interview—a Portuguese-language Q&A about business topics—would not conclude that Mr. Mota Santos was "charging" Muddy Waters with violating a specific criminal statute. He was expressing frustration with market activity and calling for regulatory reform, not lodging a criminal accusation. Indeed, his closing remark—"there must be better regulation"—signals that he viewed the conduct as insufficiently regulated, not already criminal. *See* Dkt. 14 at 16.

Moreover, courts have held that the term "manipulation"—even in a securities context—is not an unambiguous accusation of crime. In *Grifols*, the court held that saying a company "'manipulate[d]' debt and EBITDA" was "not akin to an accusation of criminal activity or fraud" because the accused conduct would not have constituted a crime. 2025 WL 1826611, at *17. If "manipulation" is not unambiguously criminal in the United States—where the same substantive prohibitions exist under federal securities law—it cannot be unambiguously criminal when uttered in a Portuguese newspaper interview without reference to any statute. And that is especially true in this case, where Muddy Waters alleges damage to its reputation in Texas—there are no facts pled to support the notion that Texas readers would interpret Mr. Mota Santos's statements as accusing Muddy Waters of breaching criminal laws in Portugal. *See Falk & Mayfield L.L.P. v. Molzan,* 974 S.W.2d 821, 824 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (finding accusation that plaintiff committed "lawsuit abuse" to be protected opinion because merely accusing plaintiff of "manipulating the [law] . . . to gain an unfair advantage . . . . is an individual judgment that rests solely in the eye of the beholder").

18

Second, even assuming that "manipulation" constitutes an unambiguous criminal accusation, Defendants' Motion cited numerous cases holding that Texas law does not treat such accusations as defamatory *per se* when they are made in the context of an obvious opinion based on disclosed facts—precisely what happened here. *See Oberc*, 2016 WL 3039658, at *7 (plaintiff failed to state a claim where defendant "was merely providing his 'sense' of what happened and what he 'think[s]' took place," notwithstanding that defendant "expressed the possibility that Plaintiff . . . colluded in some form" of criminal act); *Linan*, 2006 WL 1766204, at *5 (finding statement that "[i]t is my suspicion and belief that [the plaintiff] was involved in the attempted theft" to be an "opinion[ ] and characterization[ ]"). The Opposition does not attempt to distinguish or rebut those authorities. Muddy Waters's reliance on *Luke* for this point is equally meritless. In *Luke*, the defendant flatly accused the plaintiff of "sexual assault" in a private email—a factual accusation of a specific crime, made without opinion qualifiers, disclosed bases, or any debate context. 2024 WL 2304594, at *3–4. That bears no resemblance to a CEO offering his opinion on market regulation during a policy-oriented newspaper interview.

## C.    Muddy Waters is a limited-purpose public figure that has failed to plead actual malice.

Both defamation claims independently fail because Muddy Waters has not plausibly alleged the requisite degree of fault. The Motion explains why Muddy Waters meets the three-part test to qualify as a limited-purpose public figure. *See* Dkt. 14 at 11–14. The Opposition concedes all but the second element—i.e., that "the plaintiff must have had more than a trivial or tangential role in the controversy." Opp'n at 41. But element two is established by the Complaint's own allegations. The relevant factors—whether the plaintiff sought publicity, had media access, and voluntarily engaged in activities carrying heightened reputational risk—all favor public-figure status. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 573 (Tex. 1998).

19

With respect to the first factor, the Opposition does not dispute that Muddy Waters "routinely publishes about global businesses" but argues that should not matter because "Plaintiff never sought any publicity surrounding its short positions in Mota-Engil." Opp'n at 41. On the second factor, Muddy Waters admits having access to the media but emphasizes that Muddy Waters did not issue a press release about its stake in Mota-Engil. On the third element, Muddy Waters asserts that its short position does not carry "more 'risk of increased exposure'" than any other anonymous investor. Opp'n at 42. That argument defies credulity. Muddy Waters describes itself as an "activist investment firm" that "conducts deep-dive research and forensic accounting." Compl. ¶¶ 1–2. It operates through a research affiliate, Muddy Waters Research. Compl. ¶ 29. Its founder is one of the most prominent figures in the activist short-selling industry and was the subject of widely publicized SEC and DOJ investigations. *See* Dkt. 14 at 4. And it took positions in Mota-Engil calibrated at just over Portugal's mandatory public-disclosure threshold of 0.5% (Compl. ¶¶ 47–50) knowing those positions would become public and generate debate. In fact, Muddy Waters's short stake was covered widely in the Portuguese press, which is the context that prompted the *Expresso* journalist's question in the first place. *Id*. ¶¶ 79, 82. An entity that deliberately crosses public-reporting thresholds in a business model built on market controversy cannot claim surprise when its positions attract public comment.

The Opposition's reliance on *Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681 (4th Cir. 1989), is unavailing. Opp'n at 42. In *Blue Ridge Bank*, the bank had never "raised the issue of its corporate financial health. . . as part of its promotional efforts" and "there was no specific pre-existing public controversy directly or proximately concerning [its] solvency." 866 F.2d at 687–88. Muddy Waters is factually the opposite: an activist firm with a global media profile that chose

20

to take a publicly disclosed short position in a stock, which it knew would be (and which was) the subject of press coverage.[11]

As a limited-purpose public figure, Muddy Waters must plead actual malice with specific facts. The Complaint alleges only that Mr. Mota Santos "knew or reasonably should have known that his defamatory statements described herein were false, or, in the alternative, that he made the defamatory statements in reckless disregard for the truth." Compl. ¶¶ 121, 133. This verbatim recitation of the legal standard is insufficient. As the Texas Supreme Court has explained, for reckless disregard to exist, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

With no specific allegations to point to, the Opposition stacks inference upon inference. Muddy Waters appears to argue that because Muddy Waters allegedly identified accounting irregularities that motivated its short position, the Court must further take as true that (1) those issues in fact existed within Mota-Engil, and (2) that, *ipso facto*, Mr. Mota Santos was aware of them—despite the fact that neither conclusion is even pled in the Complaint. According to Muddy Waters, it follows that Mr. Mota Santos "therefore knew that [Muddy Waters's] short was not baseless 'market manipulation.'" Opp'n at 43. But Muddy Waters cites no factual support for this chain of inferences. The Court is required to take as true that Muddy Waters identified what it believed were problems. It is not required to accept that those problems existed, much less that

---

[11] The Opposition noticeably does not address Defendants' cited analogous cases, such as *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1329–30 (5th Cir. 1993) (corporate public-figure analysis considers plaintiff's "significant past publicity" and whether statements were made "in response to previous media coverage"); *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 564 (S.D. Tex. 2022) (plaintiff who "injected herself into the public debate" became limited-purpose public figure).

Mr. Mota Santos knew of them—especially since there are no allegations to that effect in the Complaint. *See Carlson v. CRH Ams. Materials, Inc.*, 2025 WL 3463685, at *5 (W.D. Tex. Nov. 12, 2025) (dismissal warranted where plaintiff "has not alleged any facts showing this statement was made with knowledge of its falsity or with reckless disregard to the truth").

The Opposition also argues "it is also reasonable to infer that he had a motive to defame [Muddy Waters] because he wanted to . . . drive Mota-Engil's stock price back up." Opp'n at 43. But "[a] lack of care or an injurious motive in making a statement is not alone proof of actual malice." *Bentley*, 94 S.W.3d at 596. Finally, Muddy Waters strangely argues that Mr. Mota Santos's disclaimer acknowledging that he might have been wrong—i.e., that "[t]his fund may be followed by other funds" somehow is evidence that he recklessly disregarded the truth of his opinion that there was coordination. Of course, such an equivocation cuts only against Muddy Waters—it makes Mr. Mota Santos's statement ever more obviously an opinion and thus non-actionable. *See Oberc*, 2016 WL 3039658, at *7 (plaintiff failed to state a claim where defendant "was merely providing his 'sense' of what happened and what he 'think[s]' took place," notwithstanding that defendant "expressed the possibility that Plaintiff . . . colluded in some form" of criminal act).

Nowhere does the Complaint allege that the CEO had access to information contradicting his statements, was aware of specific facts demonstrating Muddy Waters did not coordinate with other funds, or "entertained serious doubts" about the truth of his remarks, as the law requires. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). This is an independent basis for dismissal.

### D.    The Complaint pleads no basis for vicarious liability.

"The general rule is that an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's

22

business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). Muddy Waters here does not make this showing.[12] Instead it argues only that Mr. Mota Santos "was introduced as the 'president of Mota-Engil,'" and that elsewhere in the interview he "repeatedly referred to Mota-Engil's ongoing construction and infrastructure projects around the world using the first-person plural, 'we.'" Opp'n at 44. These facts are irrelevant. Critically, *Minyard* clarified that in defamation cases the focus of the inquiry must be on whether the *actual statements* were made within the scope of employment—not merely whether the employee's attendance at an event or presence in a particular setting was within that scope. 80 S.W.3d at 578. Muddy Waters cites no authority sustaining a respondeat superior claim built on nothing but a job title and the first-person plural "we."

More to the point, the Opposition conspicuously ignores the fundamental fact that Mr. Mota Santos expressly denied that his statements were made on Mota-Engil's behalf or that he was speaking as Mota-Engil's CEO. He said clearly that he was giving his "personal opinion" and not that of the company. That fact is dispositive. When an employee "turns aside, for however short a time, from the prosecution of the [employer's] work to engage in an affair wholly his own," the employer is not liable. *Texas & P. Ry. Co. v. Hagenloh*, 247 S.W.2d 236, 241 (Tex. 1952); *see also* Restatement (Second) of Agency § 235) (stating that if an act "is done with no intention to perform it as a part of or incident to a service on account of which he is employed" then the act is not within the scope of employment even if the act would be authorized on behalf of the employer). And

---

[12] It is true that express authorization from a company is not always necessary to impute vicarious liability (Opp'n at 44), but that is not the basis for Defendants' argument. Rather, the point is that Muddy Waters has pled no facts—authorization or otherwise—showing the defamatory statements were made within the scope of employment.

even if Mr. Mota Santos had made the statements in his capacity as CEO, Muddy Waters would still need to show how any defamatory statements furthered the employer's business or accomplished some duty for which he was hired.  No liability extends when there is "no close relation between the [tort] and the performance of the duties of employment."  *Hagenloh*, 247 S.W.2d at 241.  The Complaint does not identify any comparable duty here.

In sum, even if the Complaint stated a claim against Mr. Mota Santos—which it does not—there is no factual basis to impose vicarious liability on the company.  *See, e.g., Lyons v. Starbucks Coffee Co*., No. 3:19-cv-2457-S-BT, 2020 WL 5732638, at *4 (N.D. Tex. Aug. 24, 2020) (granting 12(b)(6) dismissal where plaintiff failed to show employee "acted within the course and scope of his or her authority or employment when he or she allegedly . . . defamed [plaintiff]").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint for lack of personal jurisdiction, on *forum non conveniens* grounds, and for failure to state a claim.

25

Dated: May 21, 2026

**ALLEN OVERY SHEARMAN STERLING US LLP**

By: */s/Emily Westridge Black*
Emily Westridge Black
Tex. Bar No. 24060815
300 W. 6th Street, Suite 2250
Austin, Texas 78701
(512) 647-1900
emily.westridgeblack@aoshearman.com

William D. Marsh, Jr.
Tex. Bar No. 24092762
The Link at Uptown
2601 Olive Street, 17th Floor
Dallas, Texas 75201
(214) 271-5777
billy.marsh@aoshearman.com

*Counsel for Defendants Carlos António Vasconcelos Mota Dos Santos and Mota-Engil, SGPS, S.A.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 21, 2026, the foregoing was served on all counsel of record in compliance with the Federal Rules of Civil Procedure.

                                                          */s/Emily Westridge Black*
                                                          Emily Westridge Black