**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| MUDDY WATERS CAPITAL LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>CARLOS ANTÓNIO VASCONCELOS MOTA DOS SANTOS and MOTA-ENGIL, SGPS, S.A.<br><br>*Defendants*. | Case No. 1:25-CV-02090-RP |

**PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TABLE OF CONTENTS

PAGE NO.

PRELIMINARY STATEMENT ..................................................................................................1

LEGAL STANDARD..............................................................................................................1

ARGUMENT .........................................................................................................................2

    I.      THE R&R MISAPPLIED THE *CALDER* "FOCAL POINT" TEST .....................2

          A.      The R&R Focused on Where Defendants Acted Rather Than Where
               Their Defamatory Statements Were Aimed..................................................3

          B.      The R&R Wrongly Concluded That Defendants' Defamatory
               Statements Did Not Concern "Texas Activities".........................................8

    II.     THE R&R FAILED TO TAKE ALL OF PLAINTIFF'S ALLEGATIONS
        AS TRUE AND CONSTRUE THEM IN PLAINTIFF'S FAVOR ......................10

          A.      The R&R Construed the Complaint's Reputational Harm
               Allegations in Defendants' Favor ..............................................................10

          B.      In Concluding that Mr. Mota dos Santos's Statements about Regulatory
               Proceedings Were Not "Drawn from Texas Sources," the R&R
               Disregarded Well-Pleaded Allegations and Misconstrued the Law ..........12

    III.   THE R&R INCORRECTLY DISMISSED PLAINTIFF'S SUIT WITH
        PREJUDICE ...................................................................................................14

CONCLUSION....................................................................................................................15

i

TABLE OF AUTHORITIES

**Cases**

*Baksic v. Ethicon, Inc.*,
659 F. Supp. 3d 763 (W.D. Tex. 2023) .......................................................................... 1, 2

*Block v. Barnes*,
No. 1:22-cv-869, 2023 WL 2732552 (W.D. Tex. Mar. 30, 2023) .................................. 6, 7

*Brown v. Flowers Indus., Inc.*,
688 F.2d 328 (5th Cir. 1982), *cert. denied*, 460 U.S. 1023 (1983) .............................. 4, 11

*Bullion v. Gillespie*,
895 F.2d 213 (5th Cir. 1990) ..................................................................................... 11, 13

*Calder v. Jones*,
465 U.S. 783 (1984) ..................................................................................................... *passim*

*Cf. Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) ............................................................................................................ 6

*Clemens v. McNamee*,
615 F.3d 374 (5th Cir. 2010) ...................................................................................... *passim*

*Costello v. United States*,
365 U.S. 265 (1961) ......................................................................................................... 15

*Danziger & De Llano, LLP v. Morgan Verkamp, LLC*,
24 F.4th 491 (5th Cir. 2022) ........................................................................................ 7, 8

*Guidry v. U.S. Tobacco Co.*,
188 F.3d 619 (5th Cir. 1999) .................................................................................. 4, 6, 15

*Herman v. Cataphora, Inc.*,
730 F.3d 460 (5th Cir. 2013) ...................................................................................... 11, 12

*Hitt v. City of Pasadena*,
561 F.2d 606 (5th Cir. 1977) ............................................................................................ 14

*Lewis v. Fresne*,
252 F.3d 352 (5th Cir. 2001) .............................................................................................. 4

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865 (5th Cir. 2001) ............................................................................................ 13

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) .............................................................................. 5, 6, 7, 14

*Trois v. Apple Tree Auction Center, Inc.*,
    882 F.3d 485 (5th Cir. 2018) ........................................................................... 3

*Walden v. Fiore*,
    571 U.S. 277 (2014) ......................................................................................... 6

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*,
    517 F.3d 235 (5th Cir. 2008) .................................................................... 11, 14

*Wien Air Alaska, Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) ........................................................................... 3

**Statutes**

28 U.S.C. § 636 ............................................................................................... 1, 2

**Rules**

Fed. R. Civ. P. 12 ............................................................................................... 11

Fed. R. Civ. P. 41 ............................................................................................... 15

iii

## PRELIMINARY STATEMENT

Defendants purposefully directed defamatory statements about Plaintiff Muddy Waters Capital LLC ("Muddy Waters" or "Plaintiff")—a Texas-based investment firm—toward Texas residents. The statements were about Texas-based operations and targeted research and strategic decision-making that Plaintiff conducted in Texas. And the harm those statements caused Plaintiff was felt primarily in Texas. Despite this, the United States Magistrate Judge issued a Report and Recommendation ("R&R") recommending that this Court grant Defendants' motion to dismiss for lack of personal jurisdiction. *See generally* Dkt. 19 (hereinafter, "the R&R").

Plaintiff objects to the R&R on three principal grounds. First, the Magistrate Judge contravened *Calder v. Jones*, 465 U.S. 783 (1984), in concluding that Plaintiff had not made a *prima facie* showing of specific personal jurisdiction because the Expresso interview occurred in Portugal. What matters under the "focal point" test is not where Defendants were located when they made their defamatory statements, but where those statements were aimed and where their effects were intended to land. The answer to both of those salient questions is Texas, as numerous well-pleaded allegations demonstrate. Second, the R&R discounted uncontroverted allegations of harm to Plaintiff in Texas and construed multiple allegations in Defendants' favor—both fatal errors at the pleading stage, particularly where there was neither an evidentiary hearing nor any sort of jurisdictional discovery. Third, even if the R&R were correct on the merits—and it was not—dismissal with prejudice for lack of personal jurisdiction is categorically inappropriate. If this Court adopts the R&R's rationale, Plaintiff must be given the opportunity to refile its lawsuit elsewhere.

## LEGAL STANDARD

This Court must review Plaintiff's specific objections to the R&R *de novo*. *Baksic v. Ethicon, Inc.*, 659 F. Supp. 3d 763, 767 (W.D. Tex. 2023); *see* 28 U.S.C. § 636(b)(1)(C); W.D.

1

Tex. App. C, Rule 4(b).  "Such a review means that the Court will examine the entire record, and will make an independent assessment of the law."  *Baksic*, 659 F. Supp. 3d at 767.  Following this review, this Court may accept, reject, or modify the R&R; receive further evidence; or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1)(C).

To establish personal jurisdiction over a foreign defendant, a plaintiff must make only a *prima facie* showing.  *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).  Specific personal jurisdiction over a foreign defendant "exists when the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."  *Id.* at 378 (cleaned up).  This Court must "accept the plaintiff's uncontroverted allegations as true" and resolve disputed facts in plaintiff's favor.  *Id.*

ARGUMENT

The Magistrate Judge incorrectly recommended that this Court dismiss Plaintiff's suit with prejudice for lack of personal jurisdiction over Defendants. For two principal reasons, the R&R's analysis was wrong on the merits.  And in any event, dismissal for lack of personal jurisdiction must be *without* prejudice under bedrock Fifth Circuit precedent.

## I.  THE R&R MISAPPLIED THE *CALDER* "FOCAL POINT" TEST

The R&R's central analytical error is simple: it treats the location of Defendants' conduct as dispositive.  Under *Calder v. Jones*, 465 U.S. 783 (1984), it is not. *Calder* teaches that the jurisdictional inquiry in an intentional tort case turns on where the defendant's conduct was aimed—not where the defendant happened to be located when he committed the tort.  Because the R&R asked the wrong question, it reached the wrong answer. In addition, the R&R incorrectly determined the defamatory statements did not concern "Texas activities," even though they relate directly to business activities Muddy Waters conducted in Texas.

2

A.   **The R&R Focused on Where Defendants Acted Rather Than Where Their Defamatory Statements Were Aimed**

The heart of *Calder* is its requirement that the forum state be "the focal point both of the story and of the harm suffered."  465 U.S. at 789; *see Clemens*, 615 F.3d at 379.  As the R&R correctly recounted, the allegedly libelous article in *Calder* was researched, written, and edited in Florida by Florida-based defendants who worked for a Florida-based publication.  R&R at 5 (citing *Calder*, 465 U.S. at 784–85, 789).  The Supreme Court nonetheless held that "jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California."  *Calder*, 465 U.S. at 791.  The defendants were "not charged with mere untargeted negligence"; their "intentional, and allegedly tortious, actions were expressly aimed at California" because they knowingly wrote a defamatory story about a California resident whose career—and reputation—was centered there.  *Id.* at 789–90.  The Court was emphatic that the defendants' own location was no shield: "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."  *Id.* at 790.  In short, the *Calder* Court did not ask where the defendants were located when they committed the tort.  It asked where the tort was aimed.

Fifth Circuit law likewise deems a defendant's physical location irrelevant where the content of his defamatory statements is directed at a forum target.  *See, e.g.*, *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (reversing jurisdictional dismissal where tortious communications were directed at Texas and noting that "[i]t is of no use to say that the plaintiff 'fortuitously' resided in Texas"); *Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490–91 (5th Cir. 2018) (affirming Texas personal jurisdiction over an Ohio defendant who never set foot in Texas because he was "the key negotiating party who made [fraudulent]

3

representations regarding his business in a call to Texas"); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332–34 (5th Cir. 1982) (single defamatory telephone call initiated from Indiana into Mississippi supported jurisdiction in Mississippi where "the defendant could easily have foreseen" that "[t]he injurious effect of the tort . . . fell in Mississippi"), *cert. denied*, 460 U.S. 1023 (1983); *Lewis v. Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001) (single phone call into Texas containing misrepresentations sufficient to confer jurisdiction). In short, "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999).

With these principles in mind, the R&R misapplied the "focal point" test. The Magistrate Judge concluded that "the 'focal point' of this case is not in Texas" by reciting that the interview was "conducted in Portuguese by a Portuguese reporter and covered topics relevant to a Portuguese audience," such that "[t]he focal point of the alleged defamatory conduct is Portugal, not Texas." R&R at 6. But every one of those facts describes where and how *Defendants acted*—the language Mr. Mota dos Santos chose, the reporter he spoke to, and the newspaper that printed his words. More to the point, these facts are just like those the *Calder* Court held did not defeat jurisdiction: The National Enquirer's reporter and editor also spoke and wrote from their home jurisdiction (Florida) for a publication headquartered there. 465 U.S. at 784–85.

What really matters is that Mr. Mota dos Santos's statements were aimed, by name, at Plaintiff—an investment adviser based in Austin, Texas and registered with the SEC as a Texas entity, whose business reputation, client relationships, and substantive work are all rooted in

4

Texas.  Compl. ¶¶ 24, 27, 126, 128.  Wherever a reader of the *Expresso* interview sat, the target of Defendants' accusations was the same: Plaintiff and its Texas-based activities.

The R&R doubled down on this error when it found Defendants did not "expressly aim" their statements at Texas because "the interview was conducted in Portugal, in Portuguese, for a Portuguese audience, with no mention of Texas."  R&R at 8–9.  But a defamatory statement need not explicitly invoke the forum state in order to be "expressly aimed" there—and the Magistrate Judge cited no authority for this formalistic proposition.  And in all events, the R&R overlooks Plaintiff's specific allegations about how Defendants did, in fact, aim their statements at Texas:

*First*, Mr. Mota dos Santos called his target by name and described its business activities, which occurred in Texas.  By repeatedly invoking regulatory proceedings involving Plaintiff— including, in the interview itself, the SEC's investigation—and hurling allegations of criminal misconduct its way, Mr. Mota dos Santos demonstrated "knowledge of the forum at which his conduct [was] directed" and could therefore "reasonably anticipate being haled into court in that forum."  *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002).  A defendant who studies his target's regulatory filings before publicly accusing it of crimes has engaged in more than mere "untargeted negligence."  *Calder*, 465 U.S. at 789.

*Second*, Mr. Mota dos Santos's comments in the *Expresso* interview were not isolated remarks, but the culmination of a months-long public campaign against Plaintiff.  In September 2024, Mr. Mota dos Santos told the Portuguese financial outlet ECO that "[t]he attack by this fund—which has been the target of market manipulation proceedings by regulators in other international markets—is incomprehensible," and in October 2024 he publicly disparaged Muddy Waters' short position to Bloomberg.  Compl. ¶¶ 79–83.  The R&R ignores these

allegations, which establish that Defendants' statements were "knowingly initiated and aimed at" a specific Texas entity. *Guidry*, 188 F.3d at 628–29.

**Third**, Defendants' statements were published to a worldwide online audience and remain accessible to readers in Texas today. Compl. ¶¶ 104–05, 127. Where, as here, a defendant defames a known forum entity, worldwide publication functionally ensures that the resulting harm occurs where the target's reputation lives—among its Texas-based clients and community. *Cf. Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984) ("The tort of libel is generally held to occur wherever the offending material is circulated."); *Walden v. Fiore*, 571 U.S. 277, 288 (2014) (holding that the reputational "'effects' caused by the defendants' [allegedly defamatory] article . . . connected the defendants' conduct to California, not just to a plaintiff who lived there").

The Magistrate Judge did not invoke any authority that could cure the R&R's misapplication of *Calder*. To start, *Revell* and *Clemens* both involved defamatory statements with merely a coincidental connection to Texas. The *Revell* article "contain[ed] no reference to Texas," concerned the Lockerbie bombing in Scotland, targeted a government official whose career was Washington, D.C.-based, and was written by an author who "was apparently unaware that [the plaintiff] then resided in Texas." 317 F.3d at 469, 473, 475. The *Clemens* statements likewise concerned steroid injections administered in New York and Toronto, and were not "made in Texas or directed to Texas residents any more than residents of any state." 615 F.3d at 378–80.

The R&R's reliance on *Block v. Barnes*, No. 1:22-cv-869, 2023 WL 2732552 (W.D. Tex. Mar. 30, 2023), is likewise misplaced. *See* R&R at 8. In *Block*, the allegedly defamatory statements concerned a business relationship and lawsuit "entirely centered in New York," as the

6

Magistrate Judge wrote.  R&R at 8 (citing *Block*, 2023 WL 2732552, at *3–4).  The only Texas connection was the fact that the plaintiff had recently moved there. 2023 WL 2732552, at *3–4.  *Block* thus stands for the unremarkable proposition that a plaintiff's after-acquired residence in a forum state cannot establish jurisdiction when the allegedly defamed conduct occurred elsewhere.[1]  Here, Defendants accused Plaintiff—an entity that has *always* been located in Texas—of engaging in criminal conduct in Texas: market manipulation flowing from bad-faith Texas research and coordinated Texas investment strategies.  The Magistrate Judge dismissed this distinction as going merely to "how long the plaintiff had lived in Texas," R&R at 8, but that misses its significance.  Because the *Block* plaintiff had only just moved to Texas, the defendant there was not chargeable with knowledge that his statements were aimed at a Texas target.  *See Revell*, 317 F.3d at 475.  Mr. Mota dos Santos, in contrast, displayed substantial familiarity with Plaintiff's identity as a Texas firm and SEC-registered Texas entity.  *See infra* at Part II.B.

Finally, the R&R wrongly concluded that Plaintiff alleged no more than "mere injury to a forum resident," which "is not a sufficient connection to the forum."  R&R at 5–6 (quoting *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 24 F.4th 491, 496–97 (5th Cir. 2022)).  This is a misunderstanding of Plaintiff's position.  Plaintiff never argued that residence and harm alone are sufficient to confer jurisdiction, nor did it allege merely that it is a Texas entity that suffered harm in Texas.  Instead, just like the plaintiff in *Calder*, Plaintiff pleaded that Defendants deliberately aimed devastating accusations at a specific Texas firm they knew was based in Texas, was registered as a Texas entity with the SEC, and did the lion's share of its

---

[1] Notably, even in *Block*, the recommendation—and subsequent order—was for a dismissal *without prejudice*, as opposed to the dismissal with prejudice recommended in this case.  *See Block*, 2023 WL 2372552 at *6 (W.D. Tex. Mar. 30, 2023), *adopted by* No. 1-22-CV-869-DAE, 2023 WL 4582396 at *3 (W.D. Tex. Jul. 18, 2023).

business in Texas.  That is not the type of "mere residency" argument for personal jurisdiction that *Danziger* rejected; it is instead deliberate, targeted tortious conduct that *Calder* deemed sufficient to confer personal jurisdiction.

> **B.    The R&R Wrongly Concluded That Defendants' Defamatory Statements Did Not Concern "Texas Activities"**

The R&R separately—and incorrectly—holds that Defendants' statements did not concern "Texas activities" because they "concerned Muddy Waters' short positions in a Portuguese-listed security, disclosed to Portuguese regulators, and executed on a Portuguese exchange through funds located in the Cayman Islands—not anything Muddy Waters did in Texas."  R&R at 6–7.  This reasoning confuses the *vehicle* through which Plaintiff's investment was executed with the *activities* in which Defendants accused Plaintiff of engaging.  Mr. Mota dos Santos did not accuse a Cayman Islands entity of wrongdoing.  Instead, the Complaint alleges—as the Court must accept at this stage—that his statements were "explicitly of and concerning Muddy Waters."  Compl. ¶ 128.  He accused *Muddy Waters*, the Texas firm, of "market manipulation," of being "coordinated with other funds," and of "concerted action to destroy the value of the stock."  Compl. ¶¶ 96, 126.  The conduct those accusations describe— taking a short position without a good-faith research basis, coordinating strategy with other funds, orchestrating a scheme to drive down a stock price—goes to Plaintiff's core investment decision-making, research, and strategy.  And those activities occur where the firm conducts its business: Texas.  Compl. ¶¶ 27–30.

*Clemens*, which the R&R cited, actually supports Plaintiff.  In that case, the defamatory statements concerned steroid injections that physically occurred in New York and Toronto— discrete past acts that unambiguously took place outside the forum state.  *Clemens*, 615 F.3d at 377.  The Fifth Circuit held that the plaintiff's mere Texas residence did not make his conduct in

8

New York or Canada a "Texas activity." *Id.* at 380.  This case is very different.  The "activities" at issue—alleged market manipulation through coordinated, bad-faith short-selling—are the ongoing professional practices of an investment firm, not isolated events like a single steroid injection.  The location of those business activities is the same place where Plaintiff forms its investment theses, conducts its research, and directs its strategy: Texas.  That the particular stock Plaintiff shorted was Portuguese and that Muddy Waters used foreign entities to carry out the investment strategy it developed in Texas does not control the jurisdictional outcome.  *Contra* R&R at 7.

The R&R resists this conclusion by characterizing Muddy Waters' headquarters as the equivalent of Clemens's "residence":  "Muddy Waters' being headquartered in Austin while shorting a Portuguese stock no more makes this a 'Texas activity' than Clemens's Texas residence made New York steroid injections a Texas matter."  R&R at 7.  But a company's headquarters is not the same as an individual's "residence."  It is the seat of the company's operations, decision-making, research, and professional judgment.  When a corporation is accused of engaging in an illegal scheme, the accusation is necessarily about conduct at the place where the corporation thinks and decides.  Plaintiff's conduct therefore constituted "Texas activities" in the same way that the *Calder* plaintiff's California television career amounted to "California activities."  *See* 465 U.S. at 788–89.  Just as the National Enquirer's Florida printing presses did not render jurisdiction in California improper in *Calder*, *id.* at 785, 788–90, Mota-Engil's Portuguese stock does not deprive Texas of jurisdiction over Defendants here.

 At day's end, Defendants publicly accused a named Texas investment adviser of criminal market manipulation.  They did so knowing the firm's identity and Texas regulatory home.  They did so as part of a sustained, months-long campaign against that specific firm.  And they did so

in publications distributed worldwide and accessible in Texas, where the firm's reputation, clients, and business reside.  That is "intentional conduct . . . calculated to cause injury" in Texas, *id.* at 791, and it is sufficient—particularly at the *prima facie* stage—to establish that Texas was the focal point of Mr. Mota dos Santos's statements and the harm they inflicted.

## II.    THE R&R FAILED TO TAKE ALL OF PLAINTIFF'S ALLEGATIONS AS TRUE AND CONSTRUE THEM IN PLAINTIFF'S FAVOR

On top of its misapplication of *Calder*'s "focal point" test, the R&R denied Plaintiff the benefit of the relaxed pleading standard to which it was entitled.  Although the Magistrate Judge paid lip service to the correct standard—that "the plaintiff need only present a *prima facie* case that personal jurisdiction is proper," that "proof by a preponderance of the evidence is not required," and that "[u]ncontroverted allegations in [the] plaintiff's complaint must be taken as true," R&R at 2—the R&R repeatedly departed from these principles.  These errors, too, require this Court's to conduct its own *de novo* review and assign the proper weight to Plaintiff's allegations.

### A.    The R&R Construed the Complaint's Reputational Harm Allegations in Defendants' Favor

The Magistrate Judge neither took Plaintiff's well-pleaded allegations about reputational harm as true nor construed those allegations in its favor.  Plaintiff explicitly pleaded that Mr. Mota dos Santos's statements in the *Expresso* interview "caused harm to Muddy Waters' reputation" and that the interview—as well as the *Jornal de Negócios* article about the interview—"remain published and accessible . . . online to readers in Texas."  Compl. ¶¶ 104-05, 120, 122, 132. No more about reputational harm was required to defeat a jurisdictional motion to dismiss.  Yet, the R&R held that "the premise that Muddy Waters suffered harm in Texas is itself questionable" because "it is doubtful many residents [of Texas] consume Portuguese-language publications like *Expresso*."  R&R at 9-10.

10

This factual speculation was error.  The Magistrate Judge was obliged to credit Plaintiff's well-pleaded allegations about Texas harm, not challenge their veracity based on unsupported assumptions about *Expresso*'s readership that have no place at the motion-to-dismiss stage. Moreover, the R&R's analysis—that Texas readers are unlikely to read Portuguese-language publications—draws inferences in *Defendants'* favor, not Plaintiff's.  That turns the *prima facie* standard on its head, particularly since the Magistrate Judge did not conduct an evidentiary hearing or order even limited jurisdictional discovery.  The Fifth Circuit regularly intervenes when district courts ask too much of a plaintiff's *prima facie* case for personal jurisdiction, even where "deposition testimony or evidence adduced at a hearing under Fed. R. Civ. P. 12 or at trial might mandate a different conclusion."  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (reversible error where the court "dismissed many of [plaintiff's] factual assertions [about jurisdiction] offered in the pleadings and affidavits that were at odds with competing assertions made by [defendant]"); *see also, e.g.*, *Brown*, 688 F.2d at 331, 333–34 (reversing jurisdictional dismissal and noting that courts must "resolve[]" factual conflicts "in plaintiffs' favor for purposes of determining whether a prima facie case for in personam jurisdiction has been established" (cleaned up)); *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242 (5th Cir. 2008) (reversing jurisdictional dismissal where district court erroneously "rais[ed plaintiff's] burden above the *prima facie* level" despite "only partially grant[ing] plaintiff's] motion for jurisdictional discovery" and "den[ying plaintiff's] request for live testimony").

The R&R cited *Herman* and *Clemens* in support of its finding that Plaintiff's Texas harm was "questionable," R&R at 9, but neither case supports the R&R's conclusions.  In *Herman*, the Fifth Circuit affirmed the transfer of a defamation lawsuit for lack of personal jurisdiction in

11

Louisiana because "it [wa]s not immediately clear who the targets of the [allegedly defamatory] statements were and where the conduct . . . described took place." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) (plaintiffs could not demonstrate "that the allegedly defamatory statements themselves were made in reference to" their Louisiana activities). Here, in sharp contrast, it is "immediately clear" that Plaintiff was the target of Mr. Mota dos Santos's statements and that Plaintiff did business—including the business of taking a short position in Mota-Engil—in Texas. Furthermore, to the extent *Herman* noted the absence of "disproportionately high" forum readership to establish reputational harm in the forum state, *see* R&R at 10 (citing *Herman*, 730 F.3d at 466), the court declared that the plaintiffs had shown "no evidence" of disproportionate readership in Louisiana, 730 F.3d at 466—a summary judgment standard that is inapplicable at the *prima facie* stage.

For largely the reasons set forth *supra* at Part I.B, *Clemens* is no more persuasive than *Herman*. The harm in *Clemens* was only felt in Texas to the extent that Clemens was a Texas resident. 615 F.3d at 380. No other element of the case involved Texas at all. Here, Mr. Mota dos Santos accused a Texas firm—registered as a Texas entity with the SEC—of engaging in market manipulation flowing from research, strategic decision-making, and alleged collusive conduct *in Texas*, all in a publication still available online to any Texas reader. Had the Magistrate Judge properly credited all of Plaintiff's allegations about Texas harm and Texas activity, the R&R never would have concluded this case resembles *Clemens*.

**B.    In Concluding that Mr. Mota dos Santos's Statements about Regulatory Proceedings Were Not "Drawn from Texas Sources," the R&R  Disregarded Well-Pleaded Allegations and Misconstrued the Law**

In three interrelated ways, the R&R strayed from the applicable pleading standard and misapplied governing precedent in concluding that Defendants' statements were not "drawn from [Texas] sources." R&R at 7.

First, the Magistrate Judge explained that Mr. Mota dos Santos made merely a "passing reference" to the SEC's investigation of Plaintiff, and because his comment was a "single aside in a wide-ranging interview overwhelmingly focused on events in Portugal," it "did not draw its substance from Texas." R&R at 7–8. That analysis ignores well-pleaded allegations that Defendants repeatedly and publicly invoked regulatory proceedings involving Plaintiff. *See* Compl. ¶¶ 79–80.

Months before the *Expresso* interview, Mr. Mota dos Santos told ECO that "[t]he attack by this fund—*which has been the target of market manipulation proceedings by regulators in other international markets*—is incomprehensible." Compl. ¶¶ 79–80 (emphasis added). Then, in the interview, he pejoratively referenced the SEC's investigation of Plaintiff, a registered Texas entity. Compl. ¶ 27. Taken together, these allegations establish that Defendants repeatedly used Plaintiff's regulatory history to substantiate the accusation of "market manipulation" that gave rise to this suit. The R&R's failure to acknowledge—much less credit—these allegations is precisely the type of error the Fifth Circuit has held requires rejection of a jurisdictional dismissal. *See Bullion*, 895 F.2d at 217 (district court committed "reversible error" where it "dismissed many of [plaintiff's] factual assertions"). Nor are they the sort of conclusory allegations a court may disregard, *see, e.g.*, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–69 (5th Cir. 2001) (disregarding allegations made "on information and belief")—they are specific, dated, quoted statements attributed to Mr. Mota dos Santos himself.

The R&R further erred by drawing factual inferences against Plaintiff rather than in its favor on the "sources" prong. Whether the SEC reference was a dismissible "aside" or a strategic defamatory comment is a question about the statement's purpose and weight—a factual

characterization that must be resolved for Plaintiff at the *prima facie* stage.  Characterizing the

SEC reference as a "mere[] reference[]," R&R at 8, turns the pleading standard upside down,

particularly given the absence of a hearing, jurisdictional discovery, or any contrary evidence

from Defendants.  *See Walk Haydel*, 517 F.3d at 241 (error to demand more than *prima facie*

showing of jurisdiction absent a full evidentiary hearing).

Finally, the R&R erred as a matter of law when it held that Mr. Mota dos Santos must

have made an "effort to reach into Texas"—just like the *Calder* reporter's phone calls—to have

drawn from Texas sources.  R&R at 7.  The phone calls in *Calder* are but one way of satisfying

the sources prong; they do not set a constitutional floor.  The Fifth Circuit asks only whether "the

sources relied upon and activities described in an allegedly defamatory publication . . . in some

way connect with the forum."  *Revell*, 317 F.3d at 474.  Mr. Mota dos Santos's public invocation

of U.S. regulatory proceedings involving a Texas-registered firm connects with Texas "in some

way."  The R&R's contrary conclusion further reveals its erroneous focus on where Defendants

acted rather than where their statements were aimed.

## III.    THE R&R INCORRECTLY DISMISSED PLAINTIFF'S SUIT WITH PREJUDICE

The R&R recommends that this Court "DISMISS the case *with prejudice* for lack of

personal jurisdiction."  R&R at 10 (emphasis added).  This recommendation contravenes well-

settled law and must be corrected regardless of the jurisdictional merits.

"A dismissal on jurisdictional grounds alone is not on the merits and permits the plaintiff

to pursue his claim in the same or in another forum."  *Hitt v. City of Pasadena*, 561 F.2d 606,

608–09 (5th Cir. 1977) (per curiam) (district court abused its discretion in dismissing complaint

with prejudice on jurisdictional as well as merits grounds because "in the absence of such a

dismissal [plaintiffs] might have been able by appropriate amendments, to cure the jurisdictional

14

defects in their complaint and to establish a claim against these or other defendants"). "A court must find jurisdiction, both subject matter and personal, before determining the validity of a claim." *Guidry*, 188 F.3d at 623 n.2 (cleaned up). A dismissal "with prejudice" for lack of personal jurisdiction is therefore self-contradictory: the court is simultaneously disclaiming its power to adjudicate the dispute and purporting to resolve that dispute with finality. It cannot do both. *See id.* ("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication."). For this reason, Fed. R. Civ. P. 41—which governs the dismissal of actions—"specifically exempts dismissals for lack of jurisdiction . . . from the presumption that the dismissal is with prejudice." 8 Moore's Fed. Prac. § 41.50[7][c] (Matthew Bender 3d ed.) (citing *Costello v. United States*, 365 U.S. 265, 285 (1961) (noting that a dismissal for lack of personal jurisdiction is not an adjudication on the merits)).

This Court should, as set forth above, reject the R&R and conclude that Plaintiff made a prima facie showing that specific personal jurisdiction over Defendants is proper. But if the Court adopts the R&R, it must enter a dismissal *without prejudice* to Plaintiff's right to amend the complaint's jurisdictional allegations or pursue its claims in a different forum.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court: (1) reject the Report & Recommendation of the Magistrate Judge; (2) hold that Plaintiff has made a *prima facie* showing of specific personal jurisdiction over Defendants; and (3) recommit the matter to the Magistrate Judge for consideration of Defendants' remaining motions to dismiss.

In the alternative, Plaintiff respectfully requests this Court: (1) hold that Plaintiff made out a *prima facie* case of specific jurisdiction over Defendants, and (2) recommit the matter to the Magistrate Judge for consideration of whether Defendants met their burden to show that the

15

exercise of such jurisdiction would be unfair and unreasonable. And, at the very least, this Court must enter a dismissal on personal-jurisdiction grounds *without* prejudice.

Dated: July 9, 2026

                                        **GUERRERO & WHITTLE, PLLC**


                                         */s/ Ketan U. Kharod*

                                        Ketan U. Kharod
                                        TX Bar No. 24027105
                                        2905 San Gabriel Street, Suite 309
                                        Austin, Texas 78705
                                        ketan@gwjustice.com
                                        (512) 605-2300


                                        **EMERY CELLI BRINCKERHOFF**
                                        **ABADY WARD & MAAZEL LLP**

                                        Andrew G. Celli, Jr.*
                                        Samuel Shapiro*
                                        Nick Bourland*

                                        One Rockefeller Plaza, 8th Floor
                                        New York, New York 10020
                                        acelli@ecbawm.com
                                        sshapiro@ecbawm.com
                                        nbourland@ecbawm.com
                                        (212) 763-5000


                                        *Admitted *Pro Hac Vice*

                                        *Attorneys for Plaintiff Muddy Waters*
                                        *Capital LLC*

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 9, 2026, the foregoing was served on all

counsel of record via ECF in compliance with the Federal Rules of Civil Procedure.


*/s/ Ketan U. Kharod*
Ketan U. Kharod